No. 23-5110

# In the United States Court of Appeals for the Tenth Circuit

PETER POE, by and through his parents and next friends,
PAULA POE and PATRICK POE, *et al.*,

*Plaintiffs-Appellants*,

v.

GENTNER DRUMMOND, in his official capacity as
Attorney General of the State of Oklahoma, *et al.*,

*Defendants-Appellees*.

On Appeal from the U.S. District Court for the Northern District of Oklahoma,
Honorable John F. Heil, III, District Judge
No. 4:23-cv-00177

## JOINT APPENDIX

Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Harper S. Seldin
Chase Strangio
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
hseldin@aclu.org
cstrangio@aclu.org

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
(646) 307-7406
ogonzalez-pagan@lambdalegal.org

Laura J. Edelstein
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
(628) 267-6800
LEdelstein@jenner.com

*Counsel for Plaintiffs-Appellants*

Garry M. Gaskins, II
*Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

Zach West
*Director of Special Litigation*
Audrey Weaver
Will Flanagan
*Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov
Audrey.Weaver@oag.ok.gov
William.Flanagan@oag.ok.gov

*Counsel for Defendants 15-53*

J. Craig Buchan
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
Two West Second Street, Suite 1100
Tulsa, OK 74103
(918) 587-0000
Craig.buchan@mcafeetaft

Ronald T. Shinn Jr.,
Jennie Mook
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
Two Leadership Square, 8th Floor
211 N. Robinson
Oklahoma City, OK 73102
(405) 235-9621
Ron.shinn@mcafeetaft.com
Jennie.mook@mcafeetaft.com

*Counsel for Defendants 54 & 55*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

## Volume I of VI

Page

Docket Sheet, *Poe et al., v. Drummond*, No. 4:23-cv-00177 (N.D. Okla.) ...............................................................................JA.1

Complaint for Declaratory, Injunctive, and Other Relief (N.D. Okla. May 2, 2023), ECF No. 2 ...............................................JA.34

Plaintiffs' Motion for Leave to Proceed Under Pseudonyms and for a Protective Order and Opening Brief in Support (N.D. Okla. May 2, 2023), ECF No. 4 ......................................................JA.98

Plaintiffs' Motion for a Preliminary Injunction and for Expedited Consideration (N.D. Okla. May 2, 2023), ECF No. 5 .........JA.115

Opening Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction (N.D. Okla. May 2, 2023), ECF No. 6.............JA.119

## Volume II of VI

Attachment 1, Oklahoma Enrolled Senate Bill No. 613, ECF No. 6-1 ...............................................................................JA.152

Attachment 2, Expert Declaration of Aron Janssen, M.D., ECF No. 6-2 ...............................................................................JA.173

Attachment 3, Expert Declaration of Deanna Adkins, M.D., ECF No. 6-3..........................................................................JA.214

Attachment 4, Expert Declaration of Jack Turban, M.D., ECF No. 6-4 ...............................................................................JA.253

Attachment 5, Declaration of Peter Poe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-5 ...............JA.282

Attachment 6, Declaration of Paula Poe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-6 ...............JA.287

Attachment 7, Declaration of Plaintiff Daphne Doe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-7 .........JA.293

Attachment 8, Declaration of Donna Doe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-8.............JA.299

Attachment 9, Declaration of Brandon Boe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-9 ............. JA.306

Attachment 10, Declaration of Benjamin Boe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-10 ........... JA.312

Attachment 11, Declaration of Lydia Loe in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 6-11 .............. JA.319

Attachment 12, Declaration of Lauren Loe in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 6-12 .............. JA.325

Attachment 13, Declaration of Rachel Roe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-13 ........... JA.332

Attachment 14, Declaration of Ryan Roe in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 6-14 ........... JA.337

Attachment 15, Declaration of Shauna M. Lawlis, M.D. in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 6-15 ................................................................ JA.342

Attachment 16, Expert Declaration of Armand H. Matheny Antommaria, M.D., PhD, FAAP, HEC-C, ECF No. 6-16 ................... JA.356

Notice of Agreement and Joint Motion (I) to Extend Time for Defendants to Respond to Plaintiffs' Motion for Preliminary Injunction (II) to Extend Time for Plaintiffs to Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction and (III) to Reset the Hearing on Plaintiffs' Motion for Preliminary Injunction (N.D. Okla. May 18, 2023), ECF No. 41 ........................................................................ JA.418

## Volume III of VI

Statement of Interest of the United States (N.D. Okla. June 9, 2023), ECF No. 61 ................................................. JA.422

Motion to Dismiss by Defendants 15-53 (N.D. Okla. June 16, 2023), ECF No. 80 ................................................. JA.452

Defendants 15-53's Response to Plaintiffs' Motion for Leave to Proceed Under Pseudonyms and for Protective Order and Opening Brief in Support (N.D. Okla. June 16, 2023), ECF No. 81 ........................................................................ JA.486

Defendants OU Medicine, Inc. & Dr. Richard Lofgren's Motion to Dismiss (N.D. Okla. June 16, 2023), ECF No. 82 ............................ JA.494

Defendants OU Medicine, Inc. & Dr. Richard Lofgren's Response to Plaintiffs' Motion for Preliminary Injunction (N.D. Okla. June 16, 2023), ECF No. 85 ....................................................... JA.498

Defendants 15-53's Response to Plaintiffs' Motion for Preliminary Injunction (N.D. Okla. June 16, 2023), ECF No. 86 ......... JA.502

### Volume IV of VI

Exhibit 1, Expert Report of James Cantor, PhD., ECF No. 86-1 .......... JA.541

Exhibit 2, Expert Declaration of Michael K. Laidlaw, M.D., ECF No. 86-2 ........................................................................................ JA.727

### Volume V of VI

Exhibit 3, Declaration of Angela C.E. Thompson, M.D., MPH, FACOG, ECF No. 86-3 ........................................................................ JA.802

Exhibit 4, Expert Declaration of Curtis E. Harris, M.S., M.D., J.D., ECF No. 86-4 ................................................................................ JA.882

Exhibit 5, Declaration of Laura Smalts, ECF No. 86-5 ........................ JA.893

Exhibit 6, Declaration of Zoe Hawes, ECF No. 86-6............................ JA.903

Exhibit 7, Affidavit of Aether Dixon, ECF No. 86-7............................ JA.909

Plaintiffs' Reply in Support of Motion for Leave to Proceed Under Pseudonyms and for a Protective Order (N.D. Okla. June 30, 2023), ECF No. 107........................................................................ JA.917

Plaintiffs' Response to Defendants' Motions to Dismiss (N.D. Okla. July 7, 2023), ECF No. 118 ........................................................ JA.929

Plaintiffs' Reply in Support of Motion for Preliminary Injunction (N.D. Okla. July 10, 2023), ECF No. 119 ........................... JA.963

Exhibit 1, Expert Rebuttal Declaration of Aron Janssen, M.D., ECF No. 119-1 ...................................................................................... JA.980

Exhibit 2, Expert Rebuttal Declaration of Deanna Adkins, M.D., ECF No. 119-2 .................................................................................... JA.1000

Exhibit 3, Expert Rebuttal Declaration of Jack Turban, M.D., ECF No. 119-3 ..................................................................... JA.1019

Exhibit 4, Reply Declaration of Armand H. Matheny Antommaria, M.D., PhD, FAAP, HEC-C, ECF No. 119-4 ................ JA.1043

Response of Defendants 15-53 to the United States' Statement of Interest (N.D. Okla. July 10, 2023), ECF No. 120 ......................... JA.1067

Defendants 15-53's Motion to Strike Plaintiffs' Reply Affidavits or, in the Alternative, to File Surreply, with Brief in Support (N.D. Okla. July 17, 2023), ECF No. 123 ............................. JA.1084

**Volume VI of VI**

Opinion and Order Granting Plaintiffs' Motion for Leave to Proceed Under Pseudonyms (N.D. Okla. July 17, 2023), ECF No. 124 .................................................................................. JA.1092

Minute Sheet – Status Conference (N.D. Okla. July 18, 2023), ECF No. 125 ...................................................................... JA.1102

Reply in Support of Motion to Dismiss by Defendants 15-53 (N.D. Okla. July 21, 2023), ECF No. 127 ........................... JA.1103

Defendants OU Medicine, Inc. & Dr. Richard Lofgren's Reply in Support of Motion to Dismiss (N.D. Okla. July 21, 2023), ECF No. 128 ...................................................................... JA.1116

Plaintiffs' Surreply in Opposition to Defendants' Motions to Dismiss (N.D. Okla. Aug. 7, 2023), ECF No. 131 .............................. JA.1120

Surreply in Opposition to Motion for a Preliminary Injunction by Defendants 15-53 (N.D. Okla. Aug. 8, 2023), ECF No. 132 ........ JA.1128

Exhibit 1, Expert Rebuttal Declaration of James M. Cantor, PhD, ECF No. 132-1 ............................................................ JA.1137

Exhibit 2, Supplemental Declaration of Michael K. Laidlaw, M.D., ECF No. 132-2 ........................................................... JA.1169

Exhibit 3, Supplemental Declaration of Angela C.E. Thompson, M.D., MPH, FACOG, ECF No. 132-3 ................................... JA.1222

Exhibit 4, Supplemental Declaration of Curtis E. Harris, M.S., M.D., J.D., ECF No. 132-4 ................................................. JA.1227

Opinion and Order Denying Plaintiffs' Motion for Preliminary Injunction (N.D. Okla. Oct. 5, 2023), ECF No. 138 ........................... JA.1230

Corrected Opinion and Order Denying Plaintiffs' Motion for Preliminary Injunction (N.D. Okla. Oct. 6, 2023), ECF No. 139 ....... JA.1266

Notice of Appeal (N.D. Okla. Oct. 6, 2023), ECF No. 140 ............... JA.1302

Transmittal Sheet (N.D. Okla. Oct. 10, 2023), ECF No. 141 ............ JA.1305

Notice of Clerk's Record of Appeal Sent (N.D. Okla. Oct. 25, 2023), ECF No. 144 ......................................................................... JA.1306

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, I filed a true and correct copy of the foregoing with the Clerk of the United States Court of Appeals for the Tenth Circuit by using the appellate case filing CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that (1) all required privacy redactions have been made; (2) any paper copies of this document submitted to the Court are exact copies of the version electronically filed; and (3) the electronic submission was scanned for viruses using Microsoft Defender and, according to that program, this document is virus free.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

Query    Reports    Utilities    Help    Log Out

APPEAL,DISCREF,PROTO

**U.S. District Court**
**U.S. District Court for the Northern District of Oklahoma (Tulsa)**
**CIVIL DOCKET FOR CASE #: 4:23-cv-00177-JFH-SH**

Poe et al v. Drummond et al

Assigned to: Chief Judge John F Heil, III
Referred to: Magistrate Judge Susan E Huntsman
Case in other court:  10th Circuit, 23-05110 (#140)
Cause: 42:1983 Civil Rights Act

Date Filed: 05/02/2023
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

<u>**Plaintiff**</u>

**Peter Poe**
*by and through his parents and next friends, Paula Poe and Patrick Poe*

-

Paula Poe

-

Patrick Poe

represented by **Blaine R. Valencia**
Jenner & Block LLP
515 S. Flower Street
Suite 3300
Los Angeles, CA 90071
213-239-2265
Email: bvalencia@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
New York
125 Broad St.
Ste 18th Fl.
New York
New York, NY 10004
212-284-7320
Email: cstrangio@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
312-840-7219
Email: drobertson@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-549-2500
Email: hseldin@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
Jenner & Block
353 N Clark St
Chicago, IL 60654
312-840-7484
Email: jsitton@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
Jenner & Block LLP
455 Market Street
Suite 2100
San Francisco, CA 94105
415-293-5943
Email: LEdelstein@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
Jenner & Block
515 South Flower Street
Suite 3300
Los Angeles, CA 90071-2246
213-239-5100
Email: lgreene@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
Jenner & Block LLP

**J.A. 0001**

353 N. Clark St.
Chicago, IL 60654
773-882-4552
Email: lmcguire@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
Jenner & Block LLP
1099 New York Avenue, NW
Washington, DC 20001
202-639-6094
Fax: 202-661-4813
Email: lplatzer@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
202-639-6095
Email: mfindley@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
ACLU of Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
405-519-8193
Email: mlambert@acluok.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, Floor 19
New York, NY 10005
212-809-8585
Email: ogonzalez-pagan@lambdalegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036
212-303-2536
Email: rjaffre@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
Lambda Legal Defense and Education Fund, Inc.
1776 K. Street NW
Ste 8th Floor
Washington, DC 20006
202-429-2057
Email: sbuchert@lambdalegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
Lambda Legal
3500 Oak Lawn Ave.
Ste. 500
Dallas, TX 75219
214-219-8585
Fax: 214-481-9140
Email: sskeen@lambdalegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Paula Poe**                            represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*

**J.A. 0002**

*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Patrick Poe**                              represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**

**J.A. 0003**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Daphne Doe**                                              represented by **Blaine R. Valencia**
*by and through her guardian and next friend, Donna Doe*              (See above for address)
-                                                                     *LEAD ATTORNEY*
Donna Doe                                                             *ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 0004**

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donna Doe**                        represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)

**J.A. 0005**

LEAD ATTORNEY
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Boe**
*by and through his parents and next friends, Bethany Boe and Benjamin Boe*
-
Bethany Boe
-
Benjamin Boe

represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 0006**

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Bethany Boe**                              represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benjamin Boe**                                                                  represented by **Blaine R. Valencia**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Chase Strangio**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Daniel L. Robertson**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Harper Samuel Seldin**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Jocelyn Ann Sitton**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Laura Joy Edelstein**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Lauren Michelle Greene**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Lillian Margaret McGuire**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Luke Platzer**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Madeleine V. Findley**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Megan Elizabeth Lambert**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Omar Gonzalez-Pagan**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Remi Jaffre**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Sasha Buchert**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Shelly Lynn Skeen**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lydia Loe**                                                                     represented by **Blaine R. Valencia**
*by and through her parent and next friend, Lauren Loe*                           (See above for address)
-                                                                                 *LEAD ATTORNEY*
Lauren Loe                                                                        *ATTORNEY TO BE NOTICED*

                                                                                  **Chase Strangio**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Daniel L. Robertson**
                                                                                  (See above for address)
                                                                                  *LEAD ATTORNEY*

**J.A. 0008**

*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Lauren Loe**                    represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**

J.A. 0009

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Ryan Roe**
*by and through his parents and next friends, Rachel Roe and Richard Roe*
-
Rachel Roe
-
Richard Roe

represented by **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

J.A. 0010

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel Roe**                    represented by  **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)

J.A. 0011

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Richard Roe**                                   represented by   **Blaine R. Valencia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 0012**

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shauna Lawlis**                    represented by  **Blaine R. Valencia**
*Dr., on behalf of her patients*                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel L. Robertson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harper Samuel Seldin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jocelyn Ann Sitton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Joy Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Michelle Greene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lillian Margaret McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke Platzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeleine V. Findley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Elizabeth Lambert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Omar Gonzalez-Pagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Remi Jaffre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sasha Buchert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelly Lynn Skeen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

J.A. 0013

**Defendant**

**Gentner Drummond**
*in his official capacity as Attorney General of the State of Oklahoma*

represented by **Audrey A Weaver**
Oklahoma Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
405-522-4435
Email: audrey.weaver@oag.ok.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
Drummond Law Firm
1500 S UTICA AVE STE 400
TULSA, OK 74104
918-749-7378
Fax: 918-749-7869
Email: gmg@drumlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
Oklahoma Attorney General
Solicitor General
313 NE 21st Street
Oklahoma City, OK 73013
405-521-3921
Email: william.flanagan@oag.ok.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
Office of the Attorney General (OKC 313)
313 NE 21ST ST
OKLAHOMA CITY, OK 73105
405-522-4798
Fax: 405-521-4518
Email: zach.west@oag.ok.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven Katsis**
*M.D., in his official capacity as President of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trevor Nutt**
*in his official capacity as Vice-President of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Clayton Bullard**
*in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

J.A. 0014

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Susan Chambers**
*M.D., in her official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Louis Cox**
*M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark Fixley**
*M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeremy Hall**
*in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 0015**

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Timothy Holder**                                      represented by **Audrey A Weaver**
*M.D., in his official capacity as a member of the Oklahoma State Board*                    (See above for address)
*of Medical Licensure and Supervision*                  *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Robert Howard**                                       represented by **Audrey A Weaver**
*in his official capacity as a member of the Oklahoma State Board of*                      (See above for address)
*Medical Licensure and Supervision*                     *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Ross Vanhooser**                                      represented by **Audrey A Weaver**
*M.D., in his official capacity as a member of the Oklahoma State Board*                    (See above for address)
*of Medical Licensure and Supervision*                  *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Don Wilber**                                          represented by **Audrey A Weaver**
*M.D., in his official capacity as a member of the Oklahoma State Board*                    (See above for address)
*of Medical Licensure and Supervision*                  *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Katherine O'Dell**                                    represented by **Audrey A Weaver**
*D.N.P., R.N., in her official capacity as President of the Oklahoma Board*                    (See above for address)
*of Nursing*                                            *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Kyle Leemaster**                                      represented by **Audrey A Weaver**
*M.B.A., R.N., in his official capacity as Vice-President of the Oklahoma*                    (See above for address)
*Board of Nursing*                                      *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Shawn Stachovic**                                     represented by **Audrey A Weaver**
*L.P.N., in her official capacity as Secretary of the Oklahoma Board of*                    (See above for address)
*Nursing*                                               *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**
**Shelly Swalley**                                      represented by **Audrey A Weaver**
*M.S., R.N., in her official capacity as a member of the Oklahoma Board*                    (See above for address)
*of Nursing*                                            *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Garry Michael Gaskins , II**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **William Patrick Flanagan**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Zachary Paul West**
                                                        (See above for address)

J.A. 0017

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lindsay Potts**                                            represented by **Audrey A Weaver**
*L.P.N., in her official capacity as a member of the Oklahoma Board of*                    (See above for address)
*Nursing*                                                    *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Garry Michael Gaskins , II**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **William Patrick Flanagan**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachary Paul West**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Amber Garretson**                                          represented by **Audrey A Weaver**
*APRN-CNS, C.C.R.N., in her official capacity as a member of the*                    (See above for address)
*Oklahoma Board of Nursing*                                  *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Garry Michael Gaskins , II**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **William Patrick Flanagan**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachary Paul West**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Nikole Hicks**                                             represented by **Audrey A Weaver**
*Ph.D., R.N., CNE, in her official capacity as a member of the Oklahoma*                    (See above for address)
*Board of Nursing*                                           *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Garry Michael Gaskins , II**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **William Patrick Flanagan**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachary Paul West**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Callie Rinehart**                                          represented by **Audrey A Weaver**
*M.S.N., R.N., C.P.N., in her official capacity as a member of the*                    (See above for address)
*Oklahoma Board of Nursing*                                  *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Garry Michael Gaskins , II**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **William Patrick Flanagan**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachary Paul West**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**J.A. 0018**

**Shaston Salie**
*L.P.N., in her official capacity as a member of the Oklahoma Board of Nursing*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Georgina Calhoun**
*in her official capacity as a member of the Oklahoma Board of Nursing*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Marisa Wrape**
*in her official capacity as a member of the Oklahoma Board of Nursing*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Bret S Langerman**
*D.O., in his official capacity as President of the Oklahoma State Board of Osteopathic Examiners*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Catherine C Taylor**
*J.D., in her official capacity as Vice President of the Oklahoma State Board of Osteopathic Examiners*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 0019**

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Duane G Koehler**                                              represented by   **Audrey A Weaver**
*D.O., in his official capacity as Secretary-Treasurer of the Oklahoma*                (See above for address)
*State Board of Osteopathic Examiners*                                    *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Katie L Templeton**                                            represented by   **Audrey A Weaver**
*J.D., in her official capacity as a member of the Oklahoma State Board of*             (See above for address)
*Osteopathic Examiners*                                                  *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Leroy E Young**                                               represented by   **Audrey A Weaver**
*D.O., in his official capacity as a member of the Oklahoma State Board of*             (See above for address)
*Osteopathic Examiners*                                                  *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dennis J Carter**                                             represented by   **Audrey A Weaver**
*D.O., in his official capacity as a member of the Oklahoma State Board of*             (See above for address)
*Osteopathic Examiners*                                                  *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*

**J.A. 0020**

*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**C Michael Ogle**
*D.O., in his official capacity as a member of the Oklahoma State Board of Osteopathic Examiners*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chelsey D Gilbertson**
*D.O., in her official capacity as a member of the Oklahoma State Board of Osteopathic Examiners*

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**University Hospitals Authority**

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**University Hospitals Trust**

represented by **Audrey A Weaver**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garry Michael Gaskins , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Patrick Flanagan**
(See above for address)

**J.A. 0021**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Paul West**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Randy Dowell**                                    represented by **Audrey A Weaver**
*in his official capacity as Chief Executive Officer of the University*                    (See above for address)
*Hospitals Authority and the University Hospitials Trust*                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Garry Michael Gaskins , II**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **William Patrick Flanagan**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Zachary Paul West**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**G Raney Williams, Jr**                                    represented by **Audrey A Weaver**
*in his official capacity as Chair of the Board of Directors of the*                    (See above for address)
*University Hospitals Authority and trustee of the University Hospitials*                    *LEAD ATTORNEY*
*Trust*                                                    *ATTORNEY TO BE NOTICED*

                                                    **Garry Michael Gaskins , II**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **William Patrick Flanagan**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Zachary Paul West**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Jim Everest**                                    represented by **Audrey A Weaver**
*in his official capacity as Vice-Chair of the Board of Directors of the*                    (See above for address)
*University Hospitals Authority and trustee of the University Hospitials*                    *LEAD ATTORNEY*
*Trust*                                                    *ATTORNEY TO BE NOTICED*

                                                    **Garry Michael Gaskins , II**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **William Patrick Flanagan**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Zachary Paul West**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Anthony F Keating, III**                                    represented by **Audrey A Weaver**
*in his official capacity as Secretary of the Board of Directors of the*                    (See above for address)
*University Hospitals Authority and trustee of the University Hospitials*                    *LEAD ATTORNEY*
*Trust*                                                    *ATTORNEY TO BE NOTICED*

                                                    **Garry Michael Gaskins , II**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **William Patrick Flanagan**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Zachary Paul West**

**J.A. 0022**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Gary E Raskob**                                          represented by   **Audrey A Weaver**
*in his official capacity as member of the Board of Directors of the*                   (See above for address)
*University Hospitals Authority and trustee of the University Hospitials*                *LEAD ATTORNEY*
*Trust*                                                                                  *ATTORNEY TO BE NOTICED*

                                                                         **Garry Michael Gaskins , II**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **William Patrick Flanagan**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Zachary Paul West**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**Kevin Corbett**                                          represented by   **Audrey A Weaver**
*in his official capacity as member of the Board of Directors of the*                   *LEAD ATTORNEY*
*University Hospitals Authority and trustee of the University Hospitials*                *ATTORNEY TO BE NOTICED*
*Trust*

                                                                         **Garry Michael Gaskins , II**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **William Patrick Flanagan**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Zachary Paul West**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**OU Medicine, Inc.**                                      represented by   **James Craig Buchan**
*an Oklahoma not-for-profit corporation*                                 McAfee & Taft (Tulsa)
*doing business as*                                                       TWO W SECOND ST STE 1100
OU Health                                                                TULSA, OK 74103
                                                                         918-587-0000
                                                                         Fax: 918-574-3149
                                                                         Email: craig.buchan@mcafeetaft.com
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Jennie Mook**
                                                                         McAfee & Taft
                                                                         Oklahoma City
                                                                         8th Fl., Two Leadership Sq., 211 N Robinson
                                                                         Oklahoma City, OK 73102
                                                                         405-235-9621
                                                                         Fax: 405-235-0439
                                                                         Email: jennie.mook@mcafeetaft.com
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Ronald Theodore Shinn , Jr**
                                                                         McAfee & Taft
                                                                         211 N ROBINSON 10TH FL
                                                                         OKLAHOMA CITY, OK 73102
                                                                         405-235-9621
                                                                         Fax: 405-235-0439
                                                                         Email: ron.shinn@mcafeetaft.com
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**Richard Lofgren**                                        represented by   **James Craig Buchan**
*Dr., in his official capacity as President and Cheif Executive Officer of*              (See above for address)
OU Health*                                                               *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Jennie Mook**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

J.A. 0023

**Ronald Theodore Shinn , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/02/2023 | 1 | CIVIL COVER SHEET by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) (Entered: 05/02/2023) |
| 05/02/2023 | 2 | COMPLAINT against All Defendants (paid $402 filing fee; receipt number AOKNDC-2804144) by Richard Roe, Ryan Roe, Peter Poe, Lauren Loe, Lydia Loe, Rachel Roe, Shauna Lawlis, Benjamin Boe, Daphne Doe, Brandon Boe, Bethany Boe, Donna Doe, Paula Poe, Patrick Poe (Lambert, Megan) (Entered: 05/02/2023) |
| 05/02/2023 | 3 | ATTORNEY APPEARANCE by Megan Elizabeth Lambert on behalf of All Plaintiffs (Lambert, Megan) (Entered: 05/02/2023) |
| 05/02/2023 | 4 | MOTION to Proceed Under Pseudonyms by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) (Entered: 05/02/2023) |
| 05/02/2023 | 5 | MOTION for Preliminary Injunction by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) Modified on 5/3/2023; this is a two-part motion of which only one part was filed - see Motion for Miscellaneous Relief (Motion for Expedited Consideration) dkt # 23 (srt, Dpty Clk). (Entered: 05/02/2023) |
| 05/02/2023 | 6 | BRIEF in Support of Motion (Re: 5 MOTION for Preliminary Injunction ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe ; (With attachments) (Lambert, Megan) (Entered: 05/02/2023) |
| 05/02/2023 | 23 | MOTION for Expedited Consideration (submitted as dkt # 5 ) (Re: 5 MOTION for Preliminary Injunction ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (srt, Dpty Clk) Modified on 5/5/2023 to remove filer selected in error (srt, Dpty Clk). (Entered: 05/05/2023) |
| 05/03/2023 | 7 | SUMMONS Issued by Court Clerk as to All Defendants (lmt, Dpty Clk) (Entered: 05/03/2023) |
| 05/03/2023 | 8 | MINUTE ORDER by Court Clerk , directing Peter Poe, Paula Poe, Patrick Poe, Daphne Doe, Donna Doe, Brandon Boe, Bethany Boe, Benjamin Boe, Lydia Loe, Lauren Loe, Ryan Roe, Rachel Roe, Richard Roe, and Shauna Lawlis to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) (Entered: 05/03/2023) |
| 05/03/2023 | 9 | MOTION for Attorney(s) Chase Strangio to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804515) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 10 | MOTION for Attorney(s) Harper Seldin to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804524) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 11 | MOTION for Attorney(s) Laura J. Edelstein to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804526) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 12 | MOTION for Attorney(s) Luke C. Platzer to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804530) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 13 | MOTION for Attorney(s) Madeleine V. Findley to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804532) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 14 | MOTION for Attorney(s) Lauren M. Greene to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804534) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 15 | MOTION for Attorney(s) Blaine R. Valencia to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804538) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 16 | MOTION for Attorney(s) Omar Gonzalez-Pagan to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804540) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 17 | MOTION for Attorney(s) Shelly L. Skeen to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804541) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 18 | MOTION for Attorney(s) Sasha Buchert to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804542) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 19 | MOTION for Attorney(s) Remi Jaffre to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804545) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 20 | MOTION for Attorney(s) Lillian M. McGuire to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804551) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 21 | MOTION for Attorney(s) Jocelyn Sitton to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804556) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | 22 | MOTION for Attorney(s) Daniel L. Robertson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804561) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (With attachments) (Lambert, Megan) (Entered: 05/03/2023) |
| 05/03/2023 | | NOTICE of Docket Entry Modification; Error: this is a two part motion of which only one part was efiled; Correction: efiled Motion for Miscellaneous Relief (Motion for Expedited Consideration) at dkt # 23 (Re: 5 MOTION for Preliminary Injunction ) (srt, Dpty Clk) (Entered: 05/03/2023) |

J.A. 0024

| | | |
|---|---|---|
| 05/03/2023 | 24 | MINUTE ORDER by Chief Judge John F Heil, III : granting the following Motions for Admission Pro Hac Vice of attorneys Chase Strangio, Harper Seldin, Laura J Edelstein, Luke C Platzer, Madeleine V Findley, Lauren M Greene, Blaine R Valencia, Omar Gonzalez-Pagan, Shelly L Skeen, Sasha Buchert, Remi Jaffre, Lillian M McGuire, Jocelyn Sitton, Daniel L Robertson for Plaintiffs, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. Admission is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. ; granting 9 Motion for Admission Pro Hac Vice; granting 10 Motion for Admission Pro Hac Vice; granting 11 Motion for Admission Pro Hac Vice; granting 12 Motion for Admission Pro Hac Vice; granting 13 Motion for Admission Pro Hac Vice; granting 14 Motion for Admission Pro Hac Vice; granting 15 Motion for Admission Pro Hac Vice; granting 16 Motion for Admission Pro Hac Vice; granting 17 Motion for Admission Pro Hac Vice; granting 18 Motion for Admission Pro Hac Vice; granting 19 Motion for Admission Pro Hac Vice; granting 20 Motion for Admission Pro Hac Vice; granting 21 Motion for Admission Pro Hac Vice; granting 22 Motion for Admission Pro Hac Vice (Re: 9 MOTION for Attorney(s) Chase Strangio to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804515), 10 MOTION for Attorney(s) Harper Seldin to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804524), 11 MOTION for Attorney(s) Laura J. Edelstein to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804526), 12 MOTION for Attorney(s) Luke C. Platzer to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804530), 13 MOTION for Attorney(s) Madeleine V. Findley to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804532), 14 MOTION for Attorney(s) Lauren M. Greene to be Admitted Pro Hac Vice (paid $100 Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804534), 15 MOTION for Attorney(s) Blaine R. Valencia to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804538), 16 MOTION for Attorney(s) Omar Gonzalez-Pagan to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804540), 17 MOTION for Attorney(s) Shelly L. Skeen to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804541), 18 MOTION for Attorney(s) Sasha Buchert to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804542), 19 MOTION for Attorney(s) Remi Jaffre to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804545), 20 MOTION for Attorney(s) Lillian M. McGuire to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804556), 22 MOTION for Attorney(s) Daniel L. Robertson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2804561) ) (This entry is the Official Order of the Court. No document is attached.) (srt, Dpty Clk) (Entered: 05/03/2023) |
| 05/05/2023 | 25 | ATTORNEY APPEARANCE by Omar Gonzalez-Pagan on behalf of All Plaintiffs [Note: Attorney Omar Gonzalez-Pagan added to party Benjamin Boe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Bethany Boe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Brandon Boe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Daphne Doe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Donna Doe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Shauna Lawlis(pty:pla), Attorney Omar Gonzalez-Pagan added to party Lauren Loe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Lydia Loe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Patrick Poe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Paula Poe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Peter Poe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Rachel Roe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Richard Roe(pty:pla), Attorney Omar Gonzalez-Pagan added to party Ryan Roe(pty:pla).] (Gonzalez-Pagan, Omar) (Entered: 05/05/2023) |
| 05/08/2023 | 26 | ATTORNEY APPEARANCE by Sasha Buchert on behalf of All Plaintiffs [Note: Attorney Sasha Buchert added to party Benjamin Boe(pty:pla), Attorney Sasha Buchert added to party Bethany Boe(pty:pla), Attorney Sasha Buchert added to party Brandon Boe(pty:pla), Attorney Sasha Buchert added to party Daphne Doe(pty:pla), Attorney Sasha Buchert added to party Donna Doe(pty:pla), Attorney Sasha Buchert added to party Shauna Lawlis(pty:pla), Attorney Sasha Buchert added to party Lauren Loe(pty:pla), Attorney Sasha Buchert added to party Lydia Loe(pty:pla), Attorney Sasha Buchert added to party Patrick Poe(pty:pla), Attorney Sasha Buchert added to party Paula Poe(pty:pla), Attorney Sasha Buchert added to party Peter Poe(pty:pla), Attorney Sasha Buchert added to party Rachel Roe(pty:pla), Attorney Sasha Buchert added to party Richard Roe(pty:pla), Attorney Sasha Buchert added to party Ryan Roe(pty:pla).] (Buchert, Sasha) (Entered: 05/08/2023) |
| 05/08/2023 | 27 | ATTORNEY APPEARANCE by Shelly Lynn Skeen on behalf of All Plaintiffs [Note: Attorney Shelly Lynn Skeen added to party Benjamin Boe(pty:pla), Attorney Shelly Lynn Skeen added to party Bethany Boe(pty:pla), Attorney Shelly Lynn Skeen added to party Brandon Boe(pty:pla), Attorney Shelly Lynn Skeen added to party Daphne Doe(pty:pla), Attorney Shelly Lynn Skeen added to party Donna Doe(pty:pla), Attorney Shelly Lynn Skeen added to party Shauna Lawlis(pty:pla), Attorney Shelly Lynn Skeen added to party Lauren Loe(pty:pla), Attorney Shelly Lynn Skeen added to party Lydia Loe(pty:pla), Attorney Shelly Lynn Skeen added to party Patrick Poe(pty:pla), Attorney Shelly Lynn Skeen added to party Paula Poe(pty:pla), Attorney Shelly Lynn Skeen added to party Peter Poe(pty:pla), Attorney Shelly Lynn Skeen added to party Rachel Roe(pty:pla), Attorney Shelly Lynn Skeen added to party Richard Roe(pty:pla), Attorney Shelly Lynn Skeen added to party Ryan Roe(pty:pla).] (Skeen, Shelly) (Entered: 05/08/2023) |
| 05/08/2023 | 28 | ATTORNEY APPEARANCE by Harper Samuel Seldin on behalf of All Plaintiffs [Note: Attorney Harper Samuel Seldin added to party Benjamin Boe(pty:pla), Attorney Harper Samuel Seldin added to party Bethany Boe(pty:pla), Attorney Harper Samuel Seldin added to party Brandon Boe(pty:pla), Attorney Harper Samuel Seldin added to party Daphne Doe(pty:pla), Attorney Harper Samuel Seldin added to party Donna Doe(pty:pla), Attorney Harper Samuel Seldin added to party Shauna Lawlis(pty:pla), Attorney Harper Samuel Seldin added to party Lauren Loe(pty:pla), Attorney Harper Samuel Seldin added to party Lydia Loe(pty:pla), Attorney Harper Samuel Seldin added to party Patrick Poe(pty:pla), Attorney Harper Samuel Seldin added to party Paula Poe(pty:pla), Attorney Harper Samuel Seldin added to party Peter Poe(pty:pla), Attorney Harper Samuel Seldin added to party Rachel Roe(pty:pla), Attorney Harper Samuel Seldin added to party Richard Roe(pty:pla), Attorney Harper Samuel Seldin added to party Ryan Roe(pty:pla).] (Seldin, Harper) (Entered: 05/08/2023) |
| 05/08/2023 | 29 | SUMMONS Returned Executed re: All Defendants (Re: 2 Complaint, ) by Richard Roe, Ryan Roe, Peter Poe, Lauren Loe, Lydia Loe, Rachel Roe, Shauna Lawlis, Benjamin Boe, Daphne Doe, Brandon Boe, Bethany Boe, Donna Doe, Paula Poe, Patrick Poe (Lambert, Megan) (Entered: 05/08/2023) |
| 05/09/2023 | 30 | MINUTE ORDER by Chief Judge John F Heil, III : Plaintiffs' request for expedited consideration is denied. Defendants' response to the Motion for Preliminary Injunction is due 5/26/2023. Plaintiffs' reply is due 6/9/2023. A hearing on the Motion for Preliminary Injunction is set for 6/16/2023 at 2:00 PM ; setting/resetting deadline(s)/hearing(s): ( Responses due by 5/26/2023, Replies due by 6/9/2023, Motion Hearing set for 6/16/2023 at 02:00 PM before Chief Judge John F Heil III); denying 23 Motion for Miscellaneous Relief (Re: 5 MOTION for Preliminary Injunction , 23 MOTION for Expedited Consideration (submitted as dkt # 5 ) ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 05/09/2023) |
| 05/09/2023 | 31 | ATTORNEY APPEARANCE by Laura Joy Edelstein on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Laura Joy Edelstein added to party Benjamin Boe(pty:pla), Attorney Laura Joy Edelstein added to party Bethany Boe(pty:pla), Attorney Laura Joy Edelstein added to party Brandon Boe(pty:pla), Attorney Laura Joy Edelstein added to party Daphne Doe(pty:pla), Attorney Laura Joy Edelstein added to party Donna Doe(pty:pla), Attorney Laura Joy Edelstein added to party Shauna Lawlis(pty:pla), Attorney Laura Joy Edelstein added to party Lauren Loe(pty:pla), Attorney Laura Joy Edelstein added to party Lydia Loe(pty:pla), Attorney Laura Joy Edelstein added to party Patrick Poe(pty:pla), Attorney Laura Joy Edelstein added to party Paula Poe(pty:pla), Attorney Laura Joy Edelstein added to party Peter Poe(pty:pla), Attorney Laura Joy Edelstein added to party Rachel Roe(pty:pla), Attorney Laura Joy Edelstein added to party Richard Roe(pty:pla), Attorney Laura Joy Edelstein added to party Ryan Roe(pty:pla).] (Edelstein, Laura) (Entered: 05/09/2023) |
| 05/09/2023 | 32 | ATTORNEY APPEARANCE by Remi Jaffre on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Remi Jaffre added to party Benjamin Boe(pty:pla), Attorney Remi Jaffre added to party Bethany Boe(pty:pla), Attorney Remi Jaffre added to party Brandon Boe(pty:pla), Attorney Remi Jaffre added to party Daphne Doe(pty:pla), Attorney Remi Jaffre added to party Donna Doe(pty:pla), Attorney Remi Jaffre added to party Shauna Lawlis(pty:pla), Attorney Remi Jaffre added to party Lauren Loe(pty:pla), Attorney Remi Jaffre added to party Lydia Loe(pty:pla), Attorney Remi Jaffre added to party Patrick Poe(pty:pla), Attorney Remi Jaffre added to party Paula Poe(pty:pla), Attorney Remi Jaffre added to party Peter Poe(pty:pla), Attorney Remi Jaffre added to party Rachel Roe(pty:pla), Attorney Remi Jaffre added to party Richard Roe(pty:pla), Attorney Remi Jaffre added to party Ryan Roe(pty:pla).] (Jaffre, Remi) (Entered: 05/09/2023) |
| 05/09/2023 | 33 | ATTORNEY APPEARANCE by Luke Platzer on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Luke Platzer added to party Benjamin Boe(pty:pla), Attorney Luke Platzer added to party Bethany Boe(pty:pla), Attorney Luke Platzer added to party Brandon Boe(pty:pla), Attorney Luke Platzer added to party Daphne Doe(pty:pla), Attorney Luke Platzer added to party Donna Doe(pty:pla), Attorney Luke Platzer added to party Shauna Lawlis(pty:pla), Attorney Luke Platzer added to party Lauren Loe(pty:pla), Attorney Luke Platzer added to party Lydia Loe(pty:pla), Attorney Luke Platzer added to party Patrick Poe(pty:pla), Attorney Luke Platzer added to party Paula Poe(pty:pla), Attorney Luke Platzer added to party Peter Poe(pty:pla), Attorney Luke Platzer added to party Rachel Roe(pty:pla), Attorney Luke Platzer added to party Richard Roe(pty:pla), Attorney Luke Platzer added to party Ryan Roe(pty:pla).] (Platzer, Luke) (Entered: 05/09/2023) |
| 05/09/2023 | 34 | ATTORNEY APPEARANCE by Madeleine V. Findley on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Madeleine V. Findley added to party Benjamin Boe(pty:pla), Attorney Madeleine V. Findley added to party Bethany Boe(pty:pla), Attorney Madeleine V. Findley added to party Brandon Boe(pty:pla), Attorney |

J.A. 0025

| | | |
|---|---|---|
| | | Madeleine V. Findley added to party Daphne Doe(pty:pla), Attorney Madeleine V. Findley added to party Donna Doe(pty:pla), Attorney Madeleine V. Findley added to party Shauna Lawlis(pty:pla), Attorney Madeleine V. Findley added to party Lauren Loe(pty:pla), Attorney Madeleine V. Findley added to party Lydia Loe(pty:pla), Attorney Madeleine V. Findley added to party Patrick Poe(pty:pla), Attorney Madeleine V. Findley added to party Paula Poe(pty:pla), Attorney Madeleine V. Findley added to party Peter Poe(pty:pla), Attorney Madeleine V. Findley added to party Rachel Roe(pty:pla), Attorney Madeleine V. Findley added to party Richard Roe(pty:pla), Attorney Madeleine V. Findley added to party Ryan Roe(pty:pla).] (Findley, Madeleine) (Entered: 05/09/2023) |
| 05/09/2023 | 35 | ATTORNEY APPEARANCE by Lauren Michelle Greene on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Lauren Michelle Greene added to party Benjamin Boe(pty:pla), Attorney Lauren Michelle Greene added to party Bethany Boe(pty:pla), Attorney Lauren Michelle Greene added to party Brandon Boe(pty:pla), Attorney Lauren Michelle Greene added to party Daphne Doe(pty:pla), Attorney Lauren Michelle Greene added to party Donna Doe(pty:pla), Attorney Lauren Michelle Greene added to party Shauna Lawlis(pty:pla), Attorney Lauren Michelle Greene added to party Lauren Loe(pty:pla), Attorney Lauren Michelle Greene added to party Lydia Loe(pty:pla), Attorney Lauren Michelle Greene added to party Patrick Poe(pty:pla), Attorney Lauren Michelle Greene added to party Paula Poe(pty:pla), Attorney Lauren Michelle Greene added to party Peter Poe(pty:pla), Attorney Lauren Michelle Greene added to party Rachel Roe(pty:pla), Attorney Lauren Michelle Greene added to party Richard Roe(pty:pla), Attorney Lauren Michelle Greene added to party Ryan Roe(pty:pla).] (Greene, Lauren) (Entered: 05/09/2023) |
| 05/09/2023 | 36 | ATTORNEY APPEARANCE by Lillian Margaret McGuire on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Lillian Margaret McGuire added to party Benjamin Boe(pty:pla), Attorney Lillian Margaret McGuire added to party Bethany Boe(pty:pla), Attorney Lillian Margaret McGuire added to party Brandon Boe(pty:pla), Attorney Lillian Margaret McGuire added to party Daphne Doe(pty:pla), Attorney Lillian Margaret McGuire added to party Donna Doe(pty:pla), Attorney Lillian Margaret McGuire added to party Shauna Lawlis(pty:pla), Attorney Lillian Margaret McGuire added to party Lauren Loe(pty:pla), Attorney Lillian Margaret McGuire added to party Lydia Loe(pty:pla), Attorney Lillian Margaret McGuire added to party Patrick Poe(pty:pla), Attorney Lillian Margaret McGuire added to party Paula Poe(pty:pla), Attorney Lillian Margaret McGuire added to party Peter Poe(pty:pla), Attorney Lillian Margaret McGuire added to party Rachel Roe(pty:pla), Attorney Lillian Margaret McGuire added to party Richard Roe(pty:pla), Attorney Lillian Margaret McGuire added to party Ryan Roe(pty:pla).] (McGuire, Lillian) (Entered: 05/09/2023) |
| 05/09/2023 | 37 | ATTORNEY APPEARANCE by Jocelyn Ann Sitton on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Jocelyn Ann Sitton added to party Benjamin Boe(pty:pla), Attorney Jocelyn Ann Sitton added to party Bethany Boe(pty:pla), Attorney Jocelyn Ann Sitton added to party Brandon Boe(pty:pla), Attorney Jocelyn Ann Sitton added to party Daphne Doe(pty:pla), Attorney Jocelyn Ann Sitton added to party Donna Doe(pty:pla), Attorney Jocelyn Ann Sitton added to party Shauna Lawlis(pty:pla), Attorney Jocelyn Ann Sitton added to party Lauren Loe(pty:pla), Attorney Jocelyn Ann Sitton added to party Lydia Loe(pty:pla), Attorney Jocelyn Ann Sitton added to party Patrick Poe(pty:pla), Attorney Jocelyn Ann Sitton added to party Paula Poe(pty:pla), Attorney Jocelyn Ann Sitton added to party Peter Poe(pty:pla), Attorney Jocelyn Ann Sitton added to party Rachel Roe(pty:pla), Attorney Jocelyn Ann Sitton added to party Richard Roe(pty:pla), Attorney Jocelyn Ann Sitton added to party Ryan Roe(pty:pla).] (Sitton, Jocelyn) (Entered: 05/09/2023) |
| 05/09/2023 | 38 | ATTORNEY APPEARANCE by Daniel L. Robertson on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Daniel L. Robertson added to party Benjamin Boe(pty:pla), Attorney Daniel L. Robertson added to party Bethany Boe(pty:pla), Attorney Daniel L. Robertson added to party Brandon Boe(pty:pla), Attorney Daniel L. Robertson added to party Daphne Doe(pty:pla), Attorney Daniel L. Robertson added to party Donna Doe(pty:pla), Attorney Daniel L. Robertson added to party Shauna Lawlis(pty:pla), Attorney Daniel L. Robertson added to party Lauren Loe(pty:pla), Attorney Daniel L. Robertson added to party Lydia Loe(pty:pla), Attorney Daniel L. Robertson added to party Patrick Poe(pty:pla), Attorney Daniel L. Robertson added to party Paula Poe(pty:pla), Attorney Daniel L. Robertson added to party Peter Poe(pty:pla), Attorney Daniel L. Robertson added to party Rachel Roe(pty:pla), Attorney Daniel L. Robertson added to party Richard Roe(pty:pla), Attorney Daniel L. Robertson added to party Ryan Roe(pty:pla).] (Robertson, Daniel) (Entered: 05/09/2023) |
| 05/09/2023 | 39 | ATTORNEY APPEARANCE by Blaine R. Valencia on behalf of Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe [Note: Attorney Blaine R. Valencia added to party Benjamin Boe(pty:pla), Attorney Blaine R. Valencia added to party Bethany Boe(pty:pla), Attorney Blaine R. Valencia added to party Brandon Boe(pty:pla), Attorney Blaine R. Valencia added to party Daphne Doe(pty:pla), Attorney Blaine R. Valencia added to party Donna Doe(pty:pla), Attorney Blaine R. Valencia added to party Shauna Lawlis(pty:pla), Attorney Blaine R. Valencia added to party Lauren Loe(pty:pla), Attorney Blaine R. Valencia added to party Lydia Loe(pty:pla), Attorney Blaine R. Valencia added to party Patrick Poe(pty:pla), Attorney Blaine R. Valencia added to party Paula Poe(pty:pla), Attorney Blaine R. Valencia added to party Peter Poe(pty:pla), Attorney Blaine R. Valencia added to party Rachel Roe(pty:pla), Attorney Blaine R. Valencia added to party Richard Roe(pty:pla), Attorney Blaine R. Valencia added to party Ryan Roe(pty:pla).] (Valencia, Blaine) (Entered: 05/09/2023) |
| 05/10/2023 | 40 | ATTORNEY APPEARANCE by Chase Strangio on behalf of All Plaintiffs [Note: Attorney Chase Strangio added to party Benjamin Boe(pty:pla), Attorney Chase Strangio added to party Bethany Boe(pty:pla), Attorney Chase Strangio added to party Brandon Boe(pty:pla), Attorney Chase Strangio added to party Daphne Doe(pty:pla), Attorney Chase Strangio added to party Donna Doe(pty:pla), Attorney Chase Strangio added to party Shauna Lawlis(pty:pla), Attorney Chase Strangio added to party Lauren Loe(pty:pla), Attorney Chase Strangio added to party Lydia Loe(pty:pla), Attorney Chase Strangio added to party Patrick Poe(pty:pla), Attorney Chase Strangio added to party Paula Poe(pty:pla), Attorney Chase Strangio added to party Peter Poe(pty:pla), Attorney Chase Strangio added to party Rachel Roe(pty:pla), Attorney Chase Strangio added to party Richard Roe(pty:pla), Attorney Chase Strangio added to party Ryan Roe(pty:pla).] (Strangio, Chase) (Entered: 05/10/2023) |
| 05/18/2023 | 41 | Joint MOTION for Extension of Time to Respond to Motion for Preliminary Injunction, Joint MOTION for Extension of Time to Reply to Motion Response to Motion for Preliminary Injunction, Joint MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) on Motion for Preliminary Injunction (Re: 5 MOTION for Preliminary Injunction ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) (Entered: 05/18/2023) |
| 05/19/2023 | 42 | MINUTE ORDER by Chief Judge John F Heil, III : the Joint Motion to Extend Briefing Deadlines and Continue Preliminary Injunction Hearing is granted. Defendants' response to the Motion for Preliminary Injunction is due 6/16/2023. Plaintiffs' reply is due 7/10/2023. The hearing on the Motion for Preliminary Injunction is set for 7/25/2023 at 9:00 AM ; setting/resetting deadline(s)/hearing(s): ( Responses due by 6/16/2023, Replies due by 7/10/2023, Motion Hearing set for 7/25/2023 at 09:00 AM before Chief Judge John F Heil III); granting 41 Motion for Extension of Time to Respond to Motion Response; granting 41 Motion for Extension of Time to Reply to Motion Response; granting 41 Motion to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (Re: 5 MOTION for Preliminary Injunction , 41 Joint MOTION for Extension of Time to Respond to Motion for Preliminary InjunctionJoint MOTION for Extension of Time to Reply to Motion Response to Motion for Preliminary InjunctionJoint MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) on Motion for Preliminary Injunction ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 05/19/2023) |
| 05/25/2023 | 43 | ATTORNEY APPEARANCE by Garry Michael Gaskins, II on behalf of Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachnik, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young [Note: Attorney Garry Michael Gaskins, II added to party Clayton Bullard(pty:dft), Attorney Garry Michael Gaskins, II added to party Georgina Calhoun(pty:dft), Attorney Garry Michael Gaskins, II added to party Dennis J Carter(pty:dft), Attorney Garry Michael Gaskins, II added to party Susan Chambers(pty:dft), Attorney Garry Michael Gaskins, II added to party Kevin Corbett(pty:dft), Attorney Garry Michael Gaskins, II added to party Louis Cox(pty:dft), Attorney Garry Michael Gaskins, II added to party Randy Dowell(pty:dft), Attorney Garry Michael Gaskins, II added to party Gentner Drummond(pty:dft), Attorney Garry Michael Gaskins, II added to party Jim Everest(pty:dft), Attorney Garry Michael Gaskins, II added to party Mark Fixley(pty:dft), Attorney Garry Michael Gaskins, II added to party Amber Garretson(pty:dft), Attorney Garry Michael Gaskins, II added to party Chelsey D Gilbertson(pty:dft), Attorney Garry Michael Gaskins, II added to party Jeremy Hall(pty:dft), Attorney Garry Michael Gaskins, II added to party Nikole Hicks(pty:dft), Attorney Garry Michael Gaskins, II added to party Timothy Holder(pty:dft), Attorney Garry Michael Gaskins, II added to party Robert Howard(pty:dft), Attorney Garry Michael Gaskins, II added to party Steven Katsis(pty:dft), Attorney Garry Michael Gaskins, II added to party Anthony F Keating, III(pty:dft), Attorney Garry Michael Gaskins, II added to party Duane G Koehler(pty:dft), Attorney Garry Michael Gaskins, II added to party Bret S Langerman(pty:dft), Attorney Garry Michael Gaskins, II added to party Kyle Leemaster(pty:dft), Attorney Garry Michael Gaskins, II added to party Trevor Nutt(pty:dft), Attorney Garry Michael Gaskins, II added to party Katherine O'Dell(pty:dft), Attorney Garry Michael Gaskins, II added to party C Michael Ogle(pty:dft), Attorney Garry Michael Gaskins, II added to party Lindsay |

**J.A. 0026**

| | | |
|---|---|---|
| | | Potts(pty:dft), Attorney Garry Michael Gaskins, II added to party Gary E Raskob(pty:dft), Attorney Garry Michael Gaskins, II added to party Callie Rinehart(pty:dft), Attorney Garry Michael Gaskins, II added to party Shaston Salie(pty:dft), Attorney Garry Michael Gaskins, II added to party Shawn Stachovic(pty:dft), Attorney Garry Michael Gaskins, II added to party Shelly Swalley(pty:dft), Attorney Garry Michael Gaskins, II added to party Catherine C Taylor(pty:dft), Attorney Garry Michael Gaskins, II added to party Katie L Templeton(pty:dft), Attorney Garry Michael Gaskins, II added to party University Hospitals Authority(pty:dft), Attorney Garry Michael Gaskins, II added to party University Hospitals Trust(pty:dft), Attorney Garry Michael Gaskins, II added to party Ross Vanhooser(pty:dft), Attorney Garry Michael Gaskins, II added to party Don Wilber(pty:dft), Attorney Garry Michael Gaskins, II added to party G Raney Williams, Jr(pty:dft), Attorney Garry Michael Gaskins, II added to party Marisa Wrape(pty:dft), Attorney Garry Michael Gaskins, II added to party Leroy E Young(pty:dft).] (Gaskins, Garry) (Entered: 05/25/2023) |
| 05/25/2023 | 44 | ATTORNEY APPEARANCE by Zachary Paul West on behalf of Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young [Note: Attorney Zachary Paul West added to party Clayton Bullard(pty:dft), Attorney Zachary Paul West added to party Georgina Calhoun(pty:dft), Attorney Zachary Paul West added to party Dennis J Carter(pty:dft), Attorney Zachary Paul West added to party Susan Chambers(pty:dft), Attorney Zachary Paul West added to party Kevin Corbett(pty:dft), Attorney Zachary Paul West added to party Louis Cox(pty:dft), Attorney Zachary Paul West added to party Randy Dowell(pty:dft), Attorney Zachary Paul West added to party Gentner Drummond(pty:dft), Attorney Zachary Paul West added to party Jim Everest(pty:dft), Attorney Zachary Paul West added to party Mark Fixley(pty:dft), Attorney Zachary Paul West added to party Amber Garretson(pty:dft), Attorney Zachary Paul West added to party Chelsey D Gilbertson(pty:dft), Attorney Zachary Paul West added to party Jeremy Hall(pty:dft), Attorney Zachary Paul West added to party Nikole Hicks(pty:dft), Attorney Zachary Paul West added to party Timothy Holder(pty:dft), Attorney Zachary Paul West added to party Robert Howard(pty:dft), Attorney Zachary Paul West added to party Steven Katsis(pty:dft), Attorney Zachary Paul West added to party Anthony F Keating, III(pty:dft), Attorney Zachary Paul West added to party Duane G Koehler(pty:dft), Attorney Zachary Paul West added to party Bret S Langerman(pty:dft), Attorney Zachary Paul West added to party Kyle Leemaster(pty:dft), Attorney Zachary Paul West added to party Trevor Nutt(pty:dft), Attorney Zachary Paul West added to party Katherine O'Dell(pty:dft), Attorney Zachary Paul West added to party C Michael Ogle(pty:dft), Attorney Zachary Paul West added to party Lindsay Potts(pty:dft), Attorney Zachary Paul West added to party Gary E Raskob(pty:dft), Attorney Zachary Paul West added to party Callie Rinehart(pty:dft), Attorney Zachary Paul West added to party Shaston Salie(pty:dft), Attorney Zachary Paul West added to party Shawn Stachovic(pty:dft), Attorney Zachary Paul West added to party Shelly Swalley(pty:dft), Attorney Zachary Paul West added to party Catherine C Taylor(pty:dft), Attorney Zachary Paul West added to party Katie L Templeton(pty:dft), Attorney Zachary Paul West added to party University Hospitals Authority(pty:dft), Attorney Zachary Paul West added to party University Hospitals Trust(pty:dft), Attorney Zachary Paul West added to party Ross Vanhooser(pty:dft), Attorney Zachary Paul West added to party Don Wilber(pty:dft), Attorney Zachary Paul West added to party G Raney Williams, Jr(pty:dft), Attorney Zachary Paul West added to party Marisa Wrape(pty:dft), Attorney Zachary Paul West added to party Leroy E Young(pty:dft).] (West, Zachary) (Entered: 05/25/2023) |
| 05/25/2023 | 45 | ATTORNEY APPEARANCE by William Flanagan on behalf of Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young [Note: Attorney William Flanagan added to party Clayton Bullard(pty:dft), Attorney William Flanagan added to party Georgina Calhoun(pty:dft), Attorney William Flanagan added to party Dennis J Carter(pty:dft), Attorney William Flanagan added to party Susan Chambers(pty:dft), Attorney William Flanagan added to party Kevin Corbett(pty:dft), Attorney William Flanagan added to party Louis Cox(pty:dft), Attorney William Flanagan added to party Randy Dowell(pty:dft), Attorney William Flanagan added to party Gentner Drummond(pty:dft), Attorney William Flanagan added to party Jim Everest(pty:dft), Attorney William Flanagan added to party Mark Fixley(pty:dft), Attorney William Flanagan added to party Amber Garretson(pty:dft), Attorney William Flanagan added to party Chelsey D Gilbertson(pty:dft), Attorney William Flanagan added to party Jeremy Hall(pty:dft), Attorney William Flanagan added to party Nikole Hicks(pty:dft), Attorney William Flanagan added to party Timothy Holder(pty:dft), Attorney William Flanagan added to party Robert Howard(pty:dft), Attorney William Flanagan added to party Steven Katsis(pty:dft), Attorney William Flanagan added to party Anthony F Keating, III(pty:dft), Attorney William Flanagan added to party Duane G Koehler(pty:dft), Attorney William Flanagan added to party Bret S Langerman(pty:dft), Attorney William Flanagan added to party Kyle Leemaster(pty:dft), Attorney William Flanagan added to party Trevor Nutt(pty:dft), Attorney William Flanagan added to party Katherine O'Dell(pty:dft), Attorney William Flanagan added to party C Michael Ogle(pty:dft), Attorney William Flanagan added to party Lindsay Potts(pty:dft), Attorney William Flanagan added to party Gary E Raskob(pty:dft), Attorney William Flanagan added to party Callie Rinehart(pty:dft), Attorney William Flanagan added to party Shaston Salie(pty:dft), Attorney William Flanagan added to party Shawn Stachovic(pty:dft), Attorney William Flanagan added to party Shelly Swalley(pty:dft), Attorney William Flanagan added to party Catherine C Taylor(pty:dft), Attorney William Flanagan added to party Katie L Templeton(pty:dft), Attorney William Flanagan added to party University Hospitals Authority(pty:dft), Attorney William Flanagan added to party University Hospitals Trust(pty:dft), Attorney William Flanagan added to party Ross Vanhooser(pty:dft), Attorney William Flanagan added to party Don Wilber(pty:dft), Attorney William Flanagan added to party G Raney Williams, Jr(pty:dft), Attorney William Flanagan added to party Marisa Wrape(pty:dft), Attorney William Flanagan added to party Leroy E Young(pty:dft).] (Flanagan, William) (Entered: 05/25/2023) |
| 05/25/2023 | 46 | Unopposed MOTION for Extension of Time to Answer *and to Respond to Motion to Proceed Under Pseudonyms* (Re: 2 Complaint, ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (Gaskins, Garry) (Entered: 05/25/2023) |
| 05/25/2023 | 47 | MINUTE ORDER by Chief Judge John F Heil, III : *Defendants' Unopposed Motion to Extend Response Deadline is granted. The response to Plaintiffs' Motion for Leave to Proceed Under Pseudonyms shall be filed no later than 6/16/2023. The reply shall be filed no later than 6/30/2023* ; setting/resetting deadline(s)/hearing(s): ( Responses due by 6/16/2023, Replies due by 6/30/2023); granting 46 Motion for Extension of Time to Answer (Re: 4 MOTION to Proceed Under Pseudonyms , 46 Unopposed MOTION for Extension of Time to Answer *and to Respond to Motion to Proceed Under Pseudonyms* ) (This entry is the Official Order of the Court. No document is attached.) (JFHI, Chambers) (Entered: 05/25/2023) |
| 05/26/2023 | 48 | ATTORNEY APPEARANCE by James Craig Buchan on behalf of Richard Lofgren, OU Medicine, Inc. [Note: Attorney James Craig Buchan added to party Richard Lofgren(pty:dft), Attorney James Craig Buchan added to party OU Medicine, Inc.(pty:dft).] (Buchan, James) (Entered: 05/26/2023) |
| 05/26/2023 | 49 | ATTORNEY APPEARANCE by Jennie Mook on behalf of Richard Lofgren, OU Medicine, Inc. [Note: Attorney Jennie Mook added to party Richard Lofgren(pty:dft), Attorney Jennie Mook added to party OU Medicine, Inc.(pty:dft).] (Mook, Jennie) (Entered: 05/26/2023) |
| 05/26/2023 | 50 | ATTORNEY APPEARANCE by Ronald Theodore Shinn, Jr on behalf of Richard Lofgren, OU Medicine, Inc. [Note: Attorney Ronald Theodore Shinn, Jr added to party Richard Lofgren(pty:dft), Attorney Ronald Theodore Shinn, Jr added to party OU Medicine, Inc.(pty:dft).] (Shinn, Ronald) (Entered: 05/26/2023) |
| 05/30/2023 | 51 | MINUTE ORDER by Court Clerk , directing Gentner Drummond, Steven Katsis, Trevor Nutt, Clayton Bullard, Susan Chambers, Louis Cox, Mark Fixley, Jeremy Hall, Timothy Holder, Robert Howard, Ross Vanhooser, Don Wilber, Katherine O'Dell, Kyle Leemaster, Shawn Stachovic, Shelly Swalley, Lindsay Potts, Amber Garretson, Nikole Hicks, Callie Rinehart, Shaston Salie, Georgina Calhoun, Marisa Wrape, Bret S Langerman, Catherine C Taylor, Duane G Koehler, Katie L Templeton, Leroy E Young, Dennis J Carter, C Michael Ogle, Chelsey D Gilbertson, University Hospitals Authority, University Hospitals Trust, Randy Dowell, G Raney Williams Jr, Jim Everest, Anthony F Keating III, Gary E Raskob, Kevin Corbett, James Dylan Fotenopulos, Kerry D Fotenopulos, Goodville Mutual Casualty Company to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) (Entered: 05/30/2023) |
| 05/31/2023 | 52 | MINUTE ORDER by Court Clerk , directing OU Medicine, Inc. and Richard Lofgren to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) (Entered: 05/31/2023) |
| 06/08/2023 | 53 | ATTORNEY APPEARANCE by Joshua Lee Payton on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Joshua Lee Payton added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Payton, Joshua) (Entered: 06/08/2023) |

**J.A. 0027**

| | | |
|---|---|---|
| 06/08/2023 | 54 | MOTION for Attorney(s) Kathleen Hartnett to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823858) by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/08/2023) |
| 06/08/2023 | 55 | MOTION for Attorney(s) Elizabeth Reinhardt to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823861) by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/08/2023) |
| 06/08/2023 | 56 | MOTION for Attorney(s) Julie Veroff to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823862) by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/08/2023) |
| 06/08/2023 | 57 | MOTION for Attorney(s) Katelyn L. Kang to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823863) by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/08/2023) |
| 06/08/2023 | 58 | MOTION for Attorney(s) Zoe Helstrom to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number BOKNDC-2823864) by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/08/2023) |
| 06/09/2023 | 59 | ATTORNEY APPEARANCE by John Fowler on behalf of United States of America [Note: Attorney John Fowler added to party United States of America(pty:ip).] (Fowler, John) (Entered: 06/09/2023) |
| 06/09/2023 | 60 | MINUTE ORDER by Chief Judge John F Heil, III , *granting the following motions for Admission Pro Hac Vice of attorneys Kathleen Hartnett, Elizabeth Reinhardt, Julie Veroff, Katelyn L. Kang, and Zoe Helstrom for Biomedical Ethics and Public Health Scholars, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. Admission is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order ;* granting 54 Motion for Admission Pro Hac Vice; granting 55 Motion for Admission Pro Hac Vice; granting 56 Motion for Admission Pro Hac Vice; granting 57 Motion for Admission Pro Hac Vice; granting 58 Motion for Admission Pro Hac Vice (Re: 54 MOTION for Attorney(s) Kathleen Hartnett to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823858), 55 MOTION for Attorney(s) Elizabeth Reinhardt to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823861), 56 MOTION for Attorney(s) Julie Veroff to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823862), 57 MOTION for Attorney(s) Katelyn L. Kang to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2823863), 58 MOTION for Attorney(s) Zoe Helstrom to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number BOKNDC-2823864) ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/09/2023) |
| 06/09/2023 | 61 | NOTICE Statement of Interest by United States of America (Fowler, John) (Entered: 06/09/2023) |
| 06/09/2023 | 62 | ATTORNEY APPEARANCE by Micheal C Salem on behalf of American Academy of Pediatrics, Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ+ Equality, American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., The Endocrine Society, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, The Pediatric Endocrine Society, The Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The World Professional Association for Transgender Health [Note: Attorney Micheal C Salem added to party Micheal American Academy of Pediatrics(pty:ip); Attorney Micheal C Salem added to party Academic Pediatric Association(pty:dft), Attorney Micheal C Salem added to party American Academy of Child & Adolescent Psychiatry(pty:dft), Attorney Micheal C Salem added to party American Academy of Family Physicians(pty:ip), Attorney Micheal C Salem added to party American Academy of Nursing(pty:ip), Attorney Micheal C Salem added to party American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ+ Equality(pty:ip), Attorney Micheal C Salem added to party American College of Obstetricians and Gynecologists(pty:ip), Attorney Micheal C Salem added to party American College of Osteopathic Pediatricians(pty:ip), Attorney Micheal C Salem added to party American College of Physicians(pty:ip), Attorney Micheal C Salem added to party American Medical Association(pty:ip), Attorney Micheal C Salem added to party American Pediatric Society(pty:ip), Attorney Micheal C Salem added to party Association of Medical School Pediatric Department Chairs, Inc.(pty:ip), Attorney Micheal C Salem added to party The Endocrine Society(pty:ip), Attorney Micheal C Salem added to party National Association of Pediatric Nurse Practitioners(pty:ip), Attorney Micheal C Salem added to party Oklahoma Chapter of the American Academy of Pediatrics(pty:ip), Attorney Micheal C Salem added to party Oklahoma Council of Child and Adolescent Psychiatry(pty:ip), Attorney Micheal C Salem added to party The Pediatric Endocrine Society(pty:ip), Attorney Micheal C Salem added to party The Societies for Pediatric Urology(pty:ip), Attorney Micheal C Salem added to party Society for Adolescent Health and Medicine(pty:ip), Attorney Micheal C Salem added to party Society for Pediatric Research(pty:ip), Attorney Micheal C Salem added to party Society of Pediatric Nurses(pty:ip), Attorney Micheal C Salem added to party The World Professional Association for Transgender Health(pty:ip).] (Salem, Micheal) Modified on 6/15/2023 to correct filer name (lmt, Dpty Clk). (Entered: 06/09/2023) |
| 06/09/2023 | 63 | MOTION for Leave to Accept Amicus Brief for Filing by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ+ Equality, American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, The Pediatric Endocrine Society, The Societies for Pediatric Urology, The World Professional Association for Transgender Health (With attachments) (Salem, Micheal) Modified on 6/15/2023 to correct filer name (lmt, Dpty Clk). (Entered: 06/09/2023) |
| 06/09/2023 | 64 | MOTION for Leave to File Amicus Curiae Brief in Support of Plaintiffs Challenge to Oklahoma Senate Bill 613 by Biomedical Ethics and Public Health Scholars (With attachments) (Payton, Joshua) (Entered: 06/09/2023) |
| 06/12/2023 | 65 | MINUTE ORDER by Court Clerk , directing Biomedical Ethics and Public Health Scholars to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (dla, Dpty Clk) (Entered: 06/12/2023) |
| 06/12/2023 | 66 | DISCLOSURE STATEMENT by Biomedical Ethics and Public Health Scholars (Payton, Joshua) (Entered: 06/12/2023) |
| 06/12/2023 | 67 | ATTORNEY APPEARANCE by Kathleen R Hartnett on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Kathleen R Hartnett added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Hartnett, Kathleen) (Entered: 06/12/2023) |
| 06/12/2023 | 68 | ATTORNEY APPEARANCE by Katelyn Kang on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Katelyn Kang added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Kang, Katelyn) (Entered: 06/12/2023) |
| 06/12/2023 | 69 | ATTORNEY APPEARANCE by Elizabeth Reinhardt on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Elizabeth Reinhardt added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Reinhardt, Elizabeth) (Entered: 06/12/2023) |
| 06/12/2023 | 70 | ATTORNEY APPEARANCE by Zoe Helstrom on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Zoe Helstrom added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Helstrom, Zoe) (Entered: 06/12/2023) |
| 06/12/2023 | 71 | ATTORNEY APPEARANCE by Julie Veroff on behalf of Biomedical Ethics and Public Health Scholars [Note: Attorney Julie Veroff added to party Biomedical Ethics and Public Health Scholars(pty:ip).] (Veroff, Julie) (Entered: 06/12/2023) |
| 06/12/2023 | 72 | MINUTE ORDER by Chief Judge John F Heil, III ; granting 63 Motion for Miscellaneous Relief; granting 64 Motion for Leave to File Document(s) (Re: 63 MOTION for Leave to Accept Amicus Brief for Filing , 64 MOTION for Leave to File Amicus Curiae Brief in Support of Plaintiffs Challenge to Oklahoma Senate Bill 613 ) (This entry is the Official Order of the Court. No document is attached.) (alg, Dpty Clk) (Entered: 06/12/2023) |
| 06/13/2023 | 73 | MINUTE ORDER by Court Clerk , directing United States of America, American Academy of Pediatrics, Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., The Endocrine Society, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, The Pediatric Endocrine Society, The Societies for Pediatric Urology, Society for Adolescent Health and Medicine, |

J.A. 0028

| | | Society for Pediatric Research, Society of Pediatric Nurses, and The World Professional Association for Transgender Health to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) Modified on 6/15/2023 to correct party name (lmt, Dpty Clk). (Entered: 06/13/2023) |
|---|---|---|
| 06/13/2023 | 74 | ATTORNEY APPEARANCE by Audrey A Weaver on behalf of Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young [Note: Attorney Audrey A Weaver added to party Clayton Bullard(pty:dft), Attorney Audrey A Weaver added to party Georgina Calhoun(pty:dft), Attorney Audrey A Weaver added to party Dennis J Carter(pty:dft), Attorney Audrey A Weaver added to party Susan Chambers(pty:dft), Attorney Audrey A Weaver added to party Kevin Corbett(pty:dft), Attorney Audrey A Weaver added to party Louis Cox(pty:dft), Attorney Audrey A Weaver added to party Randy Dowell(pty:dft), Attorney Audrey A Weaver added to party Gentner Drummond(pty:dft), Attorney Audrey A Weaver added to party Jim Everest(pty:dft), Attorney Audrey A Weaver added to party Mark Fixley(pty:dft), Attorney Audrey A Weaver added to party Amber Garretson(pty:dft), Attorney Audrey A Weaver added to party Chelsey D Gilbertson(pty:dft), Attorney Audrey A Weaver added to party Jeremy Hall(pty:dft), Attorney Audrey A Weaver added to party Nikole Hicks(pty:dft), Attorney Audrey A Weaver added to party Timothy Holder(pty:dft), Attorney Audrey A Weaver added to party Robert Howard(pty:dft), Attorney Audrey A Weaver added to party Steven Katsis(pty:dft), Attorney Audrey A Weaver added to party Anthony F Keating, III(pty:dft), Attorney Audrey A Weaver added to party Duane G Koehler(pty:dft), Attorney Audrey A Weaver added to party Bret S Langerman(pty:dft), Attorney Audrey A Weaver added to party Kyle Leemaster(pty:dft), Attorney Audrey A Weaver added to party Trevor Nutt(pty:dft), Attorney Audrey A Weaver added to party Katherine O'Dell(pty:dft), Attorney Audrey A Weaver added to party C Michael Ogle(pty:dft), Attorney Audrey A Weaver added to party Lindsay Potts(pty:dft), Attorney Audrey A Weaver added to party Gary E Raskob(pty:dft), Attorney Audrey A Weaver added to party Callie Rinehart(pty:dft), Attorney Audrey A Weaver added to party Shaston Salie(pty:dft), Attorney Audrey A Weaver added to party Shawn Stachovic(pty:dft), Attorney Audrey A Weaver added to party Shelly Swalley(pty:dft), Attorney Audrey A Weaver added to party Catherine C Taylor(pty:dft), Attorney Audrey A Weaver added to party Katie L Templeton(pty:dft), Attorney Audrey A Weaver added to party University Hospitals Authority(pty:dft), Attorney Audrey A Weaver added to party University Hospitals Trust(pty:dft), Attorney Audrey A Weaver added to party Ross Vanhooser(pty:dft), Attorney Audrey A Weaver added to party Don Wilber(pty:dft), Attorney Audrey A Weaver added to party G Raney Williams, Jr(pty:dft), Attorney Audrey A Weaver added to party Marisa Wrape(pty:dft), Attorney Audrey A Weaver added to party Leroy E Young(pty:dft).] (Weaver, Audrey) (Entered: 06/13/2023) |
| 06/15/2023 | 75 | Unopposed MOTION for Leave to Exceed Page Limitation Response to Plaintiffs' Motion for Preliminary Injunction by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (Weaver, Audrey) (Entered: 06/15/2023) |
| 06/15/2023 | 76 | MINUTE ORDER by Chief Judge John F Heil, III : Defendants' Motion for Leave to Exceed Page Limitation is granted. Defendants may file a Response to Plaintiffs' Motion for Preliminary Injunction, not to exceed thirty (30) pages ; granting 75 Motion for Leave to Exceed Page Limitation (Re: 75 Unopposed MOTION for Leave to Exceed Page Limitation Response to Plaintiffs' Motion for Preliminary Injunction ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/15/2023) |
| 06/16/2023 | 77 | ATTORNEY APPEARANCE by Dylan L. Jacobs on behalf of State of Arkansas, State of Alabama, State of Alaska, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, The, State of Kentucky, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, The, State of North Dakota, The, State of South Carolina, State of South Dakota, State of Utah, State of West Virginia [Note: Attorney Dylan L. Jacobs added to party State of Arkansas(pty:ip), Attorney Dylan L. Jacobs added to party State of Alabama(pty:ip), Attorney Dylan L. Jacobs added to party State of Alaska(pty:ip), Attorney Dylan L. Jacobs added to party State of Florida(pty:ip), Attorney Dylan L. Jacobs added to party State of Georgia(pty:ip), Attorney Dylan L. Jacobs added to party State of Idaho(pty:ip), Attorney Dylan L. Jacobs added to party State of Indiana(pty:ip), Attorney Dylan L. Jacobs added to party State of Iowa(pty:ip), Attorney Dylan L. Jacobs added to party State of Kansas, The(pty:ip), Attorney Dylan L. Jacobs added to party State of Kentucky(pty:ip), Attorney Dylan L. Jacobs added to party State of Mississippi(pty:ip), Attorney Dylan L. Jacobs added to party State of Missouri(pty:ip), Attorney Dylan L. Jacobs added to party State of Montana(pty:ip), Attorney Dylan L. Jacobs added to party State of Nebraska, The(pty:ip), Attorney Dylan L. Jacobs added to party State of North Dakota, The(pty:ip), Attorney Dylan L. Jacobs added to party State of South Carolina(pty:ip), Attorney Dylan L. Jacobs added to party State of South Dakota(pty:ip), Attorney Dylan L. Jacobs added to party State of Utah(pty:ip), Attorney Dylan L. Jacobs added to party State of West Virginia(pty:ip).] (Jacobs, Dylan) (Entered: 06/16/2023) |
| 06/16/2023 | 78 | MOTION for Leave to File Brief as Amici Curiae in Support of Defendants' Opposition to Motion for Preliminary Injunction by State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, The, State of Kentucky, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, The, State of North Dakota, The, State of South Carolina, State of South Dakota, State of Utah, State of West Virginia (With attachments) (Jacobs, Dylan) (Entered: 06/16/2023) |
| 06/16/2023 | 79 | MINUTE ORDER by Chief Judge John F Heil, III ; granting 78 Motion for Leave to File Document(s) (Re: 78 MOTION for Leave to File Brief as Amici Curiae in Support of Defendants' Opposition to Motion for Preliminary Injunction ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/16/2023) |
| 06/16/2023 | 80 | MOTION to Dismiss by Defendants 15-53 by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (West, Zachary) (Entered: 06/16/2023) |
| 06/16/2023 | 81 | RESPONSE in Opposition to Motion for Leave to Proceed Under Pseudonyms and for Protective Order and Opening Brief in Support (Re: 4 MOTION to Proceed Under Pseudonyms ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young ; (West, Zachary) (Entered: 06/16/2023) |
| 06/16/2023 | 82 | MOTION to Dismiss by Richard Lofgren, OU Medicine, Inc. (Buchan, James) (Entered: 06/16/2023) |
| 06/16/2023 | 83 | DISCLOSURE STATEMENT by Richard Lofgren (Buchan, James) (Entered: 06/16/2023) |
| 06/16/2023 | 84 | DISCLOSURE STATEMENT (identifying: Other Affiliate OU Health Partners, Inc., Other Affiliate OUMI Clinics, LLC, Other Affiliate Edmond Podiatry Associates, LLC, Other Affiliate Family Medicine Associates of Edmond, LLC, Other Affiliate Edmond Physician Services, LLC, Other Affiliate OK Transplant Physicians, LLC, Other Affiliate HCAP Venture, LLC, Other Affiliate OUMI Ventures, LLC for OU Medicine, Inc.) by OU Medicine, Inc. (Buchan, James) (Entered: 06/16/2023) |
| 06/16/2023 | 85 | RESPONSE (Re: 5 MOTION for Preliminary Injunction ) by Richard Lofgren, OU Medicine, Inc. (Buchan, James) (Entered: 06/16/2023) |
| 06/16/2023 | 86 | RESPONSE in Opposition to Motion for Preliminary Injunction (Re: 5 MOTION for Preliminary Injunction ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young ; (With attachments) (West, Zachary) (Entered: 06/16/2023) |
| 06/20/2023 | 87 | MINUTE ORDER by Court Clerk ; directing State of Arkansas, State of Alabama, State of Alaska, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, The, State of Kentucky, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, The, State of North |

J.A. 0029

| | | |
|---|---|---|
| | | Dakota, The, State of South Carolina, State of South Dakota, State of Utah, State of West Virginia to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (blc, Dpty Clk) (Entered: 06/20/2023) |
| 06/20/2023 | 88 | Unopposed MOTION for Leave to Exceed Page Limitation *for Plaintiffs' Reply to Defendants 15-53's Response to Plaintiffs' Motion for Preliminary Injunction* by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) (Entered: 06/20/2023) |
| 06/20/2023 | 89 | MOTION for Attorney(s) D. Jean Veta to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829162) by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (With attachments) (Salem, Micheal) (Entered: 06/20/2023) |
| 06/20/2023 | 90 | MOTION for Attorney(s) William R. Isasi to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829181) by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (With attachments) (Salem, Micheal) (Entered: 06/20/2023) |
| 06/20/2023 | 91 | MOTION for Attorney(s) Emily Mondry to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829188) by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (With attachments) (Salem, Micheal) (Entered: 06/20/2023) |
| 06/20/2023 | 92 | MOTION for Attorney(s) Yuval Mor to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829189) by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (With attachments) (Salem, Micheal) (Entered: 06/20/2023) |
| 06/20/2023 | 93 | MOTION for Attorney(s) Cortlin H. Lannin to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829190) by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (With attachments) (Salem, Micheal) (Entered: 06/20/2023) |
| 06/21/2023 | 94 | MINUTE ORDER by Chief Judge John F Heil, III : *Plaintiffs' Motion for Leave to Exceed Page Limitation is granted. Plaintiffs may file a Reply in support of their Motion for Preliminary Injunction, not to exceed fifteen (15) pages* ; granting 88 Motion for Leave to Exceed Page Limitation (Re: 88 Unopposed MOTION for Leave to Exceed Page Limitation *for Plaintiffs' Reply to Defendants 15-53's Response to Plaintiffs' Motion for Preliminary Injunction* ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/21/2023) |
| 06/21/2023 | 95 | MINUTE ORDER by Chief Judge John F Heil, III *granting the following motions for Admission Pro Hac Vice of attorneys D. Jen Veta, William R. Isasi, Emily Mondry, Yuval Mor, and Cortlin H. Lannin, for Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ+ Equality, American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Society for Pediatric Research, Society of Pediatric Nurses, The Pediatric Endocrine Society, The Societies for Pediatric Urology, The World Professional Association for Transgender Health, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. Admission is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order* ; granting 89 Motion for Admission Pro Hac Vice; granting 90 Motion for Admission Pro Hac Vice; granting 91 Motion for Admission Pro Hac Vice; granting 92 Motion for Admission Pro Hac Vice; granting 93 Motion for Admission Pro Hac Vice (Re: 89 MOTION for Attorney(s) D. Jean Veta to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829162), 90 MOTION for Attorney(s) William R. Isasi to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829181), 91 MOTION for Attorney(s) Emily Mondry to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829188), 92 MOTION for Attorney(s) Yuval Mor to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829189), 93 MOTION for Attorney(s) Cortlin H. Lannin to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2829190) ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/21/2023) |
| 06/22/2023 | 96 | DISCLOSURE STATEMENT by Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The, (With attachments) (Salem, Micheal) (Entered: 06/22/2023) |
| 06/27/2023 | 97 | ATTORNEY APPEARANCE by Ryan Haynie on behalf of Oklahoma Council of Public Affairs, Do No Harm [Note: Attorney Ryan Haynie added to party Oklahoma Council of Public Affairs(pty:ip), Attorney Ryan Haynie added to party Do No Harm(pty:ip).] (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/27/2023 | 98 | MOTION for Attorney(s) Brian W. Barnes to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832584) by Do No Harm, Oklahoma Council of Public Affairs (With attachments) (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/27/2023 | 99 | MOTION for Attorney(s) David H. Thompson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832597) by Do No Harm, Oklahoma Council of Public Affairs (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/27/2023 | 100 | MOTION for Attorney(s) John D. Ramer to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832606) by Do No Harm, Oklahoma |

J.A. 0030

| | | |
|---|---|---|
| | | Council of Public Affairs (With attachments) (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/27/2023 | 101 | MOTION for Attorney(s) Peter A. Patterson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832612) by Do No Harm, Oklahoma Council of Public Affairs (With attachments) (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/27/2023 | 102 | Unopposed MOTION for Leave to File Brief as Amici Curiae in Support of Defendants' Opposition to Motion for Preliminary Injunction by Do No Harm, Oklahoma Council of Public Affairs (With attachments) (Haynie, Ryan) (Entered: 06/27/2023) |
| 06/28/2023 | 103 | MINUTE ORDER by Chief Judge John F Heil, III ; granting 102 Motion for Leave to File Document(s) (Re: 102 Unopposed MOTION for Leave to File Brief as Amici Curiae in Support of Defendants' Opposition to Motion for Preliminary Injunction ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/28/2023) |
| 06/28/2023 | 104 | MINUTE ORDER by Chief Judge John F Heil, III , *granting the following motions for Admission Pro Hac Vice of attorneys Brian W. Barnes, David H. Thompson, John D. Ramer, and Peter A. Patterson for Do No Harm and the Oklahoma Council of Public Affairs, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. Admission is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order* ; granting 98 Motion for Admission Pro Hac Vice; granting 99 Motion for Admission Pro Hac Vice; granting 100 Motion for Admission Pro Hac Vice; granting 101 Motion for Admission Pro Hac Vice (Re: 98 MOTION for Attorney(s) Brian W. Barnes to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832584), 99 MOTION for Attorney(s) David H. Thompson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832597), 100 MOTION for Attorney(s) John D. Ramer to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832606), 101 MOTION for Attorney(s) Peter A. Patterson to be Admitted Pro Hac Vice (paid $100 PHV fee; receipt number AOKNDC-2832612) ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 06/28/2023) |
| 06/29/2023 | 105 | MINUTE ORDER by Court Clerk , directing Oklahoma Council of Public Affairs and Do No Harm to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) (Entered: 06/29/2023) |
| 06/30/2023 | 106 | MOTION for Leave to File Response to the Statement of Interest of the United States (Re: 61 Notice (Other) ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leamaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Rainey Williams, Jr, Marisa Wrape, Leroy E Young (Gaskins, Garry) (Entered: 06/30/2023) |
| 06/30/2023 | 107 | REPLY to Response to Motion (Re: 4 Motion to Proceed Under Pseudonyms ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawliss, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe ; (Edelstein, Laura) (Entered: 06/30/2023) |
| 07/03/2023 | 108 | MINUTE ORDER by Chief Judge John F Heil, III : *Defendants' Motion for Leave to File a Response to the United States' Statement of Interest is granted* ; granting 106 Motion for Leave to File Document(s) (Re: 106 MOTION for Leave to File Response to the Statement of Interest of the United States ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 07/03/2023) |
| 07/05/2023 | 109 | ATTORNEY APPEARANCE by David H. Thompson on behalf of Do No Harm, Oklahoma Council of Public Affairs [Note: Attorney David H. Thompson added to party Do No Harm(pty:ip), Attorney David H. Thompson added to party Oklahoma Council of Public Affairs(pty:ip).] (Thompson, David) (Entered: 07/05/2023) |
| 07/05/2023 | 110 | ATTORNEY APPEARANCE by Cortlin Hall Lannin on behalf of Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The [Note: Attorney Cortlin Hall Lannin added to party Academic Pediatric Association(pty:ip), Attorney Cortlin Hall Lannin added to party American Academy of Child & Adolescent Psychiatry(pty:ip), Attorney Cortlin Hall Lannin added to party American Academy of Family Physicians(pty:ip), Attorney Cortlin Hall Lannin added to party American Academy of Nursing(pty:ip), Attorney Cortlin Hall Lannin added to party American Academy of Pediatrics, The(pty:ip), Attorney Cortlin Hall Lannin added to party American Association of Physicians for Human Rights, Inc. (pty:ip), Attorney Cortlin Hall Lannin added to party American College of Obstetricians and Gynecologists(pty:ip), Attorney Cortlin Hall Lannin added to party American College of Osteopathic Pediatricians(pty:ip), Attorney Cortlin Hall Lannin added to party American College of Physicians(pty:ip), Attorney Cortlin Hall Lannin added to party American Medical Association(pty:ip), Attorney Cortlin Hall Lannin added to party American Pediatric Society(pty:ip), Attorney Cortlin Hall Lannin added to party Association of Medical School Pediatric Department Chairs, Inc.(pty:ip), Attorney Cortlin Hall Lannin added to party Endocrine Society, The(pty:ip), Attorney Cortlin Hall Lannin added to party National Association of Pediatric Nurse Practitioners(pty:ip), Attorney Cortlin Hall Lannin added to party Oklahoma Chapter of the American Academy of Pediatrics(pty:ip), Attorney Cortlin Hall Lannin added to party Oklahoma Council of Child and Adolescent Psychiatry(pty:ip), Attorney Cortlin Hall Lannin added to party Pediatric Endocrine Society, The(pty:ip), Attorney Cortlin Hall Lannin added to party Societies for Pediatric Urology, The(pty:ip), Attorney Cortlin Hall Lannin added to party Society for Adolescent Health and Medicine(pty:ip), Attorney Cortlin Hall Lannin added to party Society for Pediatric Research(pty:ip), Attorney Cortlin Hall Lannin added to party Society of Pediatric Nurses(pty:ip), Attorney Cortlin Hall Lannin added to party World Professional Association for Transgender Health, The(pty:ip).] (Lannin, Cortlin) (Entered: 07/05/2023) |
| 07/05/2023 | 111 | ATTORNEY APPEARANCE by William Isasi on behalf of Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The [Note: Attorney William Isasi added to party Academic Pediatric Association(pty:ip), Attorney William Isasi added to party American Academy of Child & Adolescent Psychiatry(pty:ip), Attorney William Isasi added to party American Academy of Family Physicians(pty:ip), Attorney William Isasi added to party American Academy of Nursing(pty:ip), Attorney William Isasi added to party American Academy of Pediatrics, The(pty:ip), Attorney William Isasi added to party American Association of Physicians for Human Rights, Inc.(pty:ip), Attorney William Isasi added to party American College of Obstetricians and Gynecologists(pty:ip), Attorney William Isasi added to party American College of Osteopathic Pediatricians(pty:ip), Attorney William Isasi added to party American College of Physicians(pty:ip), Attorney William Isasi added to party American Medical Association(pty:ip), Attorney William Isasi added to party American Pediatric Society(pty:ip), Attorney William Isasi added to party Association of Medical School Pediatric Department Chairs, Inc.(pty:ip), Attorney William Isasi added to party Endocrine Society, The(pty:ip), Attorney William Isasi added to party National Association of Pediatric Nurse Practitioners(pty:ip), Attorney William Isasi added to party Oklahoma Chapter of the American Academy of Pediatrics(pty:ip), Attorney William Isasi added to party Oklahoma Council of Child and Adolescent Psychiatry(pty:ip), Attorney William Isasi added to party Pediatric Endocrine Society, The(pty:ip), Attorney William Isasi added to party Societies for Pediatric Urology, The(pty:ip), Attorney William Isasi added to party Society for Adolescent Health and Medicine(pty:ip), Attorney William Isasi added to party Society for Pediatric Research(pty:ip), Attorney William Isasi added to party Society of Pediatric Nurses(pty:ip), Attorney William Isasi added to party World Professional Association for Transgender Health, The(pty:ip).] (Isasi, William) (Entered: 07/05/2023) |
| 07/05/2023 | 112 | ATTORNEY APPEARANCE by Peter A. Patterson on behalf of Do No Harm, Oklahoma Council of Public Affairs [Note: Attorney Peter A. Patterson added to party Do No Harm(pty:ip), Attorney Peter A. Patterson added to party Oklahoma Council of Public Affairs(pty:ip).] (Patterson, Peter) (Entered: 07/05/2023) |
| 07/05/2023 | 113 | ATTORNEY APPEARANCE by Yuval Mor on behalf of Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric |

J.A. 0031

| | | |
|---|---|---|
| | | Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The [Note: Attorney Yuval Mor added to party Academic Pediatric Association(pty:ip), Attorney Yuval Mor added to party American Academy of Child & Adolescent Psychiatry(pty:ip), Attorney Yuval Mor added to party American Academy of Family Physicians(pty:ip), Attorney Yuval Mor added to party American Academy of Nursing(pty:ip), Attorney Yuval Mor added to party American Academy of Pediatrics, The(pty:ip), Attorney Yuval Mor added to party American Association of Physicians for Human Rights, Inc.(pty:ip), Attorney Yuval Mor added to party American College of Obstetricians and Gynecologists(pty:ip), Attorney Yuval Mor added to party American College of Osteopathic Pediatricians(pty:ip), Attorney Yuval Mor added to party American College of Physicians(pty:ip), Attorney Yuval Mor added to party American Medical Association(pty:ip), Attorney Yuval Mor added to party Association of Medical School Pediatric Department Chairs, Inc.(pty:ip), Attorney Yuval Mor added to party Endocrine Society, The(pty:ip), Attorney Yuval Mor added to party National Association of Pediatric Nurse Practitioners(pty:ip), Attorney Yuval Mor added to party Oklahoma Chapter of the American Academy of Pediatrics(pty:ip), Attorney Yuval Mor added to party Oklahoma Council of Child and Adolescent Psychiatry(pty:ip), Attorney Yuval Mor added to party Pediatric Endocrine Society, The(pty:ip), Attorney Yuval Mor added to party Societies for Pediatric Urology, The(pty:ip), Attorney Yuval Mor added to party Society for Adolescent Health and Medicine(pty:ip), Attorney Yuval Mor added to party Society for Pediatric Research(pty:ip), Attorney Yuval Mor added to party Society of Pediatric Nurses(pty:ip), Attorney Yuval Mor added to party World Professional Association for Transgender Health, The(pty:ip).] (Mor, Yuval) (Entered: 07/05/2023) |
| 07/05/2023 | 114 | ATTORNEY APPEARANCE by Emily Mondry on behalf of Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (Mondry, Emily) (Entered: 07/05/2023) |
| 07/05/2023 | 115 | ATTORNEY APPEARANCE by Jean Veta on behalf of Academic Pediatric Association, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, The, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, Association of Medical School Pediatric Department Chairs, Inc., Endocrine Society, The, National Association of Pediatric Nurse Practitioners, Oklahoma Chapter of the American Academy of Pediatrics, Oklahoma Council of Child and Adolescent Psychiatry, Pediatric Endocrine Society, The, Societies for Pediatric Urology, The, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health, The (Veta, Jean) (Entered: 07/05/2023) |
| 07/05/2023 | 116 | ATTORNEY APPEARANCE by Brian W. Barnes on behalf of Do No Harm, Oklahoma Council of Public Affairs [Note: Attorney Brian W. Barnes added to party Do No Harm(pty:ip), Attorney Brian W. Barnes added to party Oklahoma Council of Public Affairs(pty:ip).] (Barnes, Brian) (Entered: 07/05/2023) |
| 07/05/2023 | 117 | ATTORNEY APPEARANCE by John Ramer on behalf of Do No Harm, Oklahoma Council of Public Affairs [Note: Attorney John Ramer added to party Do No Harm(pty:ip), Attorney John Ramer added to party Oklahoma Council of Public Affairs(pty:ip).] (Ramer, John) (Entered: 07/05/2023) |
| 07/07/2023 | 118 | RESPONSE in Opposition to Motion to Dismiss (Re: 82 MOTION to Dismiss , 80 MOTION to Dismiss by Defendants 15-53 ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe ; (Lambert, Megan) (Entered: 07/07/2023) |
| 07/10/2023 | 119 | REPLY to Response to Motion (Re: 5 MOTION for Preliminary Injunction ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe ; (With attachments) (Lambert, Megan) (Entered: 07/10/2023) |
| 07/10/2023 | 120 | RESPONSE (Re: 61 Notice (Other) ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (West, Zachary) (Entered: 07/10/2023) |
| 07/11/2023 | 121 | Unopposed MOTION for Status Conference (Re: 42 Minute Order,,,,,, Setting/Resetting Deadline(s)/Hearing(s),,,,, Ruling on Motion for Extension of Time to Respond to Motion,,,,, Ruling on Motion for Extension of Time to Reply to Motion Response,,,,, Ruling on Motion to Accelerate/Extend/Reset Hearing(s)/Deadline(s),,,, ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Ryan Roe (Lambert, Megan) (Entered: 07/11/2023) |
| 07/12/2023 | 122 | MINUTE ORDER by Chief Judge John F Heil, III : granting plaintiffs' motion ; setting/resetting deadline(s)/hearing(s): to be held at 224 S Boulder, 3rd Floor Courtroom ( Status Hearing set for 7/18/2023 at 09:00 AM before Chief Judge John F Heil, III); granting 121 Motion for Miscellaneous Relief (Re: 121 Unopposed MOTION for Status Conference ) (This entry is the Official Order of the Court. No document is attached.) (pll, Dpty Clk) (Entered: 07/12/2023) |
| 07/17/2023 | 123 | MOTION to Strike Plaintiffs' Reply Affidavits or, in the Alternative, to File Surreply, with Brief in Support ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (West, Zachary) (Entered: 07/17/2023) |
| 07/17/2023 | 124 | OPINION AND ORDER by Chief Judge John F Heil, III ; granting 4 Motion for Miscellaneous Relief (Re: 4 MOTION to Proceed Under Pseudonyms ) (srt, Dpty Clk) (Entered: 07/17/2023) |
| 07/18/2023 | 125 | MINUTES of Proceedings - held before Chief Judge John F Heil, III: Status Hearing held on 7/18/2023 , striking 7/25/23 hearing ; striking/terminating deadline(s)/Hearing(s); granting in part and denying in part 123 Motion to Strike; (Re: 5 MOTION for Preliminary Injunction , 123 MOTION to Strike Plaintiffs' Reply Affidavits or, in the Alternative, to File Surreply, with Brief in Support ) (Court Reporter: Laura Griffin) (pll, Dpty Clk) (Entered: 07/18/2023) |
| 07/20/2023 | 126 | DISCLOSURE STATEMENT by Do No Harm, Oklahoma Council of Public Affairs (With attachments) (Thompson, David) (Entered: 07/20/2023) |
| 07/21/2023 | 127 | REPLY to Response to Motion (Re: 80 MOTION to Dismiss by Defendants 15-53 ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr ; (West, Zachary) Modified on 7/24/2023 to correct event type (lmt, Dpty Clk). (Entered: 07/21/2023) |
| 07/21/2023 | 128 | REPLY to Response to Motion (Re: 82 MOTION to Dismiss ) by Richard Lofgren, OU Medicine, Inc. ; (Buchan, James) (Entered: 07/21/2023) |
| 07/26/2023 | 129 | MOTION for Leave to File Surreply (Re: 80 MOTION to Dismiss by Defendants 15-53 ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Lambert, Megan) (Entered: 07/26/2023) |
| 07/27/2023 | 130 | MINUTE ORDER by Chief Judge John F Heil, III : Plaintiffs' Motion for Leave to File Surreply is granted. Surreply shall be filed no later than 8/7/2023 ; granting 129 Motion for Leave to File Document(s) (Re: 129 MOTION for Leave to File Surreply ) (This entry is the Official Order of the Court. No document is attached.) (JFH1, Chambers) (Entered: 07/27/2023) |
| 08/07/2023 | 131 | SURREPLY to Motion (Re: 82 MOTION to Dismiss , 80 MOTION to Dismiss by Defendants 15-53 ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Shauna Lawlis, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe ; (Lambert, Megan) (Entered: 08/07/2023) |

J.A. 0032

| | | |
|---|---|---|
| 08/08/2023 | 132 | SURREPLY to Motion (Re: 5 MOTION for Preliminary Injunction ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young ; (With attachments) (West, Zachary) (Entered: 08/08/2023) |
| 08/15/2023 | 133 | PROTECTIVE ORDER by Chief Judge John F Heil, III (JFH1, Chambers). (Entered: 08/15/2023) |
| 08/22/2023 | 134 | SEALED DOCUMENT (Lambert, Megan) (Entered: 08/22/2023) |
| 08/23/2023 | 135 | MOTION for Leave to File Supplemental Authority (Re: 86 Response in Opposition to Motion,,, 80 MOTION to Dismiss *by Defendants 15-53* ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (West, Zachary) (Entered: 08/23/2023) |
| 08/23/2023 | 136 | ERRATA/CORRECTION (Re: 135 MOTION for Leave to File Supplemental Authority ) by Clayton Bullard, Georgina Calhoun, Dennis J Carter, Susan Chambers, Kevin Corbett, Louis Cox, Randy Dowell, Gentner Drummond, Jim Everest, Mark Fixley, Amber Garretson, Chelsey D Gilbertson, Jeremy Hall, Nikole Hicks, Timothy Holder, Robert Howard, Steven Katsis, Anthony F Keating, III, Duane G Koehler, Bret S Langerman, Kyle Leemaster, Trevor Nutt, Katherine O'Dell, C Michael Ogle, Lindsay Potts, Gary E Raskob, Callie Rinehart, Shaston Salie, Shawn Stachovic, Shelly Swalley, Catherine C Taylor, Katie L Templeton, University Hospitals Authority, University Hospitals Trust, Ross Vanhooser, Don Wilber, G Raney Williams, Jr, Marisa Wrape, Leroy E Young (With attachments) (West, Zachary) (Entered: 08/23/2023) |
| 08/23/2023 | 137 | MINUTE ORDER by Chief Judge John F Heil, III : *Defendants' Motion to File Supplemental Authority 135 is deemed moot, as the Court is aware of the authority referenced in the Motion* ; finding as moot 135 Motion for Leave to File Document(s) (Re: 135 MOTION for Leave to File Supplemental Authority ) *(This entry is the Official Order of the Court. No document is attached.)* (JFH1, Chambers) (Entered: 08/23/2023) |
| 10/05/2023 | 138 | OPINION AND ORDER by Chief Judge John F Heil, III : *Plaintiffs' Motion for Preliminary Injunction is denied* ; denying 5 Motion for Preliminary Injunction (Re: 5 MOTION for Preliminary Injunction ) (blc, Dpty Clk). Modified on 10/6/2023 to replace pdf (blc, Dpty Clk). (Entered: 10/05/2023) |
| 10/06/2023 | 139 | NOTICE of Docket Entry Modification; Error: pdf contained error; Correction: replaced pdf with correct formatting (Re: 138 Opinion and Order,, Ruling on Motion for Preliminary Injunction, ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Gonzalez-Pagan, Omar) (Entered: 10/06/2023) |
| 10/06/2023 | 140 | NOTICE OF APPEAL to Circuit Court (paid $505 appeal fee; receipt number AOKNDC-2887033) (Re: 138 Opinion and Order,, Ruling on Motion for Preliminary Injunction, ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Gonzalez-Pagan, Omar) (Entered: 10/06/2023) |
| 10/10/2023 | 141 | PRELIMINARY RECORD Sent to Circuit Court (Re: 140 Notice of Appeal to Circuit Court, ) (With attachments) (blc, Dpty Clk) (Entered: 10/10/2023) |
| 10/10/2023 | 142 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 23-5110 (#140) (Re: 140 Notice of Appeal to Circuit Court, ) (dla, Dpty Clk) (Entered: 10/10/2023) |
| 10/24/2023 | 143 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 140 Notice of Appeal to Circuit Court, ) by Benjamin Boe, Bethany Boe, Brandon Boe, Daphne Doe, Donna Doe, Lauren Loe, Lydia Loe, Patrick Poe, Paula Poe, Peter Poe, Rachel Roe, Richard Roe, Ryan Roe (Gonzalez-Pagan, Omar) (Entered: 10/24/2023) |
| 10/25/2023 | 144 | ORDER from Circuit Court *notice due that record is complete by 11/01/2023 for Mark C. McCartt, Clerk of Court* (Re: 140 Notice of Appeal to Circuit Court, ) (lmt, Dpty Clk) (Entered: 10/25/2023) |
| 10/27/2023 | 145 | CLERK'S RECORD on Appeal Sent to Circuit Court (Re: 140 Notice of Appeal to Circuit Court, ) (blc, Dpty Clk) (Entered: 10/27/2023) |

J.A. 0033

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. PETER POE, by and through his parents and next friends, Paula Poe and Patrick Poe; | |
| 2. PAULA POE; | |
| 3. PATRICK POE; | |
| 4. DAPHNE DOE, by and through her guardian and next friend, Donna Doe; | |
| 5. DONNA DOE; | |
| 6. BRANDON BOE, by and through his parents and next friends, Bethany Boe and Benjamin Boe; | |
| 7. BETHANY BOE; | Civil Action No. 23-cv-00177-JFH-SH |
| 8. BENJAMIN BOE; | |
| 9. LYDIA LOE, by and through her parent and next friend, Lauren Loe; | |
| 10. LAUREN LOE; | |
| 11. RYAN ROE, by and through his parents and next friends, Rachel Roe and Richard Roe; | |
| 12. RACHEL ROE; | |
| 13. RICHARD ROE; and | |
| 14. DR. SHAUNA LAWLIS, on behalf of her patients, | |

Plaintiffs,

v.

15. GENTNER DRUMMOND, in his official capacity as Attorney General of the State of Oklahoma;
16. STEVEN KATSIS, M.D., in his official capacity as President of the Oklahoma State Board of Medical Licensure and Supervision;
17. TREVOR NUTT, in his official capacity as Vice-President of the Oklahoma State Board of Medical Licensure and Supervision;
18. CLAYTON BULLARD, in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision
19. SUSAN CHAMBERS, M.D., in her official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;
20. LOUIS COX, M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;
21. MARK FIXLEY, M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;
22. JEREMY HALL, in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;

1

J.A. 0034

**23.** TIMOTHY HOLDER, M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;

**24.** ROBERT HOWARD, in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;

**25.** ROSS VANHOOSER, M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;

**26.** DON WILBER, M.D., in his official capacity as a member of the Oklahoma State Board of Medical Licensure and Supervision;

**27.** KATHERINE O'DELL, D.N.P., R.N., in her official capacity as President of the Oklahoma Board of Nursing;

**28.** KYLE LEEMASTER, M.B.A., R.N., in his official capacity as Vice-President of the Oklahoma Board of Nursing;

**29.** SHAWN STACHOVIC, L.P.N., in her official capacity as Secretary of the Oklahoma Board of Nursing;

**30.** SHELLY SWALLEY, M.S., R.N., in her official capacity as a member of the Oklahoma Board of Nursing;

**31.** LINDSAY POTTS, L.P.N., in her official capacity as a member of the Oklahoma Board of Nursing;

**32.** AMBER GARRETSON, APRN-CNS, C.C.R.N., in her official capacity as a member of the Oklahoma Board of Nursing;

**33.** NIKOLE HICKS, Ph.D., R.N., CNE, in her official capacity as a member of the Oklahoma Board of Nursing;

**34.** CALLIE RINEHART, M.S.N., R.N., C.P.N., in her official capacity as a member of the Oklahoma Board of Nursing;

**35.** SHASTON SALIE, L.P.N., in her official capacity as a member of the Oklahoma Board of Nursing;

**36.** GEORGINA CALHOUN, in her official capacity as a member of the Oklahoma Board of Nursing;

**37.** MARISA WRAPE, in her official capacity as a member of the Oklahoma Board of Nursing

**38.** BRET S. LANGERMAN, D.O., in his official capacity as President of the Oklahoma State Board of Osteopathic Examiners;

**39.** CATHERINE C. TAYLOR, J.D., in her official capacity as Vice President of the Oklahoma State Board of Osteopathic Examiners;

**40.** DUANE G. KOEHLER, D.O., in his official capacity as Secretary-Treasurer of the Oklahoma State Board of Osteopathic Examiners;

**41.** KATIE L. TEMPLETON, J.D., in her official capacity as a member of the Oklahoma State Board of Osteopathic Examiners;

**42.** LEROY E. YOUNG, D.O., in his official capacity as a member of the Oklahoma State Board of Osteopathic Examiners;

**43.** DENNIS J. CARTER, D.O., in his official capacity as a member of the Oklahoma State Board of Osteopathic Examiners;

**44.** C. MICHAEL OGLE, D.O., in his official capacity as a member of the Oklahoma State Board of Osteopathic Examiners;

J.A. 0035

**45.** CHELSEY D. GILBERTSON, D.O., in her official capacity as a
member of the Oklahoma State Board of Osteopathic Examiners;

**46.** UNIVERSITY HOSPITALS AUTHORITY;

**47.** UNIVERSITY HOSPITALS TRUST;

**48.** RANDY DOWELL, in his official capacity as Chief Executive
Officer of the University Hospitals Authority and the University
Hospitals Trust;

**49.** G. RAINEY WILLIAMS, JR., in his official capacity as Chair of
the Board of Directors of the University Hospitals Authority and
trustee of the University Hospitals Trust;

**50.** JIM EVEREST, in his official capacity as Vice-Chair of the Board
of Directors of the University Hospitals Authority and trustee of the
University Hospitals Trust;

**51.** ANTHONY F. KEATING, III, in his official capacity as Secretary
of the Board of Directors of the University Hospitals Authority and
trustee of the University Hospitals Trust;

**52.** GARY E. RASKOB, in his official capacity as a member the Board
of Directors of the University Hospitals Authority and trustee of the
University Hospitals Trust;

**53.** KEVIN CORBETT, in his official capacity as a member the Board
of Directors of the University Hospitals Authority and trustee of the
University Hospitals Trust;

**54.** OU MEDICINE, INC. d/b/a OU HEALTH, an Oklahoma not-for-
profit corporation;

**55.** DR. RICHARD LOFGREN, in his official capacity as President
and Chief Executive Officer of OU Health,

Defendants.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiffs, by and through their attorneys, bring this Complaint against Defendants, their

employees, agents, and successors in office, and in support thereof state the following:

3

## INTRODUCTION

1.      Plaintiffs[1] Peter Poe, Daphne Doe, Brandon Boe, Lydia Loe, and Ryan Roe (the "Minor Plaintiffs") are transgender adolescents in Oklahoma who have been thriving because they have the loving support of their parents and access to medically necessary care and treatments for their gender dysphoria, both of which allow them to live as the people they know themselves to be.  They have become active participants in their communities, are excelling in school, and are growing up to become what parents desire for their children: healthy and contributing members of our society.

2.      The Minor Plaintiffs, along with hundreds of other adolescents in Oklahoma, are now faced with the loss of access to this safe, effective, and medically necessary health care because Oklahoma has singled out transgender adolescents by enacting a discriminatory and categorical prohibition on medical treatments for transgender adolescents that are available to others.  In so doing, Oklahoma has endangered the health and wellbeing of transgender adolescents in Oklahoma.

3.      On May 1, 2023, Governor Kevin Stitt of Oklahoma signed into law Senate Bill (SB) 613 ("SB 613," the "Health Care Ban" or "Ban"), categorically banning the provision of necessary and often lifesaving medical care to transgender adolescents in Oklahoma.  The law passed despite the sustained and robust opposition of medical experts in Oklahoma and across the country, and the myriad of Sooner families that stand to be negatively impacted.  The law includes an emergency provision that made it effective upon Governor Stitt's signature.  The Health Care

---

[1] Plaintiffs Peter Poe, Paula Poe, Patrick Poe, Daphne Doe, Donna Doe, Brandon Boe, Bethany Boe, Benjamin Boe, Lydia Loe, Lauren Loe, Ryan Roe, Rachel Roe, and Richard Roe are filing a separate motion to proceed using these pseudonyms, rather than their legal names, to protect the privacy rights of the minor plaintiffs regarding their transgender status, medical diagnoses, and treatment, and for their safety.

J.A. 0037

Ban violates the constitutional rights of Oklahoma adolescents and their parents and will cause severe and irreparable harm.

4.      Medical providers long have followed evidence-based and comprehensive clinical practice guidelines that recommend certain medical treatments for gender dysphoria, which is a medical condition characterized by the clinically significant distress caused by the incongruence between a person's gender identity and the sex they were assigned at birth.  Decades of clinical experience and a large body of scientific and medical literature support these medical guidelines, which are recognized as authoritative by the major medical associations in the United States. These guidelines provide a framework for the safe and effective treatment of gender dysphoria, which if left untreated can have dire and serious consequences for the health and wellbeing of transgender people, including adolescents.  For some adolescent patients with gender dysphoria, puberty-delaying treatment and hormone therapy are medically indicated.

5.      By prohibiting any "health care provider" from "knowingly provid[ing] gender transition procedures to" any person under eighteen (18) years of age, the Health Care Ban denies transgender adolescents with gender dysphoria necessary, safe, and effective treatment and prevents parents from obtaining medically necessary care for their transgender adolescents.  It also prevents health care providers from treating their transgender patients in accordance with well-established and evidence-based clinical practice guidelines.

6.      Critically, the Health Care Ban does not seek to prohibit the medical treatments at issue for all medical conditions; rather, it prohibits the provision of these treatments only when they are "performed for the purpose of attempting to affirm the minor's perception of his or her gender or biological sex," if inconsistent with the minor's "biological sex," which is not defined, or sex assigned at birth.  In other words, the Health Care Ban prohibits the provision of these

J.A. 0038

treatments only when used to treat a transgender adolescent's gender dysphoria, even though the risks of the treatments are similar, if not the same, regardless of the condition for which they are used.

7.      The Health Care Ban was passed because of, and not in spite of, its impact on transgender adolescents, depriving them of necessary, safe, and effective medical care, thereby interfering with and overriding the clinical and evidence-based judgment of medical providers and the decision-making of loving parents, like Paula and Patrick Poe, Donna Doe, Benjamin and Bethany Boe, Lauren Loe, and Rachel and Richard Roe (the "Parent Plaintiffs").

8.      If the Health Care Ban is not blocked, it will have devastating consequences for transgender adolescents in Oklahoma.  These adolescents will be unable to obtain critical medical care that their health care providers have recommended and their parents agree they need.  Further, those already receiving care will have their treatment halted.  For some transgender adolescents, the prospect of losing necessary medical care is unbearable.

9.      Concerned about the health and wellbeing of their children, some families of transgender adolescents are making plans to move out of the State of Oklahoma now that the Health Care Ban has taken effect.  No longer welcome in Oklahoma, they fear for their children's health and safety if they are unable to secure necessary medical treatment.  These parents are poised to leave their jobs, businesses, extended families, and communities—and uproot their families from their homes—to get the medical treatment their adolescent children need.

10.      Other parents, unable to move out of state, are making contingency plans to ensure the health and safety of their kids.  They are considering separating from their children by having their adolescent child live with a relative where they can access the necessary, safe, and effective medical care that the Health Care Ban bars, or they are establishing alternative access to care

J.A. 0039

hundreds of miles away, at great financial cost. These families already have lived through the impact on their children of untreated gender dysphoria and have seen how treatment has enabled them to thrive.

11.     It has been amazing for Paula Poe to see her son Peter Poe bloom once he began receiving treatment and living as a boy; he is euphoric to be who he is. Likewise, Donna Doe is so happy that following care, her granddaughter Daphne is excelling in school and thinking about auditioning for theater again. Benjamin Boe is proud that his son, Brandon Boe, has been able to take a job where he greets strangers with confidence and self-assuredness; before treatment, he would not speak in public. Rachel Roe has observed the enormously positive impact gender-affirming care has had on her son, Ryan Roe, who is now thriving and happy as opposed to when he was not affirmed as who he is. And Lauren Loe has seen a drastic improvement in her daughter Lydia Loe's mental health; she can be her authentic self without fear of being misgendered.

12.     Many families, however, do not have the resources to uproot their lives or to establish access to care out-of-state, and they are terrified about the effect of the Health Care Ban on their transgender adolescent children.

13.     The Health Care Ban not only gravely threatens the health and wellbeing of transgender adolescents in Oklahoma; it also is unconstitutional. The Health Care Ban violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates against the Minor Plaintiffs on the basis of sex and transgender status by prohibiting any "health care provider" from "knowingly provid[ing] gender transition procedures to any child."

14.     The Health Care Ban also discriminates against the Parent Plaintiffs in the exercise of their fundamental right to make decisions concerning the care, custody, and control of their children by prohibiting them from seeking and following medical advice to protect the health and

J.A. 0040

wellbeing of their minor children. By preventing parents from seeking the medical care for their children that medical and mental health providers have recommended, the Health Care Ban violates the right to parental autonomy guaranteed by the Due Process Clause of the Fourteenth Amendment.

15.     The Health Care Ban is not the only legislation the Oklahoma State Legislature has enacted that unjustifiably restricts medical treatments for transgender adolescents and discriminates against them. On September 29, 2022, the Oklahoma State Legislature enacted Senate Bill 3 ("SB 3"), which Oklahoma Governor Kevin Stitt signed into law on October 4, 2022. SB 3 appropriated $39.4 million to the University Hospitals Authority "for the construction and equipping of facilities designed to expand the capacity of behavioral health care for the children of [Oklahoma]." However, SB 3 prohibited any monies from being expended for the benefit of any facility performing "gender reassignment medical treatment" on any patient under the age of 18.

16.     In response to SB 3, Defendants University Hospitals Authority, University Hospitals Trust, and OU Medicine, Inc. d/b/a OU Health ("OU Health") (together, the "Hospital Defendants") ceased providing hormone-related prescription therapies and surgical procedures for gender-affirming services to transgender patients under the age of eighteen to gain access to the funds conditioned by SB 3, even though they continue to provide these same medical services to non-transgender patients for other purposes.

17.     The decision of the Hospital Defendants to cease providing medical services for the treatment of gender dysphoria has endangered the health and wellbeing of Plaintiffs Peter Poe, Daphne Doe, Brandon Boe, and Lydia Loe ("the OU Health Minor Plaintiffs") by denying them critical medical care and treatment. The policy also has forced Plaintiffs Paula and Patrick Poe,

J.A. 0041

Donna Doe, Benjamin and Bethany Boe, and Lauren Loe (the "OU Health Parent Plaintiffs") to incur costs to change providers or make plans to travel out of state for access to treatments. In addition, it has required Plaintiff Dr. Lawlis to establish a separate practice to continue to care for her patients.

18.     The Hospital Defendants' decision and policy to cease providing medical services to transgender adolescents to treat gender dysphoria violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates on the basis of sex and transgender status. It also violates Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 ("Section 1557").

## JURISDICTION AND VENUE

19.     This action arises under the United States Constitution, 42 U.S.C. § 1983, and Section 1557 of the ACA, 42 U.S.C. § 18116.

20.     This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331, 1343, and 1367.

21.     This Court is authorized to issue a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

22.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1)(2) because one or more of the defendants reside in this district and because a substantial part of the events giving rise to the claims occurred in this district.

J.A. 0042

## THE PARTIES

**A.    The Minor Plaintiffs and Their Families**

    **1.    The Poe Family**

23.    Plaintiffs Peter Poe, Patrick Poe, and Paula Poe live in Oklahoma.  Patrick and Paula are the parents of Peter, their twelve-year-old son.

24.    Peter is transgender and is receiving medically necessary care that the Health Care Ban prohibits.

    **2.    The Doe Family**

25.    Plaintiffs Daphne Doe and Donna Doe live in Oklahoma.  Donna is the legal guardian of Daphne, her fifteen-year-old granddaughter.

26.    Daphne is transgender and is receiving medically necessary care that the Health Care Ban prohibits.

    **3.    The Boe Family**

27.    Plaintiffs Brandon Boe, Benjamin Boe, and Bethany Boe live in Tulsa County, Oklahoma.  Benjamin and Bethany are the parents of Brandon, their seventeen-year-old son.

28.    Brandon is transgender and is receiving medically necessary care that the Health Care Ban prohibits.

    **4.    The Loe Family**

29.    Plaintiffs Lydia Loe and Lauren Loe live in Oklahoma.  Lauren is the mother of Lydia, her sixteen-year-old daughter.

30.    Lydia is transgender and is receiving medically necessary care that the Health Care Ban prohibits.

J.A. 0043

### 5.      The Roe Family

31.      Plaintiffs Ryan Roe, Richard Roe, and Rachel Roe live in Oklahoma.  Richard and Rachel are the parents of Ryan, their fourteen-year-old son.

32.      Ryan is transgender and is receiving medically necessary care that the Health Care Ban prohibits.

## B.      The Medical Provider Plaintiff

33.      Plaintiff Dr. Shauna M. Lawlis, M.D. is a member of OU Health Physicians and specializes in adolescent medicine at OU Health in Oklahoma City, Oklahoma.  Prior to SB 3, Dr. Lawlis provided gender-affirming care to patients at the Adolescent Medicine Roy G. Biv Program at Oklahoma Children's Hospital.  Following the passage of SB 3, Dr. Lawlis was required to move her care and treatment of transgender adolescents under the age of 18 to a private clinic.  The Health Care Ban prohibits the gender-affirming care Dr. Lawlis provides to her patients under the age of 18.  Dr. Lawlis is a recipient of federal financial assistance and therefore subject to the nondiscrimination mandate in Section 1557 of the ACA.  Dr. Lawlis brings her claims on behalf of her patients.  She is referred to as the "Medical Provider Plaintiff."

## C.      The Defendants

### 1.      The State Defendants

34.      Defendant Gentner Drummond is the Attorney General of the State of Oklahoma.  The Attorney General is headquartered at 313 NE 21st Street, Oklahoma City, Oklahoma 73105, and has additional offices in Oklahoma.  Under the Health Care Ban, Defendant Drummond is tasked with bringing legal actions to enforce compliance with the Ban.  Defendant Drummond is sued in his official capacity.

J.A. 0044

35.     The Oklahoma State Board of Medical Licensure and Supervision ("Medical Board") regulates, licenses, and disciplines "allopathic and surgical practice."  Okla. Stat. tit. 59, § 480.  The Medical Board is headquartered at 101 NE 51st St, Oklahoma City, Oklahoma 73105-1821.  The Medical Board enforces the Health Care Ban through medical license suspension, revocation, or through its "order [of] any other appropriate sanctions" for physician or surgeon licenses or special volunteer licensure for Physician Assistants.  Okla. Stat. tit. 59, § 503; Okla. Stat. tit. 59, § 493.5 *et seq.*

36.     Defendant Steven Katsis, M.D. is the President of the Medical Board.  Defendant Trevor Nutt is the Vice President of the Medical Board.  Defendants Clayton Bullard; Susan Chambers, M.D.; Louis Cox, M.D.; Mark Fixley, M.D.; Jeremy Hall; Timothy Holder, M.D.; Robert Howard; Ross Vanhooser, M.D.; and Don Wilber, M.D. are members of the Medical Board.  The Medical Board members ("Medical Board Members") are sued in their official capacities.

37.     The Oklahoma Board of Nursing ("Nursing Board") regulates, licenses, and disciplines nursing practice in Oklahoma.  Okla. Stat. tit. 59, § 567.3a.  The Nursing Board is headquartered at 2501 N. Lincoln Blvd., Ste. 207, Oklahoma City, Oklahoma 73105.  The Health Care Ban provides that the Nursing Board "may cause to be investigated all reported violations," and "shall impose a disciplinary action against" nurses in violation of the statute.  Okla. Stat. tit. 59, § 567.8(D).

38.     Defendant Katherine O'Dell, D.N.P., R.N., is the President of the Nursing Board.  Defendant Kyle Leemaster, M.B.A., R.N., is the Vice-President of the Nursing Board.  Defendant Shawn Stachovic, L.P.N., is the Secretary of the Nursing Board.  Defendants Shelly Swalley, M.S., R.N.; Lindsay Potts, L.P.N.; Amber Garretson, APRN-CNS, C.C.R.N.; Nikole Hicks, Ph.D., R.N., CNE; Callie Rinehart, M.S.N., R.N., C.P.N.; and Shaston Salie, L.P.N. are members of the Nursing

Board.  Defendants Georgina Calhoun and Marisa Wrape are Public Members of the Nursing Board.  The Nursing Board members ("Nursing Board Members") are sued in their official capacities.

39.     The Oklahoma State Board of Osteopathic Examiners ("Osteopathic Board") regulates, licenses, and disciplines the "practice of osteopathic medicine."  Okla. Stat. tit. 59, § 620.  The Osteopathic Board is headquartered at 4848 N. Lincoln Blvd., Oklahoma City, Oklahoma 73105.  The Health Care Ban provides that the Osteopathic Board may "refuse to admit a person to a [licensing] examination or may refuse to issue or reinstate or may suspend or revoke any license issued or reinstated by the Board upon proof that the applicant or holder of such a license" is in violation of the Health Care Ban.  Okla. Stat. tit. 59, § 637(A).

40.     Defendant Bret S. Langerman, D.O. is the President of the Osteopathic Board. Defendant Catherine C. Taylor, J.D. is the Vice President of the Osteopathic Board.  Defendant Duane G. Koehler, D.O. is the Secretary-Treasurer of the Osteopathic Board.  Defendants Katie L. Templeton, J.D.; LeRoy E. Young, D.O.; Dennis J. Carter, D.O.; C. Michael Ogle, D.O.; and Chelsey D. Gilbertson, D.O. are members of the Osteopathic Board.  The Osteopathic Board members ("Osteopathic Board Members") are sued in their official capacities.

41.     Defendants Drummond, the Medical Board Members, the Nursing Board Members, and the Osteopathic Board Members (collectively, the "State Official Defendants") are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.  Defendants are therefore liable for their violation of the Plaintiffs' rights to equal protection and their violation of the Parent Plaintiffs' fundamental rights under 42 U.S.C. § 1983.

J.A. 0046

2.      **The Hospital Defendants**

42.     Defendant University Hospitals Authority is a state agency. The University Hospitals Authority has jurisdiction, supervision, management, and control of the University Hospitals, which include Oklahoma Children's Hospital.  Okla. Stat. tit. 63, §§ 3204, 3208.  The University Hospitals Authority receives federal financial assistance and is a "covered entity" for purposes of Section 1557 of the ACA. For example, Defendant University Hospitals Authority receives federal Medicaid funds that it provides to OU Health, which operates the University Hospitals, to subsidize Medicaid and indigent care.

43.     Defendant University Hospitals Trust is a public trust whose principal purpose is to effectuate the purposes of Defendant University Hospitals Authority.  Okla. Stat. tit. 63, § 3224(A)(4)(a).  The trustees of Defendant University Hospitals Trust are the same as the members of the University Hospitals Authority.  Okla. Stat. tit. 63, § 3224(A)(4)(g).  Defendant University Hospitals Trust by virtue of its relationship with Defendant University Hospitals Authority receives federal financial assistance and is a "covered entity" for purposes of Section 1557 of the ACA.  For example, grant and program revenues relating to the Medicaid Indirect Medical Education (IME) program—a state and *federal* matching program—are paid first to Defendant University Hospitals Trust before being expended for the purposes of Defendant University Hospitals Authority.

44.     Defendant Randy Dowell is the CEO of Defendant University Hospitals Authority, a non-voting member of its Board of Directors, and CEO of Defendant University Hospitals Trust. Defendant Dowell's office is located at 1000 NE 13th St. #6900, Oklahoma City, Oklahoma 73104. Defendant Dowell is responsible for carrying out the policies of Defendant University

J.A. 0047

Hospitals Authority and Defendant University Hospitals Trust.  Defendant Dowell is sued in his official capacity.

45.      Defendant G. Rainey Williams, Jr. is Chair of the Board of Directors of the University Hospitals Authority and a trustee of the University Hospitals Trust. Jim Everest is Vice-Chair of the Board of Directors of the University Hospitals Authority and a trustee of the University Hospitals Trust.  Anthony F. Keating, III is Secretary of the Board of Directors of the University Hospitals Authority and a trustee of the University Hospitals Trust. Gary E. Raskob and Kevin Corbett are members of the Board of Directors of the University Hospitals Authority and trustees of the University Hospitals Trust. Together with Defendant Dowell, Defendants Williams, Everest, Keating, Raskob, and Corbett are referred to collectively as the "Hospitals Authority Board Defendants." The Hospitals Authority Board Defendants are sued in their official capacities.

46.      Defendant OU Medicine, Inc. d/b/a OU Health, is an Oklahoma not-for-profit corporation.  It does business in Oklahoma County.  Defendant OU Health may be served through its registered agent, CT Corporation System, 1833 S. Morgan Road, Oklahoma City, Oklahoma, 73128. Defendant University Hospital Trust is the sole member of OU Medicine, Inc. OU Health operates and manages the University Hospitals, including Oklahoma Children's Hospital, pursuant to a joint operating agreement with Defendant University Hospitals Trust.  OU Health receives federal financial assistance and is a "covered entity" for purposes of Section 1557 of the ACA.

47.      Defendant Richard Lofgren is the President and CEO of Defendant OU Health. Defendant Lofgren's office is located at 700 NE 13th St., Oklahoma City, Oklahoma, 73104. Defendant Lofgren is responsible for the strategic vision, clinical and operational direction,

J.A. 0048

strategic growth, quality and safety, and financial performance of OU Health.  Defendant Lofgren is sued in his official capacity.

48.     Defendant Dowell, the Hospitals Authority Board Defendants, and Defendant Lofgren, referred to collectively as the "Hospital Official Defendants," are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.  Defendants are therefore liable for their violation of the equal protection rights of the Minor Plaintiffs under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

## I.     Medical Guidelines for Treating Adolescents with Gender Dysphoria

49.     Doctors in Oklahoma use evidence-based, well-researched, and widely accepted clinical practice and medical guidelines to assess, diagnose, and treat adolescents with gender dysphoria.  Decades of clinical experience and a large body of research have demonstrated that these treatments are safe and effective at treating gender dysphoria in adolescents, and consequently inform how this care is provided.

50.     Gender identity refers to a person's internal sense of belonging to a particular gender.  Everyone has a gender identity, and a person's gender identity is durable and cannot be altered voluntarily or changed through medical intervention.

51.     A person's gender identity usually matches the sex they were designated at birth based on their external genitalia.[2]

---

[2] The terms "sex designated at birth" or "sex assigned at birth" are more precise than the term "biological sex" because there are many biological sex characteristics, and they do not always align with each other.  For example, some people with intersex characteristics may have a chromosomal configuration typically associated with a male sex designation but genital characteristics typically associated with a female sex designation.  For these reasons, the Endocrine Society, an international medical organization of over 18,000 endocrinology researchers and clinicians, warns practitioners that "the terms biological sex and biological male or female are

16

52.     Most boys are designated male at birth based on their external genital anatomy, and most girls are designated female at birth based on their external genital anatomy.  But transgender people have a gender identity that differs from the sex assigned to them at birth.  A transgender boy is someone who was assigned a female sex at birth but has a male gender identity.  A transgender girl is someone who was assigned a male sex at birth but has a female gender identity. A transgender boy cannot simply turn off his gender identity like a switch, just as a non-transgender (also known as "cisgender") boy cannot turn off his gender identity.  A person's sexual orientation is a close analog.  A person's sexual orientation is an innate, immutable characteristic that, like a person's gender identity, cannot be altered.

53.     The health and wellbeing of all people, including those who are transgender, depends on their ability to live in a manner consistent with their gender identity.  For transgender people, the incongruence between their gender identity and sex assigned at birth can cause clinically significant distress and discomfort.

54.     According to the American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders, Fifth Edition, Text Revision* ("DSM-5-TR"), "gender dysphoria" is the diagnostic term for the condition experienced by some transgender people of clinically significant distress resulting from the lack of congruence between their gender identity and the sex assigned to them at birth.  To be diagnosed with gender dysphoria, the incongruence must have

---

imprecise and should be avoided."  Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. CLINICAL ENDOCRINOLOGY AND METABOLISM 3869, 3875 tbl.1 (2017) ("Endocrine Society Clinical Guidelines"), https://academic.oup.com/jcem/article/102/11/3869/4157558.

J.A. 0050

persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.[3]

55.     Being transgender is not a medical condition to be treated or cured.  But gender dysphoria—the clinically significant distress that some transgender people experience as a result of the incongruence between their gender identity and sex assigned at birth—is a serious medical condition.[4]

56.     The goal of treatment for gender dysphoria is not to change someone's gender identity, but rather to resolve the distress associated with the incongruence between a transgender person's assigned sex at birth and their gender identity.

57.     If left untreated, gender dysphoria can result in negative mental health outcomes, including severe anxiety and depression, post-traumatic stress disorder, eating disorders, substance abuse, self-harm, and suicidality.

58.     The World Professional Association for Transgender Health ("WPATH") and the Endocrine Society have published evidence-based and widely accepted clinical practice guidelines for the assessment, diagnosis, and treatment of gender dysphoria.[5]  The medical treatment for gender dysphoria is to eliminate or alleviate the clinically significant distress by helping a

---

[3] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, TEXT REVISION F64.0 (5th ed. 2022).

[4] *See* Eric Yarbrough et al., Am. Psych. Ass'n, *Gender Dysphoria Diagnosis*,  *in* A GUIDE FOR WORKING WITH TRANSGENDER AND GENDER NONCONFORMING PATIENTS (2017), https://www.psychiatry.org/psychiatrists/cultural-competency/transgender-and-gender-nonconforming-patients/gender-dysphoria-diagnosis.

[5] *See* Eli Coleman et al., World Pro. Ass'n for Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 INT'L J. TRANSGENDER HEALTH 1 (2022) ("WPATH Standards of Care"), https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644; Endocrine Society Clinical Guidelines at 3869.

transgender person live in alignment with their gender identity.  This treatment is sometimes referred to as "gender transition," "transition-related care," or "gender-affirming care."  These clinical practice guidelines are widely accepted as best practices for the treatment of adolescents and adults diagnosed with gender dysphoria and have been recognized as authoritative by leading medical organizations, including the American Academy of Pediatrics, which agree that this care is safe, effective, and medically necessary for many adolescents suffering from gender dysphoria.

59.    The precise treatment for gender dysphoria depends upon each person's individualized needs, and the guidelines for medical treatment differ depending on whether the treatment is for an adolescent or an adult.

60.    Before the onset of puberty, consistent with the WPATH Standards of Care and the Endocrine Society Clinical Guidelines, no medical interventions beyond mental health counseling are recommended or provided to any person.  In other words, gender transition does not include any pharmaceutical or surgical intervention before puberty.  Any transition before puberty is limited to "social transition," which means allowing a transgender child to live and be socially recognized in accordance with their gender identity.  Care is limited to supportive mental health counseling.  Typically, social transition can include allowing children to wear clothing, cut or grow their hair, use chosen names and pronouns, and use restrooms and other sex-separated facilities aligned with their gender identity instead of the sex assigned to them at birth.

61.    Under the WPATH Standards of Care and the Endocrine Society Clinical Guidelines, medical interventions may become medically necessary and appropriate as a transgender person reaches puberty.  In providing medical treatments to adolescents, qualified medical providers work in close consultation with mental health professionals experienced in diagnosing and treating gender dysphoria.

J.A. 0052

62.     For many transgender adolescents, the onset of puberty leading to physical changes in their bodies that are incongruent with their gender identities can cause extreme distress. Puberty-delaying medication allows transgender adolescents to avoid this, therefore minimizing and potentially preventing the heightened gender dysphoria caused by the development of secondary sex characteristics incongruent with their gender identity.

63.     Under the Endocrine Society Clinical Guidelines, transgender adolescents who have reached the onset of puberty may be eligible for puberty-delaying treatment if:

- A qualified mental health professional has confirmed that:

    o The adolescent has demonstrated a long-lasting and intense pattern of gender nonconformity or gender dysphoria (whether suppressed or expressed);

    o Gender dysphoria worsened with the onset of puberty;

    o Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the adolescent's situation and functioning are stable enough to start treatment;

    o The adolescent has sufficient mental capacity to give informed consent to this (reversible) treatment;

- And the adolescent:

    o Has been informed of the effects and side effects of treatment (including potential loss of fertility if the individual subsequently continues with sex hormone treatment) and options to preserve fertility;

    o Has given informed consent and (particularly when the adolescent has not reached the age of legal medical consent, depending on applicable legislation)

20

J.A. 0053

the parents or other caretakers or guardians have consented to the treatment and are involved in supporting the adolescent throughout the treatment process;

- And a pediatric endocrinologist or other clinician experienced in pubertal assessment:

    o Agrees with the indication for gonadotropin-releasing hormone ("GnRH") agonist treatment;

    o Has confirmed that puberty has started in the adolescent;

    o Has confirmed that there are no medical contraindications to GnRH agonist treatment.[6]

64.    Puberty-delaying treatment is reversible.  If an adolescent discontinues the medication, endogenous puberty resumes.  Puberty-delaying treatment does not cause infertility.

65.    For some older adolescents, it may be medically necessary and appropriate to treat them with gender-affirming hormone therapy (e.g., testosterone for transgender boys and estrogen and testosterone suppression for transgender girls).

66.    Under the Endocrine Society Clinical Guidelines, transgender adolescents may be eligible for gender-affirming hormone therapy if:

- A qualified mental health professional has confirmed:

    o The persistence of gender dysphoria;

    o Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the adolescent's environment and functioning are stable enough to start sex hormone treatment;

---

[6] Endocrine Society Clinical Guidelines at 3878 tbl.5.

- o The adolescent has sufficient mental capacity to estimate the consequences of this (partly) irreversible treatment, weigh the benefits and risks, and give informed consent to this (partly) irreversible treatment;

- And the adolescent:
  - o Has been informed of the partly irreversible effects and side effects of treatment (including potential loss of fertility and options to preserve fertility);
  - o Has given informed consent and (particularly when the adolescent has not reached the age of legal medical consent, depending on applicable legislation) the parents or other caretakers or guardians have consented to the treatment and are involved in supporting the adolescent throughout the treatment process;

- And a pediatric endocrinologist or other clinician experienced in pubertal induction:
  - o Agrees with the indication for sex hormone treatment;
  - o Has confirmed that there are no medical contraindications to sex hormone treatment.[7]

67. Gender-affirming hormone therapy does not necessarily result in a loss of fertility, and many individuals treated with hormone therapy can still biologically conceive children.

68. As with all medications that could affect fertility, transgender adolescents and their parents or guardians are counseled on the potential risks of the medical intervention, and treatment is only initiated where parents and adolescents are properly informed and consent/assent to the care.

69. Adolescents who first receive treatment later in puberty and are treated only with gender-affirming hormone therapy (and not puberty-delaying treatment) also go through a

---

[7] Endocrine Society Clinical Guidelines at 3878 tbl.5.

J.A. 0055

hormonal puberty consistent with their gender identity.  However, they will have undergone physical changes associated with their endogenous puberty that may not be wholly reversed by hormone therapy or even surgery later in life.

70.     Under the WPATH Standards of Care, transgender adolescents also may receive medically necessary chest reconstructive surgeries before the age of majority provided that the adolescent has lived in their affirmed gender for a significant period of time.[8]

71.     Medical treatment recommended for and provided to transgender adolescents with gender dysphoria can substantially reduce lifelong gender dysphoria and eliminate the medical need for surgery or other medical interventions later in life.

72.     Providing gender-affirming medical care can be lifesaving treatment and positively change the short- and long-term health outcomes for transgender adolescents.

73.     The treatments used to treat gender dysphoria are also used to treat other conditions. Neither the Health Care Ban nor SB 3 prohibits these treatments when used to treat any condition other than gender dysphoria, even though the treatments have comparable risks and side effects to those that can be present when treating gender dysphoria.  The use of these treatments for gender dysphoria is not any riskier than for other conditions and diagnoses for which the same treatments are regularly used.

## II.     SB 3 and the Closure of the Adolescent Medicine Roy G. Biv Program

74.     In 2016, the Adolescent Medicine Roy G. Biv Program ("the Roy G. Biv Program") at the Oklahoma Children's Hospital was established.

75.     Oklahoma Children's Hospital is a "University Hospital" covered under the University Hospitals Authority Act and subject to the management and control of the University

---

[8] WPATH Standards of Care at S66.

Hospitals Authority.  *See* Okla. Stat. tit, 63, §§ 3202(A)(1), 3204.  Oklahoma Children's Hospital and the Roy G. Biv Program are associated with OU Health.

76.     Plaintiff Dr. Lawlis has worked at the Roy G. Biv Program since 2017.

77.     During its first six years of operation, the Roy G. Biv Program was the largest and only multidisciplinary academic clinic in Oklahoma dedicated to providing care to transgender and gender diverse adolescents with medical and mental health services, including consultation for families with gender diverse children. It provided mental health counseling, puberty-delaying medications, and hormone therapy to hundreds of adolescent patients experiencing gender dysphoria.

78.     The Roy G. Biv Program treated patients in accordance with well-established, evidence-based clinical practice guidelines, including the WPATH Standards of Care and the Endocrine Society's Guidelines. Prior to starting puberty-delaying medications or hormone treatment, every patient was carefully assessed for gender dysphoria consistent with the established evidence-based guidelines. Ongoing mental health care was recommended as indicated for each patient based on the patient's individual needs, and referrals were provided to patients and their families, as necessary.

79.     Prior to the passage of the SB 3, the Roy G. Biv Program was seeing more 350 transgender and gender diverse adolescents of varying ages, only a subset of whom were receiving gender-affirming medical care in the form of puberty-delaying medications or hormone treatment as treatment for gender dysphoria.

80.     Prior to the passage of the SB 3, Dr. Lawlis provided gender-affirming medical treatment at the Roy G. Biv Program to transgender adolescents with gender dysphoria, including

J.A. 0057

puberty-delaying medication and hormone therapy where such treatment was medically indicated for the patient.

81.     On October 4, 2022, Governor Kevin Stitt signed SB 3 into law.

82.     SB 3 authorized and appropriated more than $108.5 million in federal funds from the American Rescue Plan Act, Pub. L. No. 117–2, 135 Stat. 4 ("ARPA"), to Defendant University Hospitals Authority for a variety of medical services.

83.     SB 3 conditioned the appropriation to Defendant University Hospitals Authority of "the sum of Thirty-nine Million Four Hundred Thousand Dollars ($39,400,000.00) or so much thereof as may be necessary to budget and expend for the construction and equipping of facilities designed to expand the capacity of behavioral health care for the children of [Oklahoma]" on "no monies [being] budgeted or expended by the [University Hospitals] Authority for the benefit of any facility owned by the University Hospitals Authority or University Hospitals Trust performing 'gender reassignment medical treatment' … on children under eighteen (18) years of age."

84.     SB 3 defines "gender reassignment medical treatment" to mean "any health care to facilitate the transitioning of a patient's assigned gender identity on the patient's birth certificate, to the gender identity experienced and defined by the patient."

85.     Under SB 3, "gender reassignment medical treatment" includes: "a. interventions to suppress the development of endogenous secondary sex characteristics, b. interventions to align the patient's appearance or physical body with the patient's gender identity, and c. medical therapies and medical intervention used to treat gender dysphoria."

86.     Under SB 3, "gender reassignment medical treatment" does not include "services provided to individuals born with ambiguous genitalia, incomplete genitalia, or both male and female anatomy, or biochemically verifiable disorder[s] of sex development (DSD), including but

J.A. 0058

not limited to:  46,XX DSD; 46,XY DSD; sex chromosomes DSDs; XX or XY sex reversal; and ovotesticular disorder."

87.     In response to SB 3, the Hospital Defendants ceased providing gender-affirming medical care to patients under 18.

88.     Specifically, in or around October 2022, the following official statement was posted on the website of Oklahoma Children's Hospital:

## Official Statement on Behalf of OU Health

*As Oklahoma's flagship academic health system, OU Health seeks to reduce the burden of disease and improve the health of all Oklahomans. We are proud of the integrity, professionalism, care and passion our physicians and staff provide to all of our patients. Compassionate care and patient safety always have been and will remain our top priority.*

*In light of the legislation signed by Governor Stitt, we have ceased hormone-related prescription therapies and surgical procedures for gender-affirming services on patients under the age of 18. OU Health provides care in accordance with all state and federal laws and in compliance with regulatory governing bodies.*

89.     Despite being health programs or activities that receive federal and financial assistance, which are prohibited from discriminating on the basis of sex, to access the funds conditioned by SB 3, the Hospital Defendants are denying transgender adolescents and their families access to the same medical services and treatments they continue to provide to other adolescents (the "Hospital Defendants' SB 3 Policy") and they are doing so pursuant to a policy that facially restricts treatment based on sex.

90.     To ensure continuity of care for her patients, Dr. Lawlis worked with Oklahoma Children's Hospital and Diversity Family Health, a private health clinic that works primarily with the LGBTQ community, to receive the credentials to provide care one day per week at Diversity

J.A. 0059

Family Health to her Roy G. Biv Program patients who require prescriptions for puberty-delaying medications and gender-affirming hormone therapy.

91.     Dr. Lawlis also worked with other patients and their families to provide referrals to other providers so that they would not be adversely affected by the Hospital Defendants' decision to stop providing gender-affirming medical care in light of SB 3.

92.     Although Dr. Lawlis has been able to provide necessary care to her patients one day per week at Diversity Family Health, Dr. Lawlis and her patients have been deprived of working within a singular multidisciplinary clinic, which has caused significant distress for her patients and their families, as well as logistical difficulties.

93.     Plaintiffs Peter Poe, Daphne Doe, and Lydia Loe obtained medical care for gender dysphoria at Oklahoma Children's Hospital in Oklahoma City until the adoption of the Hospital Defendants' SB 3 Policy in response to SB 3.  Plaintiff Brandon Boe obtained medical care for gender dysphoria at OU Health.

94.     As a result of the Hospital Defendants' SB 3 Policy, the OU Health Minor Plaintiffs have been denied the care they previously had been receiving at Oklahoma Children's Hospital. The Hospital Defendants' SB 3 Policy denying treatment to transgender adolescents also has forced the OU Health Parent Plaintiffs to incur costs to change providers or explore options to travel out of state for access to the necessary treatments at issue.

95.     Although the Hospital Defendants have stopped providing "hormone-related prescription therapies and surgical procedures" to transgender adolescents to treat gender dysphoria, they continue to provide those same treatments to patients under 18 for conditions other than gender dysphoria.

J.A. 0060

III.     **The State Legislature's Passage of the Health Care Ban**

96.     On April 27, 2023, the Oklahoma State Legislature passed the Health Care Ban. Governor Stitt signed the Ban into law on May 1, 2023.   The Health Care Ban took effect immediately.

97.     The Health Care Ban prohibits health care providers from "knowingly provid[ing] gender transition procedures" to any person under eighteen years of age.  SB 613 at Section 1(B), to be codified at Okla. Stat. tit. 63, § 2607(1)(B). The Health Care Ban defines "gender transition procedures" as "medical or surgical services performed for the purpose of attempting to affirm the minor's perception of his or her gender or biological sex, if that perception is inconsistent with the minor's biological sex," namely, "surgical procedures that alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex" and "puberty-blocking drugs, cross-sex hormones, or other drugs to suppress or delay normal puberty or to promote the development of feminizing or masculinizing features consistent with the opposite biological sex."   SB 613 at Section 1(A)(1)–(2), to be codified at Okla. Stat. tit. 63, § 2607(1)(A)(1)–(2).

*98.*     The Health Care Ban includes a phase-out provision allowing for "the provision of puberty-blocking drugs or cross-sex hormones to a minor currently receiving such drugs or hormones as of the effective date of this act for a period of not more than six (6) months solely for the purpose of assisting the minor with gradually decreasing and discontinuing use of the drugs or hormones."   SB 613 at Section 1(A)(2)(b)(7), to be codified at Okla. Stat. tit. 63, § 2607.1(A)(2)(b)(7).   The Health Care Ban does not allow the initiation of new gender-affirming care during that six month period.  *Id.*

99.     The Health Care Ban provides that healthcare providers who knowingly provide gender transition procedures to a person under eighteen years of age "shall, upon an adverse ruling

28

by the provider's respective licensing board, be guilty of unprofessional conduct" and shall also "be guilty of a felony." SB 613 at Section 1(C)–(D), to be codified at Okla. Stat. tit. 63, § 2607.1(C)–(D).

*100.*    Healthcare providers who violate the Ban are subject to civil actions from minors who received gender transition procedures or their parents, and they may be sued by the Attorney General. *See* SB 613 at Section 1(E)–(F), to be codified at Okla. Stat. tit. 63, § 2607.1(E)–(F).

101.    The legislative history of the Heath Care Ban demonstrates it has no legitimate justification. Oklahoma lawmakers themselves confirmed the legislation was not based on evidence-based, well-researched, and widely accepted clinical practice and medical guidelines for treating adolescents with gender dysphoria.

102.    As SB 613 moved through the legislature, several Oklahoma lawmakers made inflammatory statements about transgender people establishing that the legislation targeting transgender adolescents was based on the lawmakers own subjective, discriminatory beliefs.

103.    On January 17, 2023, Senator Julie Daniels introduced SB 613 in the Senate. As introduced, the bill prohibited medical professionals from providing medically appropriate treatment for gender dysphoria to transgender adolescents under 18 years of age. The introduced version banned a broad range of widely accepted, evidence-based medical treatment protocols, including puberty-delaying medications, gender-affirming hormones, and other "medical therapies and medical intervention used to treat gender dysphoria." Under the introduced bill, medical professionals who provide such care would have their physician's or physician assistant's licenses immediately revoked by the state licensing board.

104.     On February 15, 2023, the Senate debated the legislation.  During the floor debate, Senator Daniels admitted she had not consulted with transgender adolescents or with providers, hospitals, or health centers providing medically appropriate care for transgender adolescents.

105.     Both Senator Daniels and Senator Greg Treat admitted during the floor debate that they lack medical expertise.  During the same floor debate, Senator Shane Jett accused medical officials of "getting paid" to promote gender-affirming care.

106.     The Senate passed SB 613 on February 15, 2023, sending it to the House of Representatives for consideration.

107.     On April 13, 2023, the House Public Health Committee held a hearing on SB 613. Representative Toni Hasenbeck, a co-author of SB 613, admitted that medical professionals endorsing the medically-accepted protocols for treating gender dysphoria are not wrong. Yet, she nevertheless agreed with statements by Representative Randy Randleman that transgender adolescents merely "try to make decisions that's maybe popular to the public."  The House Public Health Committee passed SB 613 out of committee the same day.

108.     On April 26, 2023, the House added an emergency provision to SB 613 making the Health Care Ban effective upon "its passage and approval."  The House also added provisions criminalizing the provision of gender-affirming care, imposing fines, and creating a private cause of action.  The House passed SB 613, as amended, later that day.  The next day, April 27, 2023, SB 613 was engrossed to the Senate.

109.     The Senate passed the House-amended version SB 613 on April 27, 2023 and it was signed into law by Governor Stitt on May 1, 2023.

110.     The Health Care Ban was just one of fifteen bills introduced in the Oklahoma State Legislature during the 2023 legislative session that sought to prohibit or limit medically-

J.A. 0063

appropriate treatment of gender dysphoria.  Other bills included HB 2177, SB 129, and SB 1011. Each of these bills singled out medical care only when provided to transgender individuals in Oklahoma.

111.    The rhetoric Oklahoma lawmakers used when discussing the proposed legislation demonstrated a marked anti-transgender animus and disregard for the well-established, evidence-based protocols and practices for the treatment of gender dysphoria.

112.    For example, during the floor debate for one of the bills seeking to ban health care for transgender adolescents, HB 2177, co-author Representative Jim Olsen claimed transgender adolescents were "delusional play acting" and labeled them "misguided children."  Representative Olsen downplayed clinical experience, scientific and medical literature, and major medical associations supporting treatment of gender dysphoria, stating transgender adolescents are in need of "wise and clear biblical guidance."

113.     During the same hearing on HB 2177, Representative Justin Humphrey compared gender-affirming care to "starving your child to death."

114.    On April 26, 2023, when addressing SB 613, Representative Olsen stated that being transgender was a path of "desolation, destruction, degeneracy and delusional play acting."

115.    In addition to SB 613, the Oklahoma State Legislature recently has enacted several other laws targeting transgender people for differential and discriminatory treatment.  In 2022 alone, the Oklahoma State Legislature passed SB 3, laws making it more difficult for transgender and nonbinary people to obtain identity documents, laws restricting transgender youth's ability to participate fully in schools, and laws banning transgender students in public and charter schools from using the restrooms and locker rooms that align with their gender identity.

116.     Governor Stitt also has taken discriminatory action against transgender people in Oklahoma.   On November 10, 2021, Governor Stitt signed an executive order ordering the Oklahoma Health Department to stop issuing gender-neutral birth certificates.  Governor Stitt also has signed an executive order preventing Oklahoma residents from changing their gender on their birth certificates.

117.     These legislative enactments and executive actions by Oklahoma officials are exemplars of the long history of discrimination that transgender people have faced, and continue to face, in Oklahoma and throughout the country.  Notwithstanding that a person's transgender status has no bearing on the person's ability to contribute to society, transgender people are often the target of discrimination and discriminatory laws.

118.     Because transgender people remain a very small minority of the population, they are a discrete and insular group that lacks the political power to protect their rights through the political or legislative process.  For the most part, transgender people have been unable to secure explicit state and federal protections against discrimination, and discriminatory legislation, such as the SB 3 and the Health Care Ban, continues to be enacted.

## IV.     The Impact of the Health Care Ban and the Hospital Defendants' SB 3 Policy on Plaintiffs

### 1.     The Poe Family

119.     Peter Poe is a twelve-year-old boy living in Oklahoma with his family.  Peter has an interest in animals and wants to be a zoologist when he grows up.  Peter also loves to draw, paint, and play video games.

120.     Peter is transgender.  He is a boy with a male gender identity, but when he was born, he was designated as female.

32

121.     Growing up, Peter was always very masculine.  He preferred more masculine clothing and hairstyles and often played with his shirt off.  When he was seven years old he knew that he did not like the name his parents gave him and asked to be called a boy's name.  Peter was confused when his family told him he was a girl because he felt like a boy.

122.     When Peter began puberty, he started to experience extreme anxiety and had trouble sleeping.  Peter wanted to hide his body.  Peter was initially afraid to tell his parents that he was a boy, but, when he was ten years old, he told his parents that he was a boy and wanted a boy's name.

123.     Paula and Patrick, Peter's parents, arranged for Peter to see a therapist to discuss his feelings.  Eventually, Peter and his family met with Dr. Lawlis at the Roy G. Biv Program.  Peter was also referred to a psychiatrist.

124.     Eventually, Peter was diagnosed with gender dysphoria.  After evaluation, Peter was prescribed Lupron to stop Peter from experiencing puberty.

125.     Despite being afraid of needles, Peter began Lupron injections to treat his gender dysphoria.  The Lupron injections stopped Peter from going through puberty.

126.     Peter has been taking Lupron for over a year and is much happier now that people recognize him as a boy.  Peter feels less of a need to hide his body.  He has become much more social and outgoing after receiving Lupron.  Peter eventually wants to begin taking testosterone and go through puberty as a boy.

127.     Unless the Health Care Ban is blocked, under the six-month phase out period that the Health Care Ban imposes, Peter's medication can be prescribed only "for the purpose of assisting [him] with gradually decreasing and discontinuing use" of his medication. As Peter begins receiving sub-therapeutic doses, he will begin to go through endogenous puberty.

J.A. 0066

128.     Peter and his parents are afraid of the impact the Health Care Ban will have on him and his family.  Peter is afraid to lose access to Lupron and horrified at the prospect of going through female puberty.  Peter's parents are worried about Peter's risks of self-harm if he loses access to his gender-affirming care.

129.     Peter has spent his entire life in Oklahoma.  His school, family, and friends are all in Oklahoma.  Peter never imagined leaving Oklahoma and the idea of having to move saddens him.  The Poe family is part of a supporting and welcoming community in Oklahoma.  They do not want to move, but it may be their only option for Peter to receive the gender-affirming care he needs for his gender dysphoria.

### 2.     The Doe Family

130.     Daphne Doe is a fifteen-year-old girl who lives with her grandmother Donna in Oklahoma.  Daphne is a freshman in high school and a straight A student.  She is involved in the French Club and academic team and wants to become an attorney.

131.     Daphne is transgender.  She is a girl with a female gender identity, but when she was born, she was designated as male.

132.     Daphne has always felt more like a girl than a boy.  As a toddler, Daphne told her grandmother that she was a girl.  Growing up Daphne loved to play with dolls and dresses.  She always gravitated towards playing with other girls.

133.     Even before she began puberty, Daphne informed her grandmother and her therapist that she did not want to experience puberty as a boy and wanted to be seen as a girl.

134.     In middle school, Daphne began experiencing male puberty.  These changes confirmed for Daphne what she already knew: she was a girl.  Daphne became depressed, anxious,

34

withdrawn, and began experiencing suicidal thoughts.  Around this time, Daphne began seeing a psychologist who eventually diagnosed her with gender dysphoria.

135.    Donna took Daphne to see Dr. Lawlis at Oklahoma Children's Hospital.  Dr. Lawlis also diagnosed Daphne with gender dysphoria.  After being advised about their options, Daphne and Donna decided that Daphne would start puberty-delaying medications.  Daphne began taking puberty-blocking medication when she was thirteen, and roughly a year later, she started taking estrogen.

136.    Since Daphne began receiving gender-affirming treatment, she has experienced a significant improvement in her wellbeing.  Daphne is less insecure, feels less anxious, and loves being able to dress and look the way that she wants.

137.    Unless the Health Care Ban is blocked, under the six-month phase out period that the Health Care Ban imposes, Daphne's medication can be prescribed only "for the purpose of assisting [her] with gradually decreasing and discontinuing use" of her medication.  When Daphne begins receiving sub-therapeutic doses of estrogen and puberty-delaying medication, she will likely begin developing secondary sex characteristics inconsistent with her gender identity, such as facial hair and an Adam's apple.

138.    The Health Care Ban would prevent Daphne from receiving the gender-affirming care that she needs and that has greatly improved her quality of life.  Daphne is worried that without puberty-delaying medication and estrogen she will go back to the dark place she was in prior to receiving gender-affirming care.  Donna is worried about her granddaughter's risk of suicidality if she can no longer access puberty-delaying medication or hormones.

139.    If Daphne is not able to receive gender-affirming care in Oklahoma due to the Health Care Ban, it would be extremely difficult for Donna to afford Daphne's medical care out

J.A. 0068

of state.  Despite the extreme financial burden, Donna is researching Daphne's out-of-state options to receive care.

140.     Donna wants to continue raising her granddaughter in Oklahoma, where they have a strong network of friends and where Donna has lived for over forty years.  Moving from Oklahoma is not an option for the Doe family, and Donna does not want Daphne to be forced out of Oklahoma for simply being who she is.

### 3.     The Boe Family

141.     Brandon is a seventeen-year-old boy who lives in Tulsa County with his parents Benjamin and Bethany and his younger sibling.  Brandon enjoys geology and wants to study engineering in college.

142.     Brandon is transgender.  He is a boy with a male gender identity, but when he was born, he was designated as female.

143.     As a child, there were clear signs Brandon was a boy.  He always preferred masculine activities and clothing.  In school, he told his teachers that he did not want to line up with the girls.  Whenever Brandon would draw himself, he drew himself as a boy.

144.     Just before Brandon turned fifteen, he told his parents he was transgender and that it was something he had been thinking about for a long time.  Brandon's parents asked him if he was sure, and Brandon explained that he was sure he was a boy.

145.     Brandon began using a binder to make his chest appear more masculine and realized how much it hurt him to be misgendered.  Brandon did not want to leave the house without his binder, he would not take his mask off in public, and he would avoid speaking because he did not want to be misgendered as a girl.  It is important to Brandon to be recognized as a boy because he is a boy.

J.A. 0069

146.    After Brandon came out, his parents found him mental health counseling.  In counseling, Brandon was diagnosed with gender dysphoria.

147.    Originally, Brandon's parents wanted him to wait until he was eighteen to start undergoing medical treatments for his gender dysphoria.  However, after seeing how Brandon was struggling and how isolated he was becoming, they had a change of heart.

148.    Brandon's parents researched gender-affirming care and eventually reached out to an endocrinologist at OU Health. After over a year of therapy, reviewing available literature, and conversations among Brandon, his parents, and his medical providers, Brandon and his family decided that he would start hormone therapy.  By the time Brandon began testosterone, he had been living socially as a boy for nearly two years.

149.    Brandon has become much more confident after receiving gender-affirming care. He is more joyful, less irritable, and overall, at peace with himself.  Brandon attends school dances with friends and recently took a job that requires him to speak to strangers.

150.    Unless the Health Care Ban is blocked, under the six-month phase out period that the Health Care Ban imposes, Brandon's medication can be prescribed only "for the purpose of assisting [him] with gradually decreasing and discontinuing use" of his medication. As Brandon receives sub-therapeutic doses of testosterone, he will stop developing the masculine secondary sex characteristics that have greatly improved his wellbeing, confidence, and ability to participate in society as a boy.

151.    Brandon and his family are afraid of the impact the Health Care Ban would have on Brandon.  Brandon is terrified of how his body would change if he can no longer receive hormone treatment.  Brandon's parents are worried about Brandon's mental health and his risk of suicidality if he is unable to continue receiving gender-affirming testosterone treatment.

J.A. 0070

152.    Due to the Health Care Ban, Benjamin and Bethany are researching how to obtain the gender-affirming care their son needs out of state.   The Boe family wants to remain in Oklahoma: they have lived here for generations, and Brandon has a supportive group of friends, a community, and a job.   But Brandon's parents worry it is unsafe for him to stay here.

**4.    The Loe Family**

153.    Lydia is a sixteen-year-old girl who lives in Oklahoma with her mother Lauren. Lydia is witty, creative, and cares deeply for her family and close group of supportive friends.

154.    Lydia is transgender.   She is a girl with a female gender identity, but she was designated as male.

155.    Growing up, Lydia knew that being a boy did not fit.   Eventually, she realized that was because she is a girl.

156.    Lydia lived in foster care before Lauren fostered and eventually adopted her.   In prior placements, after Lydia told her foster parents she was a girl, they rejected her. One of her former foster parents told her she was "gross" after she told them she was a girl.   Thereafter, Lydia began to hide who she truly was for fear of continued rejection.

157.    When Lydia was fourteen, Lauren became her foster parent.   After about a year, Lydia told Lauren that she was truly a girl, and Lauren was supportive.

158.    Since then, Lydia was able to explore expressing herself as she was.   She began using a girl's name, wearing girl's clothing, and trying female hairstyles and makeup.   Lydia's mood improved when she was able to express herself.   However, even as the pandemic improved, Lydia rarely left the house.

159.    Eventually, Lydia was diagnosed with gender dysphoria.

J.A. 0071

160.    After more than a year of additional counseling, extensive tests, and conversations with Lydia's doctors at Oklahoma Children's Hospital about the risks and benefits of hormone therapy, Lydia started estrogen and spironolactone.

161.    After receiving gender-affirming hormone therapy, Lydia's mental health and mood have drastically improved.  She spends more time with her friends and family and is more comfortable with how she is and what she looks like.  Lydia is finally able to leave the house without fear of being misgendered.

162.    When SB 3 went into effect, Lydia ceased receiving treatment from Oklahoma Children's Hospital and began receiving her treatment from Diversity Health Clinic.

163.    Unless the Health Care Ban is blocked, under the six-month phase out period that the Health Care Ban imposes, Lydia's medication can be prescribed only "for the purpose of assisting [her] with gradually decreasing and discontinuing use" of her medication.  As she begins receiving sub-therapeutic doses of estrogen and spironolactone, she will likely begin developing secondary sex characteristics that are incongruent with her gender identity, such as facial hair and a deeper voice.

164.    Lydia and her family are scared of the impact the Health Care Ban would have on her life.  If she is unable to continue receiving gender-affirming care, Lydia is afraid she would turn into someone she is not and would not be able to look at herself in the mirror without distress.  Lauren is concerned that her daughter's mental health will deteriorate if she is forced to stop treatment, or that she will return to the risk of suicidality and self-harm she experienced before receiving gender-affirming treatment.

J.A. 0072

5.      **The Roe Family**

165.    Ryan is a fourteen-year-old boy living in Oklahoma with his parents Richard and Rachel Roe.  Ryan loves theater, acting, and costume design.

166.    Ryan is transgender.  He is a boy with a male gender identity, but he was designated as female.

167.    As a child, Ryan did not feel comfortable with the expected interests and expressions typically associated with girls.  His mother, a mental health professional, understood how important it was to allow Ryan to express himself as he truly was.

168.    As Ryan approached puberty, he began to experience depression, anxiety, and loss of appetite.  He was uncomfortable being perceived as female and was distressed about the conflict between his body and who he is.

169.    Around this same time, Ryan began seeing a therapist.  Eventually he was diagnosed with gender dysphoria.

170.    In or around 2021, Ryan began working with medical professionals experienced with treating gender dysphoria.  After receiving advice from his medical team, Ryan and his parents decided that he would begin period blockers and eventually puberty-delaying treatment.

171.    Receiving gender-affirming care for Ryan's gender dysphoria, along with a supportive community and therapy, have significantly improved Ryan's mental health.  Ryan is relieved that that he has not undergone puberty as a girl.

172.    Rachel has observed the dramatic positive impact treatment has had on her son. Ryan has become a confident young man who excels in school.

173.    Unless the Health Care Ban is blocked, under the six-month phase out period that the Health Care Ban imposes, Ryan's medication can be prescribed only "for the purpose of

J.A. 0073

assisting [him] with gradually decreasing and discontinuing use" of his medication.  As Ryan begins to receive sub-therapeutic doses of puberty-delaying medication, he will begin to experience endogenous puberty, leading to the development of secondary sex characteristics that are incongruent with his gender identity as a boy.

174.    The Health Care Ban has caused Ryan and his family distress.  Ryan is terrified at the prospect of losing access to his gender-affirming treatment.  He fears having to live in a body that is not consistent with who he is.  Ryan's parents are concerned about the physical and mental consequences of depriving Ryan of the gender-affirming care he needs.

175.    Ryan and his family have lived in Oklahoma their entire lives and moving out of state is not a realistic option for them.  It is the only home that Ryan has ever known, and he has a supportive community of friends and family in Oklahoma.  However, Richard and Rachel are considering having Ryan move across the country to live with a family member.  The Roes do not want to split up their family for Ryan to continue to receive his gender-affirming health care.

**6.    The Medical Provider Plaintiff**

176.    Prior to SB 3, Dr. Lawlis treated transgender adolescents at the Roy G. Biv Program at Oklahoma Children's Hospital, a multidisciplinary academic clinic.  Dr. Lawlis was able to prescribe puberty-delaying medication and gender-affirming hormone treatment to adolescent patients with gender dysphoria when medically indicated.

177.    Following the passage of SB 3, as a result of the Hospital Defendants' SB 3 Policy, Dr. Lawlis no longer was able to provide this care at Oklahoma Children's Hospital.

178.    To ensure continuity of care for her patients, Dr. Lawlis had to obtain credentials to provide care to her patients one day a week at a private health clinic.  Although this move allowed for continuity of care, it deprived Dr. Lawlis and her patients of working within a singular

J.A. 0074

multidisciplinary clinic, which caused significant distress for her patients and their families, as well as logistical difficulties.

179.    With the enactment of SB 613, Dr. Lawlis now is prohibited from providing puberty-delaying medications and gender-affirming hormone therapy to her transgender patients anywhere in Oklahoma because the treatments relate to "gender transition."  She can, however, continue providing the same kinds of treatments to her cisgender patients, such as testosterone suppressants for her cisgender female adolescent patients with polycystic ovarian syndrome, in part so that they do not develop body hair inconsistent with their gender identity.

180.    Dr. Lawlis is very concerned about the effect the Health Care Ban will have on her transgender patients.  Based on her personal experience treating hundreds of adolescents with gender dysphoria, she believes that denying them access to gender-affirming care will significantly and severely compromise their health, including causing increased depression, anxiety, and suicidal ideation.  Denying her patients medically necessary and often lifesaving health care violates the tenets of her profession by leaving her patients to suffer needless pain.

181.    As a medical provider of patients who experience gender dysphoria, Dr. Lawlis has developed a close relationship with both her patients and their families.  Seeking and receiving treatment for gender dysphoria is a profoundly personal and informed decision based on a person's innermost sense of self and individual needs.  It is also a subject that remains very misunderstood by the public at large.  Many of her patients therefore require complete privacy, and Dr. Lawlis believes that, as a medical provider, it is her duty and obligation to advocate on behalf of her patients who are unable to publicly advocate for themselves.

182.    The Health Care Ban's six-month period for gradually decreasing her patients' medications does not alleviate Dr. Lawlis' serious concerns.  Providing her patients with sub-

J.A. 0075

therapeutic doses of puberty-blocking medication or hormones would be inconsistent with the evidence-based medicine that she practices, and she fully expects, based on her clinical observations when patients have experienced interruptions or delays in their care, that they will experience worsening gender dysphoria and the attendant distress.

183.    The Health Care Ban puts Dr. Lawless and other health care providers in the untenable position of either following state law and violating their ethical duties to promote their patients' wellbeing and protect them from harm or facing administrative, criminal, and civil penalties.  Either outcome results in harm to patients.

## V.    The Health Care Ban and the Hospital Defendants' SB 3 Policy Classify Based on Transgender Status and Sex.

184.    The Health Care Ban and the Hospital Defendants' SB 3 Policy prohibit the provision of evidence-based, medically necessary treatments—including puberty-delaying treatment, hormone therapy, and reconstructive chest surgery—only when they are provided to transgender adolescents as part of treatment for gender dysphoria or gender-affirming care.  They permit these same treatments for non-transgender adolescents for other purposes.

185.    The Health Care Ban prohibits any "health care provider" from "knowingly provid[ing] gender transition procedures to any child," which it defines as "medical or surgical services performed for the purpose of attempting to affirm the minor's perception of his or her gender or biological sex, if that perception is inconsistent with the minor's biological sex," namely, "(1) surgical procedures that alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex, or (2) puberty-blocking drugs, cross-sex hormones, or other drugs to suppress or delay normal puberty or to promote the development of feminizing or masculinizing features consistent with the opposite biological sex."  SB 613 at Section 1(A)–

J.A. 0076

(B), to be codified at Okla. Stat. tit. 63, § 2607(1)(A)–(B).  The same services, however, may be provided if they are used to treat other conditions.

186.    Likewise, SB 3, which led to the Hospital Defendants' SB 3 Policy, explicitly defines prohibited "gender reassignment medical treatment" to include "medical therapies and medical intervention used to treat gender dysphoria."  It expressly excludes from the ban "services provided to individuals born with ambiguous genitalia, incomplete genitalia, or both male and female anatomy, or biochemically verifiable disorder[s] of sex development."

187.    For example, the puberty-delaying treatment provided to transgender adolescents experiencing gender dysphoria is commonly used to treat central precocious puberty. The Health Care Ban and the Hospital Defendants' SB 3 Policy prohibit providing puberty-delaying treatment to transgender adolescents for gender dysphoria but permit puberty-delaying treatment for central precocious puberty.

188.    The Health Care Ban and the Hospital Defendants' SB 3 Policy also prohibit hormone therapy when the treatment is used to treat transgender adolescents with gender dysphoria.  But they permit the same hormone therapy when prescribed to non-transgender patients to treat other serious conditions and/or to help bring their bodies into alignment with their gender identity.

189.    The Health Care Ban and the Hospital Defendants' SB 3 Policy prohibit chest surgery on transgender young men to treat gender dysphoria, but non-transgender adolescents are permitted to undergo comparable surgeries.

190.    Indeed, in drafting the Health Care Ban, Senator Daniels reached out to OU Health, but not to ascertain their medical opinion about gender-affirming care; she reached out to ensure that SB 613, which includes a list of procedures not covered, would not prohibit the provision of

J.A. 0077

the medical treatments to adolescents in any circumstance other than when used for the treatment of a transgender adolescent's gender dysphoria.

## VI.    The Health Care Ban and the Hospital Defendants' SB 3 Policy Will Cause Severe Harm to Transgender Adolescents.

191.    Withholding medical treatment from adolescents with gender dysphoria when it is medically indicated puts them at risk of extreme harm to their health and wellbeing.

192.    Adolescents with untreated gender dysphoria suffer significant distress.  Many are on medication for depression and anxiety as a result of not being able to obtain care. Self-harm and suicidal ideation are exceedingly common.  Suicidality among transgender adolescents is a crisis.  In one survey, more than half of transgender youths had seriously contemplated suicide.[9] Studies have found that as many as 40% of transgender people have attempted suicide at some point in their lives.[10]

193.    When adolescents have access to puberty-delaying drugs and hormone therapy, which prevents them from going through endogenous puberty and allows them to go through puberty consistent with their gender identity, their dysphoria decreases and their mental health improves.  Both clinical experience and multiple medical and scientific studies confirm that for many young people, this treatment not only is safe and effective, but it also is positively transformative. Indeed, transgender adolescents able to access this medically necessary and evidence-based medical care often go from painful suffering to becoming thriving young persons.

---

[9] TREVOR PROJECT, NATIONAL SURVEY ON LGBTQ YOUTH MENTAL HEALTH 2022, at 6 (2022), https://www.thetrevorproject.org/survey-2022/assets/static/trevor01_2022survey_final.pdf     (59 percent of transgender boys, 48 percent of transgender girls, and 53 percent of nonbinary youth considered suicide in the past year).

[10] SANDY E. JAMES ET AL., NAT'L CTR. FOR TRANSGENDER EQUAL., REPORT OF THE 2015 U.S. TRANSGENDER SURVEY 5 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf

J.A. 0078

194.    If a healthcare provider is forced to stop puberty-delaying drugs or hormone therapy due to the Health Care Ban, it will cause patients to resume their endogenous puberty.  This will result in extreme distress for patients who have been relying on medical treatments to prevent the secondary sex characteristics that come with their endogenous puberty.  These bodily changes are extremely distressing for transgender adolescents with gender dysphoria that otherwise had been relieved by medical treatment.

195.    Additionally, the effects of underdoing endogenous puberty may not be reversible even with subsequent hormone therapy and surgery in adulthood, thus exacerbating lifelong gender dysphoria in patients who have this evidence-based and medically necessary treatment withheld or withdrawn.  Bodily changes from puberty to stature, facial appearance, genital growth, voice, and breast development can be more difficult or even impossible to counteract.

196.    For patients currently undergoing treatment with gender-affirming hormones like estrogen or testosterone, withdrawing care can result in a range of serious physiological and mental health consequences.  The body takes about six weeks to ramp up endogenous hormones.  If a healthcare provider is forced to abruptly stop treatment, a patient will be without sufficient circulating hormones.  This can result in depressed mood, hot flashes, and headaches.  For patients on spironolactone—a testosterone suppressant—abruptly terminating treatment can cause a patient's blood pressure to spike, increasing a young person's risk of heart attack or stroke.  But whether care is stopped abruptly or over a period of several months, the withdrawal of gender-affirming care results in predictable and negative mental health consequences, including returned or worsening gender dysphoria, along with heightened anxiety and depression.

J.A. 0079

197.    Laws like the Health Care Ban and the Hospital Defendants' SB 3 Policy that prohibit access to medically necessary health care in and of themselves gravely and directly threaten the mental health and wellbeing of transgender adolescents in Oklahoma.

198.    Gender-affirming medical care can be beneficial and even lifesaving treatment for transgender adolescents experiencing gender dysphoria.  The major medical and mental health associations in the United States support the provision of such care.

199.    These associations include the American Academy of Pediatrics,[11] American Medical Association,[12] the Endocrine Society,[13] the Pediatric Endocrine Society,[14] the American Psychological Association,[15] the American Academy of Family Physicians,[16] the American

---

[11] *See* American Academy of Pediatrics, Policy Statement, *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, *in* PEDIATRICS, Oct. 2018, https://publications.aap.org/pediatrics/article/142/4/e20182162/37381/Ensuring-Comprehensive-Care-and-Support-for.

[12] *See* AM. MED. ASS'N HOUSE OF DELEGATES, RESOLUTION 122: REMOVING FINANCIAL BARRIERS TO CARE FOR TRANSGENDER PATIENTS 1 (2008), http://www.tgender.net/taw/ama_resolutions.pdf.

[13] *See* ENDOCRINE SOC'Y & PEDIATRIC ENDOCRINE SOC'Y, TRANSGENDER HEALTH POSITION STATEMENT (2020), https://www.endocrine.org/-/media/endocrine/files/advocacy/position-statement/position_statement_transgender_health_pes.pdf.

[14] *Id.*; *see also* Pediatric Endocrine Society, Position Statement, *The Pediatric Endocrine Society Opposes Bills That Harm Transgender Youth* (Apr. 2021), https://pedsendo.org/news-announcements/the-pediatric-endocrine-society-opposes-bills-that-harm-transgender-youth-2/.

[15] *See* AM. PSYCH. ASS'N, POSITION STATEMENT ON ACCESS TO CARE FOR TRANSGENDER AND GENDER DIVERSE INDIVIDUALS (2018), https://www.psychiatry.org/File%20Library/About-APA/Organization-Documents-Policies/Policies/Position-2018-Discrimination-Against-Transgender-and-Gender-Diverse-Individuals.pdf.

[16] *See* AM. ACAD. OF FAM. PHYSICIANS, RESOLUTION NO. 1004 (2012), http://www.aafp.org/dam/AAFP/documents/about_us/special_constituencies/2012RCAR_Advocacy.pdf.

J.A. 0080

College of Obstetricians and Gynecologists,[17] the National Association of Social Workers,[18] and WPATH.[19]

200.     The Oklahoma State Medical Association also issued a statement regarding these bills: "Unfortunately, instead of supporting the mental health of Oklahoma's children, lawmakers are once again inserting themselves into private healthcare. As the state's largest physician organization, the OSMA firmly believe medical treatment should remain between physicians, patients and their families. Politics do not belong in the exam room, especially when these actions are rooted in anti-science rhetoric."[20]

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Equal Protection (Health Care Ban)
### All Plaintiffs Against the State Official Defendants

201.     Plaintiffs reallege and incorporate by reference paragraphs 1 to 200 of this Complaint as though fully set forth herein.

---

[17] See AM. COLL. OF OBSTETRICIANS AND GYNECOLOGISTS, COMMITTEE OPINION NO. 823: HEALTH CARE FOR TRANSGENDER INDIVIDUALS (2021), https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-opinion/articles/2021/03/health-care-for-transgender-and-gender-diverse-individuals.pdf.

[18] See NAT'L ASS'N OF SOC. WORKERS, TRANSGENDER AND GENDER IDENTITY ISSUES POLICY STATEMENT (1999), https://www.socialworkers.org/assets/secured/documents/da/da2008/reffered/Transgender.pdf.

[19] See WPATH, Position Statement on Medical Necessity of Treatment, Sex Reassignment, and Insurance Coverage in the U.S.A. (Dec. 21, 2016), https://www.wpath.org/newsroom/medical-necessity-statement.

[20] Andy Weber, Doctor Torn On Leaving Oklahoma After Lawmakers Pass Bill Limiting Access to Gender-Affirming Care, KOCO (Sept. 30, 2022, 6:02 PM), https://www.koco.com/article/doctor-torn-on-leaving-oklahoma-after-lawmakers-pass-bill-limiting-access-to-gender-affirming-care/41469056

J.A. 0081

202.    By enforcing the Health Care Ban, the State Official Defendants are engaging in discrimination on the basis of sex and transgender status in violation of all Plaintiffs' Fourteenth Amendment rights to equal protection under the law.

203.    The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. It protects individuals and groups from discrimination by the government.

204.    The Health Care Ban classifies based on sex and transgender status on its face. The Ban harms transgender adolescents, including the Minor Plaintiffs and the patients whom the Medical Provider Plaintiff treats, by denying them medically necessary care because of their sex and because of their transgender status.

205.     The Health Care Ban also discriminates against the Parent Plaintiffs by denying them the same ability to secure necessary medical care for their children that other parents can obtain, and it does so on the basis of sex and transgender status.

206.    Under the Equal Protection Clause of the Fourteenth Amendment, government discrimination based on sex is presumptively unconstitutional and subject to heightened judicial scrutiny, placing a demanding burden of justification upon the State to provide at least an exceedingly persuasive justification for the differential treatment.

207.    Discrimination on the basis of nonconformity with sex stereotypes, transgender status, gender, gender identity, gender transition, and sex characteristics are all forms of discrimination on the basis of sex.

J.A. 0082

208.    Under the Equal Protection Clause, government discrimination based on transgender status also is presumptively unconstitutional and subject to at least heightened scrutiny.

209.    Transgender people have suffered a long history of discrimination in Oklahoma and across the country and continue to suffer such discrimination to this day.  Transgender persons are a discrete and insular group and lack the political power to protect their rights through the legislative process. They largely have been unable to secure explicit state and federal protections to protect against discrimination.  A person's transgender status bears no relation to their ability to contribute to society.  And gender identity is a core, defining trait so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.

210.    Treatment for gender dysphoria—a condition that only transgender people suffer from—is always aimed at affirming a gender identity that differs from a person's assigned sex at birth.  Discrimination against individuals based on gender dysphoria is discrimination based on sex and transgender status.

211.    By its very terms, the Health Care Ban facially discriminates on the basis of sex and transgender status.  It prohibits a "health care provider" from "knowingly provid[ing] gender transition procedures to any child," which it defines as services "attempting to affirm the minor's perception of his or her gender or [] sex," such as "procedures that alter or remove … characteristics or features … typical for the individual's biological sex" or that "promote the development of feminizing or masculinizing features consistent with the opposite biological sex."

212.    By enforcing the Health Care Ban, the State Official Defendants are engaging in constitutionally impermissible discrimination based on sex and transgender status.

213.    The Health Care Ban prohibits medical treatments when provided to transgender adolescents to help align their bodies with their gender identity but permits the same medical treatments when provided to non-transgender patients to help align their bodies with their gender identity or for any other purpose.

214.    The Health Care Ban prohibits the Medical Provider Plaintiff from providing certain medically necessary treatments to her transgender adolescent patients but permits her to provide the same medical care to her non-transgender adolescent patients.

215.    Under the terms of the Heath Care Ban, whether a person can receive certain medical treatment turns on their assigned sex at birth.

216.    Under the terms of the Heath Care Ban, whether a person can receive certain medical treatment turns on whether they are transgender.

217.    Under the terms of the Heath Care Ban, whether a person can receive certain medical treatment turns on whether the care tends to reinforce or disrupt stereotypes associated with a person's sex assigned at birth.

218.    Discrimination based on the exercise of a fundamental right also is presumptively unconstitutional and is subject to strict scrutiny.  The Health Care Ban unconstitutionally discriminates against the Parent Plaintiffs in the exercise of their fundamental right to make decisions concerning the care, custody, and control of their children by prohibiting them from seeking and following medical advice to protect the health and wellbeing of their minor children.

219.    The Heath Care Ban does nothing to protect the health or wellbeing of minors.  To the contrary, it gravely threatens the health and wellbeing of adolescents with gender dysphoria by denying them access to evidence-based, medically necessary, and often lifesaving medical care.

J.A. 0084

220.    The Health Care Ban is not narrowly tailored to achieve a compelling governmental interest.  It is not substantially related to any important government interest.  And it is not rationally related to any legitimate government interest.

221.    The Health Care Ban's targeted prohibition on medically necessary care for transgender adolescents with gender dysphoria is based on generalized fears, negative attitudes, stereotypes, and moral disapproval of transgender people, which are not legitimate bases for unequal treatment under any level of scrutiny.

222.    The Health Care Ban, on its face and as applied to the Minor Plaintiffs, the Parent Plaintiffs, and the patients of the Medical Provider Plaintiff, deprives transgender adolescents and their parents or guardians of their right to equal protection of the laws and stigmatizes them as second-class citizens in violation of the Equal Protection Clause of the Fourteenth Amendment. The Health Care Ban also inflicts upon transgender adolescents and their parents, including the Minor Plaintiffs, the Parent Plaintiffs, and the patients of the Medical Provider Plaintiff, distress, humiliation, embarrassment, emotional pain and anguish, violation of their dignity, and harms to their short- and long-term health and wellbeing from being denied access to medically necessary health care.

223.    The State Official Defendants are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment and liable for their violation of Plaintiffs' rights to equal protection under 42 U.S.C. § 1983.

224.    Plaintiffs are entitled to a declaratory judgment that the Health Care Ban violates the Equal Protection Clause of the Fourteenth Amendment.

J.A. 0085

225.     Plaintiffs also are entitled to preliminary and permanent relief.  Without preliminary and permanent injunctive relief, Plaintiffs will suffer and/or continue to suffer irreparable harm. Plaintiffs have no adequate remedy at law to redress the wrongs alleged.

**SECOND CLAIM FOR RELIEF**

**Fourteenth Amendment – Equal Protection (SB 3)**
**OU Health Minor Plaintiffs Against the Hospital Official Defendants**

226.     Plaintiffs reallege and incorporate by reference paragraphs 1 to 200 of this Complaint as though fully set forth herein.

227.     By enforcing their SB 3 Policy, the Hospital Official Defendants are engaging in discrimination on the basis of sex and transgender status in violation of the OU Health Minor Plaintiffs' Fourteenth Amendment right to equal protection under the law.

228.     The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. AMEND. XIV, § 1. It protects individuals and groups from discrimination by the government.

229.     The Hospital Defendants' SB 3 Policy classifies based on sex and transgender status.

230.     Under the Equal Protection Clause of the Fourteenth Amendment, government discrimination based on sex is presumptively unconstitutional and subject to heightened judicial scrutiny.

231.     Under the Equal Protection Clause, government discrimination based on transgender status also is presumptively unconstitutional and subject to at least heightened scrutiny.

J.A. 0086

232.    The SB 3 Policy harms transgender adolescents, including the OU Health Minor Plaintiffs, by denying them medically necessary care because of their sex and because of their transgender status.

233.    By their very terms, SB 3 and the Hospital Defendants' SB 3 Policy facially discriminate based on sex and transgender status. SB 3 prohibits Defendant University Hospitals Authority from budgeting or expending any of the $39.4 million appropriated "for the construction and equipping of facilities designed to expand the capacity of behavioral health care for the children" for the benefit of a facility providing "gender reassignment medical treatment" to any patient under 18, including "a. interventions to suppress the development of endogenous secondary sex characteristics, b. interventions to align the patient's appearance or physical body with the patient's gender identity, and c. medical therapies and medical intervention used to treat gender dysphoria."

234.    In response to SB 3, the Hospital Defendants decided to stop providing "gender-affirming services" to patients under 18 to access the funds appropriated under SB 3.

235.    The Hospital Defendants continue to provide the same services to non-transgender adolescents for other purposes.

236.    By acquiescing to SB 3 and voluntarily deciding to no longer provide gender-affirming medical services to transgender adolescents, the Hospital Defendants are engaging in constitutionally impermissible discrimination based on sex and transgender status.

237.    Under the terms of the Hospital Defendants' SB 3 Policy, whether a person can receive certain medical treatment turns on their assigned sex at birth.

238.    Under the terms of the Hospital Defendants' SB 3 Policy, whether a person can receive certain medical treatment turns on whether they are transgender.

J.A. 0087

239.    Under the terms of the Hospital Defendants' SB 3 Policy, whether a person can receive certain medical treatment turns on whether the care tends to reinforce or disrupt stereotypes associated with a person's sex assigned at birth.

240.    The Hospital Defendants' SB 3 Policy does nothing to protect the health or wellbeing of minors. To the contrary, it gravely threatens the health and wellbeing of adolescents with gender dysphoria by denying them access to necessary and often lifesaving medical care.

241.    The Hospital Defendants' SB 3 Policy is not substantially related to any important government interest or rationally related to any legitimate government interest.

242.    The Hospital Defendants' SB 3 Policy's targeted prohibition on medically necessary care for transgender adolescents with gender dysphoria is based on generalized fears, negative attitudes, stereotypes, and moral disapproval of transgender people that are not legitimate bases for unequal treatment under any level of scrutiny.

243.    The Hospital Defendants' SB 3 Policy, on its face and as applied to the OU Health Minor Plaintiffs, deprives transgender adolescents of their right to equal protection of the laws and stigmatizes them as second-class citizens in violation of the Equal Protection Clause of the Fourteenth Amendment.  The Hospital Defendants' SB 3 Policy also inflicts upon transgender adolescents, including the OU Health Minor Plaintiffs, distress, humiliation, embarrassment, emotional pain and anguish, violation of their dignity, and harms to their short- and long-term health and wellbeing from being denied access to medically necessary health care.

244.    The Hospital Official Defendants are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment and liable for the violation of the OU Health Minor Plaintiffs' rights to equal protection under 42 U.S.C. § 1983.

J.A. 0088

245.     The OU Health Minor Plaintiffs are entitled to a declaratory judgment that the Hospital Defendants' SB 3 Policy violates the Equal Protection Clause of the Fourteenth Amendment.

246.     The OU Health Minor Plaintiffs also are entitled to permanent injunctive relief. Without injunctive relief, the OU Health Minor Plaintiffs will suffer and/or continue to suffer irreparable harm.  The OU Health Minor Plaintiffs have no adequate remedy at law to redress the wrongs alleged.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Due Process Right to Parental Autonomy (Health Care Ban)
Parent Plaintiffs Against State Official Defendants**

247.     Plaintiffs reallege and incorporate by reference paragraphs 1 to 200 of this Complaint as though fully set forth herein.

248.     By enforcing the Health Care Ban, the State Official Defendants are preventing parents from making medical care decisions concerning their children in violation of the Parent Plaintiffs' Fourteenth Amendment Due Process right to parental autonomy.

249.     The Due Process Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

250.     That fundamental right of parental autonomy includes the right of parents to seek and to follow medical advice to protect the health and wellbeing of their minor children.

251.     Parents' fundamental right to seek and to follow medical advice is at its apex when the parents' and child's liberty interests in pursuing a course of medical care align, and the child's medical providers agree and have recommended as appropriate the course of medical treatment.

J.A. 0089

252.    The Health Care Ban's prohibition on providing evidence-based and medically necessary care for adolescents with gender dysphoria stands directly at odds with parents' fundamental right to make decisions concerning the care of their children, particularly when it aligns with the adolescent's liberty interests.  The Health Care Ban barges into Oklahoma families' living rooms and strips Oklahoma parents, including the Parent Plaintiffs, of the right to seek, direct, and provide medical care that their children need.

253.    The Health Care Ban does nothing to protect the health or wellbeing of minors.  To the contrary, it gravely threatens the health and wellbeing of adolescents with gender dysphoria by denying their parents, including the Parent Plaintiffs, the ability to obtain necessary and often lifesaving medical care for their children.

254.    The Health Care Ban's prohibition against the provision of medically accepted treatments for adolescents with gender dysphoria is not narrowly tailored to serve a compelling government interest.  It also is not rationally related to any legitimate government interest.

255.    The State Official Defendants are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment and are liable for their violation of the Parent Plaintiffs' rights to due process under 42 U.S.C. § 1983.

256.    The Parent Plaintiffs are entitled to a declaratory judgment that the Health Care Ban violates the Due Process Clause of the Fourteenth Amendment.

257.    The Parent Plaintiffs also are entitled to preliminary and permanent injunctive relief.  Without preliminary and permanent injunctive relief, the Parent Plaintiffs will suffer and/or continue to suffer irreparable harm.  The Parent Plaintiffs have no adequate remedy at law to redress the wrongs alleged.

J.A. 0090

## FOURTH CLAIM FOR RELIEF

**Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 (SB 3)**
**OU Health Minor Plaintiffs and OU Health Parent Plaintiffs Against Hospital Defendants**

258.    Plaintiffs reallege and incorporate by reference paragraphs 1 to [x] of this Complaint as though fully set forth herein.

259.    By enforcing their SB 3 Policy, the Hospital Defendants are engaging in discrimination against OU Health Minor Plaintiffs and OU Health Parent Plaintiffs on the basis of sex in violation of Section 1557 of the ACA, 42 U.S.C. § 18116.

260.    Section 1557 provides in relevant part that "an individual shall not [on the basis of sex] be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance."

261.    Discrimination on the basis of transgender status, gender, gender identity, gender dysphoria, gender transition, nonconformity with sex stereotypes, and sex characteristics all are forms of discrimination encompassed by the prohibition of discrimination on the basis of sex under Section 1557.

262.    The prohibition on sex discrimination in Section 1557 of the ACA protects transgender individuals from discrimination by healthcare providers, including physicians and hospitals.

263.    The Hospital Defendants receive federal financial assistance and each is a "covered entity" for purposes of Section 1557 of the ACA.  For example, SB 3 authorized and appropriated more than $108.5 million in federal funds to Defendant University Hospitals Authority.  The Hospital Defendants also receive federal financial assistance through Medicaid payments and research grants from the National Institutes of Health, which operates within the U.S. Department

J.A. 0091

of Health and Human Services.  Defendant OU Health publishes a Patient Rights & Responsibilities page on its website, stating that it "compl[ies] with applicable Federal civil rights laws and do[es] not discriminate on the basis of … gender, … gender identity or expression, … medical condition, … or any other basis prohibited by federal, state, or local law."[21]

264.    Plaintiffs Peter Poe, Daphne Doe, and Lydia Loe obtained medical care for gender dysphoria at Oklahoma Children's Hospital in Oklahoma City until the adoption of the Hospital Defendants' SB 3 Policy.  Plaintiff Brandon Boe obtained medical care for gender dysphoria at OU Health.

265.    SB 3 and the Hospital Defendants' SB 3 Policy facially discriminate based on sex. SB 3 prohibits the University Hospitals Authority from budgeting or expending any of the $39.4 million appropriated "for the construction and equipping of facilities designed to expand the capacity of behavioral health care for the children" for the benefit of a facility providing "gender reassignment medical treatment" to any patient under 18, including "a. interventions to suppress the development of endogenous secondary sex characteristics, b. interventions to align the patient's appearance or physical body with the patient's gender identity, and c. medical therapies and medical intervention used to treat gender dysphoria."

266.    In response to SB 3, the Hospital Defendants decided to stop providing "gender-affirming services" to patients under 18 to access the funds appropriated under SB 3.

267.    The Hospital Defendants continue to provide the same services to non-transgender adolescents for other purposes.

---

[21] *Patient Rights & Responsibilities*, OU HEALTH, https://www.ouhealth.com/ou-health-patients-families/patient-rights-responsibilities/.

J.A. 0092

268.     By adopting a policy pursuant to which they no longer provide "gender-affirming services" to patients under 18, even though they provide the same "hormone-related prescription therapies and surgical procedures" to patients under 18 for other conditions, the Hospital Defendants have discriminated against the OU Health Minor Plaintiffs and OU Health Parent Plaintiffs on the basis of sex.  Transgender patients cannot receive gender-affirming services but patients whose gender identity conforms with their sex assigned at birth can receive the same "hormone-related prescription therapies and surgical procedures" when medically necessary.

269.     Because the Hospital Defendants are covered entities under Section 1557 of the ACA, the OU Health Minor Plaintiffs and OU Health Parent Plaintiffs have a right under Section 1557 to participate in the same programs and access the same benefits the Hospital Defendants provide free from discrimination based on sex, transgender status, gender, gender identity, gender dysphoria, gender transition, nonconformity with sex stereotypes, and sex characteristics.

270.     The Hospital Defendants' SB 3 Policy subjects the OU Health Minor Plaintiffs and OU Health Parent Plaintiffs to unlawful sex discrimination by preventing the OU Health Minor Plaintiffs from obtaining medically necessary care because of their sex and by requiring healthcare providers to discriminate against the OU Health Minor Plaintiffs on the basis of sex.  As such, the Hospital Defendants' SB 3 Policy conflicts with the nondiscrimination requirements of Section 1557.  It also conflicts with and undermines the purposes and goals of Section 1557.

271.     The Medical Provider Plaintiff also is a recipient of federal financial assistance and therefore subject to Section 1557's nondiscrimination mandate.

272.     It is impossible for the Medical Provider Plaintiff to continue to comply with her obligations under Section 1557 and also comply with the restrictions imposed by the Hospital Defendants' SB 3 Policy.

J.A. 0093

273.     SB 3 and the Hospital Defendants' SB 3 Policy in response stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, including the objective of preventing discrimination based on sex in the provision of health care.

274.     As a result of SB 3 and the Hospital Defendants' SB 3 Policy, the OU Health Minor Plaintiffs are being denied access to medically necessary health care on the basis of sex.  They have suffered harm, such as distress, humiliation, embarrassment, emotional pain and anguish, violation of their dignity, and harms to their short- and long-term health and wellbeing from being denied access to medically necessary health care.

275.     As a result of SB 3 and the SB 3 Policy, the OU Health Parent Plaintiffs have incurred or will incur costs to change providers or costs for travel out of state for access to treatments.

276.     Accordingly, the OU Health Minor Plaintiffs and OU Health Parent Plaintiffs are entitled to declaratory and injunctive relief, as well as nominal damages.  They have no adequate remedy at law to redress the wrongs alleged, which are of a continuing nature and will cause them irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.     Enter a declaratory judgment declaring that:

    i.     the Health Care Ban, on its face and as applied to Plaintiffs, violates the Equal Protection Clause of the Fourteenth Amendment by discriminating against (1) the Minor Plaintiffs, the patients of the Medical Provider Plaintiff, and all similarly situated individuals on the basis of sex and transgender status, and (2) the Parent Plaintiffs with regards to (a) their exercise of the right to parental autonomy and (b) their ability to secure

J.A. 0094

necessary medical care for their children that other parents can obtain based on sex and transgender status, and is therefore unenforceable;

ii.    the Health Care Ban, on its face and as applied to the Parent Plaintiffs, violates the Parent Plaintiffs' right to parental autonomy guaranteed by the Due Process Clause and is therefore unenforceable;

iii.    the Hospital Defendants' SB 3 Policy, on its face and as applied to the OU Health Minor Plaintiffs, violates the Equal Protection Clause of the Fourteenth Amendment by discriminating against the OU Health Minor Plaintiffs and all similarly situated individuals on the basis of sex and transgender status and is therefore unenforceable;

iv.    the Hospital Defendants' SB 3 Policy violates Section 1557 of the Affordable Care Act by discriminating against the OU Health Minor Plaintiffs and all similarly situated individuals on the basis of sex and is therefore unenforceable; and

B.    Issue preliminary and permanent injunctions enjoining:

i.    The State Official Defendants, their employees, agents, successors, and all others acting in concert with them, from administering or enforcing the Health Care Ban; and

ii.    The Hospital Official Defendants, their employees, agents, successors, and all others acting in concert with them, from administering or enforcing the Hospital Defendants' SB 3 Policy.

C.    Waive the requirement for the posting of a bond of security for the entry of temporary and preliminary relief;

J.A. 0095

D.  Award the OU Health Minor Plaintiffs and OU Health Parent Plaintiffs nominal damages as compensation for the harms to their short- and long-term health and wellbeing from being denied access to medically necessary health care as a result of the Hospital Defendants' SB 3 Policy and for all other injuries that have been caused by the Hospital Defendants' acts and omissions alleged in this Complaint;

E.  Award Plaintiffs their costs and expenses, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or other applicable statutes; and

F.  Grant such other and further relief as the Court deems just and proper.

*[The remainder of this page has been left blank intentionally.]*

Date:   May 2, 2023

Respectfully submitted

/s/ *Megan Lambert*
Megan Lambert
    (OBA# 33216)
**American Civil Liberties Union**
    **Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union**
    **Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

*Application for admission pro hac vice
forthcoming.*

Omar Gonzalez-Pagan*
**Lambda Legal Defense**
    **and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense**
    **and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense**
    **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC  20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

J.A. 0097

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

PETER POE, et al.,

   *Plaintiffs*,

     v.

GENTNER DRUMMOND, et al.,

   *Defendants*.

Case No. 23-cv-00177-JFH-SH

<u>**PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND
FOR A PROTECTIVE ORDER AND OPENING BRIEF IN SUPPORT**</u>

  Plaintiffs Benjamin Boe, Bethany Boe, and Brandon Boe (the "Boe Family"); Plaintiffs

Donna Doe and Daphne Doe (the "Doe Family"); Plaintiffs Lauren Loe and Lydia Loe (the "Loe

Family"); Plaintiffs Paula Poe, Patrick Poe, and Peter Poe (the "Poe Family"); and Plaintiffs

Rachel Roe, Richard Roe, and Ryan Roe (the "Roe Family"), by and through their undersigned

counsel, pursuant to Federal Rules of Civil Procedure 5.2 and 26(c), respectfully move this Court

for an order granting them leave to proceed under pseudonyms and protective order limiting

disclosure of their identities to counsel for Defendants.

  Under Federal Rule of Civil Procedure 5.2(a), Plaintiffs Brandon Boe, Daphne Doe, Lydia

Loe, Peter Poe, and Ryan Roe (the "Minor Plaintiffs") are entitled to proceed under initials because

they are minors. However, they seek to proceed under pseudonyms to further protect their

identities. Plaintiffs Benjamin and Bethany Boe, Donna Doe, Lauren Loe, Paula and Patrick Poe,

and Rachel and Richard Roe (the "Parent Plaintiffs") seek to proceed under pseudonyms to protect

the identity of the Minor Plaintiffs. The identification of the Parent Plaintiffs by their legal names

would erase the protection of confidentiality to which the Minor Plaintiffs are entitled because

they readily would be identifiable by the names of their parents. Proceeding under pseudonyms is further necessary to protect the Minor Plaintiffs and their families from undue harassment, discrimination, and violence because of the Minor Plaintiffs' transgender status and because the Parent Plaintiffs are affirming parents of transgender adolescents.[1]

Because the privacy rights of the Minor Plaintiffs outweigh the presumption of openness in federal courts, the Minor Plaintiffs and the Parent Plaintiffs should be allowed to proceed under pseudonyms.

Plaintiffs respectfully submit the following brief in support of their motion.

## INTRODUCTION

Brandon Boe, Daphne Doe, Lydia Loe, Peter Poe, and Ryan Roe are transgender minors in Oklahoma who want to live authentically as who they are without fear of discrimination, harassment, or violence. Plaintiffs have filed a complaint challenging the recently enacted discriminatory and unconstitutional law—Oklahoma Senate Bill 613—that endangers the health and wellbeing of transgender adolescents in Oklahoma by prohibiting the provision of essential and medically necessary care for adolescents with gender dysphoria (the "Health Care Ban" or "Ban"). Plaintiffs Brandon Boe, Daphne Doe, Lydia Loe, and Peter Poe, along with their parents and guardians, also challenge the discriminatory and unconstitutional policy of Defendants University Hospitals Authority, University Hospitals Trust, and OU Medicine, Inc. d/b/a OU Health (together, the "Hospital Defendants") to cease providing gender-affirming services to transgender patients under the age of eighteen.

---

[1] To protect their privacy pending consideration of this motion, in their Complaint and this motion, Plaintiffs have used the pseudonyms for which they seek leave to use in this action. Should the Court deny this motion, Plaintiffs will consider dismissing their claims or amending their Complaint to use the names by which they are known.

J.A. 0099

The Minor Plaintiffs seek leave to proceed under pseudonyms (as opposed to initials) to protect their privacy and safety as minors and to avoid exposure to discrimination and harassment. The Parent Plaintiffs also seek to proceed under pseudonyms to further protect the identity of the Minor Plaintiffs. As transgender adolescents, the Minor Plaintiffs are members of a group subject to frequent discrimination, harassment, and violence because of their transgender status. Further, this case involves their highly private and confidential medical information. Disclosure of the identities of the Minor Plaintiffs likely would expose them to the same discrimination and harassment they are seeking to redress in this litigation.

Plaintiffs have no objection to providing their legal names to counsel for Defendants and the Court. Plaintiffs also do not intend to prevent the public from having access to the Court's rulings or observing the proceedings of this Court under adequate protections. They want only to prevent public disclosure of their identity.

Accordingly, Plaintiffs respectfully ask this Court for leave to proceed under pseudonyms to protect their identity from public disclosure and for a protective order limiting disclosure of their identities to counsel for Defendants.

## ARGUMENT

In general, a complaint must state the names of all parties. *See* FED. R. CIV. P. 10(a).  But "there may be exceptional circumstances warranting some form of anonymity in judicial proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). In particular, Rule 5.2 specifically recognizes the need to protect a minor's identity. *See* FED. R. CIV. P. 5.2(a)(3). The Tenth Circuit allows plaintiffs to proceed anonymously "where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name." *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998) (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)). Although "identifying a plaintiff only by a pseudonym is

an unusual procedure," it is appropriate "where there is an important privacy interest to be recognized" and is "subject to a decision by the judge as to the need for the cloak of anonymity." *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1288 (D. Kan. 2017) (quoting *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979)).[2]

To determine whether a plaintiff may proceed anonymously, the court may use "informed discretion" to weigh a plaintiff's right to privacy against the countervailing public interest in disclosure. *M.M.*, 139 F.3d at 803. Among other factors, courts consider: (1) whether the claims "involv[e] matters of a highly sensitive and personal nature," *Femedeer*, 227 F.3d at 1246 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)); *M.M.*, 139 F.3d at 803; (2) whether the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *M.M.*, 139 F.3d at 803 (quoting *Doe*, 951 F.2d at 324); or (3) whether identification creates a risk of "real danger of physical harm." *Id.* Each of these factors weighs heavily in favor of allowing Plaintiffs to proceed under pseudonyms. Other factors unique to the circumstances of this case, including the risk of bullying and harassment at school from other students and school administrators and the resulting emotional distress should Minor Plaintiffs be identified as transgender, or as plaintiffs in this lawsuit, further support granting leave for Plaintiffs to proceed anonymously.

In addition, Federal Rule of Civil Procedure 26(c) specifically permits the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[2] The Supreme Court has implicitly endorsed the use of pseudonyms to protect plaintiffs' privacy. *See, e.g.*, *Honig v. Doe*, 484 U.S. 305 (1988) (suit by minor for violation of Education of the Handicapped Act); *Plyler v. Doe*, 457 U.S. 202 (1982) (suit by undocumented minors for violation of equal protection); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Poe v. Ullman*, 367 U.S. 497 (1961) (birth control). The Tenth Circuit has as well. *See, e.g.*, *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300 (10th Cir. 2020) (high school student suing under Title IX); *Doe v. Okla. City Univ.*, 406 F. App'x 248 (10th Cir. 2010) (student claiming disability discrimination).

J.A. 0101

or expense" upon motion of a party. The granting of a protective order under Rule 26(c) requires a showing of good cause by the movant, which Plaintiffs have shown here.

## I.   GRANTING PLAINTIFFS' REQUEST TO PROCEED UNDER PSEUDONYMS IS IN THE PUBLIC INTEREST AND WOULD CAUSE NO PREJUDICE TO DEFENDANTS.

Rule 5.2(a) requires the use of initials in court filings to protect the identities of minors unless they affirmatively waive that protection. *See* FED. R. CIV. P. 5.2(a)(3), 5.2(h). Courts also may enter an order requiring the redaction of "additional information," including initials, upon a showing of "good cause." FED. R. CIV. P. 5.2(e). Recognizing the "heightened protection" appropriate for minor plaintiffs, *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004), courts frequently allow minor plaintiffs to proceed under pseudonyms. *Id.*; *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of children"); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("the youth" of plaintiffs is often "a significant factor in the matrix of considerations arguing for anonymity" and finding the plaintiffs' youth to be an "especially persuasive" factor justifying anonymity); *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *5 (S.D. Cal. Dec. 20, 2017) ("'[C]hild-plaintiffs' are deemed to be especially vulnerable, warranting their anonymity.").

The Minor Plaintiffs are transgender minors. Given the highly detailed (albeit non-identifying) information in the Complaint about the Minor Plaintiffs, their families, and their medical histories, the use of pseudonyms is essential to protect their privacy. Because the pool of transgender adolescents receiving gender-affirming care is small, even initials could be used to identify Minor Plaintiffs. In a June 2022 Report, the Williams Institute on Sexual Orientation and

Gender Identity Law and Public Policy determined that roughly just 1.43% of the U.S. population aged 13 to 17 identified as transgender. In Oklahoma, it is estimated to be 1%.[3]

The parents and guardians of the Minor Plaintiffs also should be allowed to proceed using pseudonyms. Courts customarily allow both minors and their parents or guardians to proceed under pseudonyms where the interests of minors are at stake. *See Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 724 (7th Cir. 2011), *vacated on other grounds*, 687 F.3d 840 (7th Cir. 2012); *S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18-2042-DDC-GEB, 2018 WL 3389878, at *2 (D. Kan. July 12, 2018) (permitting plaintiffs to proceed anonymously because the parents and child "share common privacy interests based on their inseparable relationship to one another" and "[o]rdering disclosure of the parents' identities would place—in effect—personally identifiable and confidential information about" the child "in the public record"); *Doe v. Banos*, 713 F. Supp. 2d 404, 407 (D. N.J. 2010) (stating that the pseudonym of father and daughter was "used to protect the identity of a 15-year-old minor."); *Stegall*, 653 F.2d at 186; *Porter*, 370 F.3d at 561.

Other courts have permitted transgender minors and their parents or guardians to use pseudonyms to protect their privacy. *See, e.g.*, *Doe v. United States*, No. 16-cv-0640-SMY-DGW, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016) (allowing minor transgender plaintiff and his parents to proceed anonymously because of the social stigma associated with non-conforming gender identities). Indeed, courts regularly extend these protections to parents and guardians in cases involving transgender youth. *See, e.g.*, *Dekker v. Weida*, No. 4:22cv325-RH-MAF (N.D. Fla. Sept. 13, 2022), ECF No. 18; *Doe v. Volusia Cnty. Sch. Bd.*, No. 18-102 (M.D. Fla. Jan. 30, 2018),

---

[3] JODY HERMAN ET AL., WILLIAMS INST., HOW MANY ADULTS AND YOUTH IDENTIFY AS TRANSGENDER IN THE UNITED STATES? 9–10 (2022), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Jun-2022.pdf.

J.A. 0103

ECF No. 8; *Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-CV-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016); *Doe v. United States*, 2016 WL 3476313, at *1.

Identifying the Minor Plaintiffs' parents by name effectively would identify the Minor Plaintiffs themselves. Given that the Complaint challenges the discriminatory denial of necessary medical care and the effect of that denial, it necessarily pleads highly detailed information about the Plaintiff Families. Because of the relatively small number of transgender adolescents, the information in the Complaint could be used to identify the Minor Plaintiffs when combined with their parents' legal names.

Protecting constitutional rights is of the utmost public interest, and lawsuits seeking to vindicate those rights by definition serve the public. Plaintiffs seek to vindicate and protect their constitutional and statutory rights that apply to all persons in Oklahoma. Forcing an individual to disclose private and personal information as part of vindicating constitutional and statutory rights would dissuade other similarly situated individuals from bringing such claims. *Cf. Doe v. Stand. Ins. Co.*, No. 1:15–cv–00105–GZS, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015) ("To deny Plaintiff's request under the circumstances of this case might not only prevent Plaintiff from proceeding on her claim, but might also discourage others ... from asserting their claims.").

Plaintiffs do not seek to restrict the public's general right to access the filings, proceedings, and rulings in this case. Plaintiffs' request is narrowly tailored to prevent only the public disclosure of the Minor Plaintiffs' identities and those of their parents and next friends. Where, as here, the "public will have access to the facts relevant to the parties' arguments and the Court's ultimate decision in the case, an order permitting Plaintiff[s] to proceed under a pseudonym will not unreasonably interfere with the public's interest in access to judicial records and will promote the public's interest" by protecting every individual's constitutional rights. *Id*.

7

Furthermore, Plaintiffs do not seek to withhold their identity from Defendants (through their counsel) or the Court, but only to proceed pseudonymously to prevent disclosure of Plaintiffs' identities in public documents. Allowing Plaintiffs to proceed under pseudonyms will not prejudice Defendants; Defendants (through their counsel) will know each Plaintiff's identity. "[I]t is unclear how [the Court's grant of the requested relief] would … hinder [] [Defendants'] preparation" of the case, as Defendants here would still be able "to obtain all the information necessary to address" the issues in this case without public disclosure of Plaintiffs' names. *Porter*, 370 F.3d at 561; *see also Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) (finding "the relief sought by th[e] motion [to proceed pseudonymously] will not prejudice defendants" as plaintiff "d[id] not seek to withhold his identity from defendants but only wishes to prevent disclosure of his identity in public documents"); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (granting motion to proceed under pseudonym where defendant "already [knew] Doe's true identity").

II.  **PERMITTING PLAINTIFFS TO PROCEED UNDER PSEUDONYMS PREVENTS THE DISCLOSURE OF HIGHLY SENSITIVE INFORMATION, PREVENTS THE IRREPARABLE HARM THAT THIS LITIGATION SEEKS TO AVOID, AND PROTECTS THE MINOR PLAINTIFFS FROM THE REAL DANGER OF PHYSICAL HARM.**

   A.  **Denial of the Motion Would Result in the Disclosure of Highly Sensitive and Personal Information.**

Courts have recognized that a person's transgender status is of an "excruciatingly private and intimate nature" that "is really beyond debate" "for persons who wish to preserve privacy in the matter." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see also Foster*, 2019 WL 329548, at *2 (finding "the disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria" and observing that "other courts have recognized the highly

8

personal and sensitive nature of a person's transgender status and thus have permitted transgender litigants to proceed under pseudonym"); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) ("forced disclosure of a transgender person's most private information"— that being "their transgender status"—violates "their constitutional right to informational privacy"); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that "requiring Plaintiffs to disclose their transgender status ... directly implicates their fundamental right of privacy"); *K.L. v. State*, No. 3AN–11–05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is entitled to protection."). Simply put, one's gender identity is "among the most intimate parts of one's life." *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992). "Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest." *Arroyo Gonzalez*, 305 F. Supp. 3d at 333.

Recognizing the highly personal and sensitive nature of a person's transgender status, courts routinely allow transgender litigants to proceed under pseudonyms. *See, e.g.*, Temporary Order Allowing Pseudonym Litigation, *Bridge v. Okla. State Dep't of Educ.*, No. CIV-22-00787-JD (W.D. Okla. Sept. 12, 2022), ECF No. 11; *Foster*, 2019 WL 329548; *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Doe v. Dist. of Columbia.*, No. 13-878 (RDM), 2016 WL 6088262 (D.D.C. Oct. 18, 2016); *Love*, 146 F. Supp. 3d 848; *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174 (N.D. Ohio Nov. 9, 2001); *Blue Cross*, 794 F. Supp. 72; *Doe v. Alexander*, 510 F. Supp. 900 (D. Minn. 1981); *McClure v. Harris*, 503 F. Supp. 409 (N.D. Cal. 1980), *rev'd on other grounds sub nom. Schweiker v. McClure*, 456 U.S. 188 (1982); *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980).

Further, the Minor Plaintiffs' private medical history and experiences as transgender adolescents would be rendered public through litigation if they are not allowed to proceed anonymously. This litigation involves the unconstitutional deprivation of necessary medical treatments for the Minor Plaintiffs. As such, it necessarily involves detailed allegations of the Minor Plaintiffs' confidential medical information.

The Tenth Circuit has repeatedly recognized that "confidential medical information is entitled to constitutional privacy protection," *A.L.A. v. W. Valley City*, 26 F.3d 989, 990 (10th Cir. 1994), and a right to privacy exists in the non-disclosure of personal information, including confidential medical information. *See Royce v. Veteran Affs. Reg'l Off.*, No. 08–cv–01993–KMT–KLM, 2009 WL 1904332, at *7 (D. Colo. July 1, 2009) (citing *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000)); *cf. Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (noting that "many courts have recognized pseudonym use" in cases involving mental health).

The Minor Plaintiffs' medical diagnoses of gender dysphoria and related gender-affirming medical care are central issues in this case. They have a right to privacy for their personal medical information and are entitled to protection from public disclosure. *See Powell*, 175 F.3d at 112 (transgender people "are among those who possess a constitutional right to maintain medical confidentiality"); *Foster*, 2019 WL 329548, at *2 ("the disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s … diagnosed medical condition—gender dysphoria").

Protection of the Minor Plaintiffs' privacy rights warrants allowing them and their parents and guardians to proceed under pseudonyms.

**B.      Denial of the Motion Would Cause the Injury this Litigation Seeks to Avoid.**

Plaintiffs have filed suit to remedy the discriminatory and unconstitutional Health Care Ban prohibiting the provision of medically necessary gender-affirming care and the Hospital

Defendants' unlawful policy of denying that care, both of which endanger the health and wellbeing of transgender adolescents in Oklahoma. The Minor Plaintiffs will suffer distress, humiliation, embarrassment, emotional pain and anguish, violation of their dignity, and will suffer harms to their short- and long-term health and wellbeing if they are denied access to medically necessary health care.

The Minor Plaintiffs are particularly worried about the deprivation of gender-affirming care because the loss of that care will make it more likely that they are misgendered or identified as transgender in public. *See, e.g.*, Brandon Boe Decl. ¶¶ 7-9 (describing Brandon's efforts to appear more masculine and avoid misgendering in public); Donna Doe Decl. ¶¶ 18, 20 (describing her concern that her transgender granddaughter will be outed as transgender without gender-affirming care); Daphne Doe Decl. ¶¶ 11, 17 (describing Daphne's fears that she will start looking different from other girls without gender-affirming care and once again be bullied for being transgender); Peter Poe Decl. ¶¶ 14, 16 (describing Peter's fear of losing gender-affirming care and being misgendered in public); Ryan Roe Decl. ¶¶ 9-11, 27 (describing Ryan's experience of bullying in school and fear of returning to being uncomfortable in his body without gender-affirming care); Lydia Loe Decl. ¶¶ 7-11, 16 (describing minor Lydia's rejection by former foster families for being transgender and fear of being misgendered in public).

Requiring the Minor Plaintiffs to reveal their transgender status publicly as a condition of litigating their right to receive the gender-affirming care that otherwise would allow them to keep their transgender status private would subject them to the very harms of discrimination and harassment they seek to prevent through litigation. *See Lindsey*, 592 F.2d at 1125 (explaining "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid"

J.A. 0108

(citation omitted)); *see also M.T. v. Olathe Pub. Schs. USD 233*, No. 17-2710-JAR-GEB, 2018 WL 806210, at *3 (D. Kan. Feb. 9, 2018) (finding that "the real potential of additional psychological harm—one of the very injuries litigated against—is enough to outweigh the public interest in disclosure" of the plaintiff's identity). "Justice should not carry such a high price." *Plaintiff B v. Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011).

The prospect of Plaintiffs being forced to maintain this suit in their own names as the cost of bringing a suit to challenge and prevent discrimination strongly outweighs the public interest in disclosure.

### C.    Disclosure of Plaintiffs' Identities Would Expose Them to the Risk of Stigmatization, Discrimination, Harassment, and Violence.

Real danger of physical harm is an "exceptional circumstance[] warranting some form of anonymity in judicial proceedings." *Femedeer*, 227 F.3d at 1246; *M.M.*, 139 F.3d at 803; *see also Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, No. 16-cv-2801-JWL-TJJ, 2017 WL 3839416, at *11 (D. Kan. Sept. 1, 2017). Here, Plaintiffs allege that disclosing the Minor Plaintiffs' "transgender status will subject [them] to discrimination, harassment, and violence." *Foster*, 2019 WL 329548, at *2. These "fears are justified." *Id.*

Numerous courts have recognized that the "hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n.8 (D.C. 2014); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017), *abrogated on other grounds by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (2020); *Karnoski v. Trump*, NO. C17-1297-MJP, 2018 WL 1784464, at *10 (W.D. Wash. Apr. 13, 2018), *vacated on other grounds*, 926 F.3d 1180 (9th Cir. 2019); *Love*, 146 F. Supp. 3d at 856; *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020). Involuntary

disclosure of a person's transgender status thus "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez*, 305 F. Supp. 3d at 333; *see also F. V.*, 286 F. Supp. 3d at 1137.

The threat of physical harm to transgender individuals due to the disclosure of their transgender status is real. *See Foster*, 2019 WL 329548, at *2. As one court recognized, "there exist numerous documented instances of those targeted for violence based on their ... gender identity." *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009).

These well-documented dangers are present in Oklahoma. Numerous individuals have been murdered in Oklahoma because they are transgender.[4] A 12-year-old transgender student in Oklahoma was violently threatened by a group of parents with plans to attack the child with a knife and have her beaten up by other students.[5] In the 2015 U.S. Transgender Survey, the largest nationwide study of transgender discrimination, 68% of Oklahoma respondents known or perceived as transgender experienced some form of mistreatment at some point between Kindergarten and Grade 12. This mistreatment included being verbally harassed, prohibited from

---

[4] *See, e.g.*, Muri Assuncao, *Oklahoma Transgender Man Shot to Death While Driving His Cab on New Year's Day; Survived by Wife, Four Children*, N.Y. DAILY NEWS (Jan 3, 2020, 5:44 PM), https://www.nydailynews.com/news/crime/ny-transgender-man-shot-to-death-driving-cab-oklahoma-20200103-ss23jcpaovdevlbovx2n72blwe-story.html; *Oklahoma Man Convicted of Killing Transgender Woman*, OKLA. FOX 25 (Apr. 25, 2019, 3:34 PM), https://okcfox.com/news/local/oklahoma-man-convicted-of-killing-transgender-woman.

[5] *See* Mary Emily O'Hara, *Parents Threatening a Transgender Child Caused Entire School District to Shut Down*, THEM (Aug. 13, 2018), https://www.them.us/story/parents-threaten-trans-child-student.

dressing according to their gender identity, disciplined more harshly, or physically or sexually assaulted.[6]

The animosity towards transgender persons extends to those who support them, including their parents. An Oklahoma school board member recently publicly urged parents who support their transgender children to kill themselves.[7] The legislative debates around the Health Care Ban were accompanied by hostile comments about transgender minors and their parents: Oklahoma legislators referred to transgender minors as "delusional" or "misguided" and in need of "wise and clear biblical guidance"; compared providing gender-affirming care to "starving your child to death"; and referred to being transgender as a path of "desolation, destruction, degeneracy." *See generally* Complaint at Section III.

Unfortunately, Plaintiffs' fears that they will be exposed to an increased risk of discrimination, harassment, and even violence should the transgender status of the Minor Plaintiffs become publicly known are real and well-founded. In this case, some of the Minor Plaintiffs have already been subject to bullying, discrimination, and harassment because they are transgender, and the Plaintiffs have taken steps to protect the Minor Plaintiffs from discrimination in their communities. *See, e.g.*, Daphne Doe Decl. ¶¶ 9-10 (describing minor Daphne's bullying at school based on her transgender status, and her efforts to avoid bullying at her new school); Benjamin Boe Decl. ¶ 16 (describing parent Benjamin's search for a new faith community that will be

---

[6] NAT'L CTR. FOR TRANSGENDER EQ., 2015 U.S. TRANSGENDER SURVEY, OKLAHOMA STATE REPORT (2017), https://transequality.org/sites/default/files/docs/usts/USTSOKStateReport(1017).pdf.

[7] Madison Hall, *An Oklahoma School Board Member Posted a TikTok Telling Parents Who Support Transgender Kids to Kill Themselves*, INSIDER (Feb. 10, 2022, 4:25 PM), https://www.insider.com/school-board-member-criticized-parents-trans-support-tiktok-2022-2.

14

accepting of his transgender son); Ryan Roe Decl. ¶¶ 9-11, 27 (describing minor Ryan's experience of bullying in school for being gender nonconforming).

Because of the real risks of discrimination, harassment, and violence that transgender people face on account of their transgender status, courts regularly have allowed transgender plaintiffs to proceed under pseudonyms. *See, e.g.*, *Blue Cross*, 794 F. Supp. at 73 (noting that "in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure"); *In re E.P.L.*, 891 N.Y.S.2d at 621 (shielding publication of a transgender individual's name in seeking a court order regarding a name change based upon his "right to feel threatened for his personal safety in the event his transgender status is made public"). The Court should do the same here.

## CONCLUSION

The ages of the Minor Plaintiffs, the highly sensitive and private nature of the information at issue, the history of violence and discrimination toward transgender people, and the present-day vitriol directed by public officials toward transgender adolescents, their parents, and those who defend and associate with them, all support granting leave for the Minor Plaintiffs and Parent Plaintiffs to proceed under pseudonyms. Granting this motion will not prejudice Defendants or the public. In sum, "this is an exceptional case where the need for anonymity outweighs the public interest" in disclosing the identities of the Minor Plaintiffs and Parent Plaintiffs.

For these and the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to proceed under pseudonyms and for a protective order limiting disclosure of their identities to counsel for Defendants.

Date: May 2, 2023

/s/*Megan Lambert*
Megan Lambert
    (OBA# 33216)
**American Civil Liberties Union**
  **Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union**
  **Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

*Application for admission pro hac vice
forthcoming.*

Respectfully submitted

Omar Gonzalez-Pagan*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC  20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

J.A. 0113

**CERTIFICATE OF SERVICE**

I hereby certify that this motion will be served concurrently with the service of the Summonses and Complaint in this matter.

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org
*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

PETER POE, et al.,

    *Plaintiffs*,

    v.

GENTNER DRUMMOND, et al.,

    *Defendants*.

Case No.  23-cv-00177-JFH-SH

---

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND FOR EXPEDITED CONSIDERATION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs hereby respectfully move the Court for a preliminary injunction restraining Defendants and any successors to Defendants from enforcing any provision of Senate Bill 613 ("SB 613"), enacted by the Oklahoma State Legislature on April 27, 2023 and signed into law by Oklahoma Governor Stitt on May 1, 2023 (the "Health Care Ban"), during the pendency of this litigation.  The Health Care Ban prohibits the provision of medically necessary, safe, effective, and often lifesaving healthcare to transgender adolescents with gender dysphoria in Oklahoma. Absent expedited and preliminary injunctive relief, Plaintiffs will suffer immediate and irreparable harm.

In support of this Motion, Plaintiffs submit the declarations of Plaintiffs Peter Poe, Paula Poe, Daphne Doe, Donna Doe, Brandon Boe, Benjamin Boe, Lydia Loe, Lauren Loe, Ryan Roe, Rachel Roe, and Dr. Shauna Lawlis, M.D.; the expert declarations of Deanna Adkins, MD, Armand H. Matheny Antommaria, MD, PhD, FAAP, HEC-C, Aron Janssen, M.D., and Jack Turban, M.D.; an Opening Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction;

and the text of the Health Care Ban (attached as Exhibit 1 to Plaintiffs' Opening Memorandum of Law).

Plaintiffs' Opening Memorandum of Law in Support of the Motion demonstrates Plaintiffs are likely to prevail on the merits of their claims, a preliminary injunction is necessary to prevent irreparable harm to Plaintiffs, and that such a preliminary injunction is in the public interest.

Plaintiffs respectfully request that the Court exercise its discretion and waive any bond requirement because Defendants are unlikely to sustain any costs or damages as the result of a preliminary injunction. *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F .2d 1461, 1462 (10th Cir. 1987) (district court may waive bond requirement "if there is an absence of proof showing a likelihood of harm" (citation omitted)); *Sulphur Manor, Inc. v. Burwell*, No. CIV-15-250-RAW, 2015 WL 12564776, at *2 (E.D. Okla. July 8, 2015) (no bond necessary because there was no harm to government from staying administrative action).

Plaintiffs request oral argument and believe it would be helpful to the Court when considering the issues raised by the motion.  Under the Local Rules, Defendants' response brief is due within twenty-one days of service of the motion papers, and Plaintiffs' reply brief is due fourteen days after Defendants' response brief.  Because the Health Care Ban currently is in effect and Plaintiffs face irreparable harm if enforcement of the Health Care Ban is not enjoined, Plaintiffs respectfully request that the Court exercise its discretion to expedite the briefing schedule so that Defendants' response brief is due within fourteen days of service of the motion papers, and Plaintiffs' reply brief is due within seven days after Defendants' response brief.  Plaintiffs ask that the Court set oral argument as soon as possible after the conclusion of briefing.

*[The remainder of this page has been left blank intentionally.]*

2

Date: May 2, 2023

/s/*Megan Lambert*
Megan Lambert
     (OBA# 33216)
**American Civil Liberties Union
   Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union
   Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

*Application for admission pro hac vice
forthcoming.*

Respectfully submitted

Omar Gonzalez-Pagan*
**Lambda Legal Defense
   and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense
   and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense
   and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC  20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

J.A. 0117

**CERTIFICATE OF SERVICE**

I hereby certify that this motion will be served concurrently with the service of the Summonses and Complaint in this matter.

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org
*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

PETER POE, et al.,

    *Plaintiffs*,

        v.

GENTNER DRUMMOND, et al.,

    *Defendants*.

Case No.  23-cv-00177-JFH-SH

**OPENING MEMORANDUM IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

      A.     Medical Protocols for the Treatment of Transgender Adolescents with Gender Dysphoria ....................................................................................2

      B.     The Health Care Ban..................................................................................4

      C.     The Health Care Ban Inflicts Severe and Irreparable Harms. ...............5

ARGUMENT .........................................................................................................................10

I.      PRELIMINARY INJUNCTION STANDARD. ...............................................10

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM. .......................................................................11

      A.     The Health Care Ban Is Subject to Heightened Equal Protection Scrutiny Because It Discriminates Based on Transgender Status and Sex. .........11

            1.     The Ban Discriminates Based on Transgender Status. ..............12

            2.     The Ban Discriminates Based on Sex.......................................13

            3.     The Health Care Ban Was Passed for the Purpose of Drawing Sex- and Transgender Status-Based Distinctions.............................15

      B.     The Health Care Ban Fails Heightened Equal Protection Scrutiny. ....................16

            1.     There Is No Factual Support for Any Potential Justification of the Ban. ...........................................................................................16

            2.     Treating Gender-Affirming Care Differently from Medical Treatments with Comparable Risks, Benefits, and Scientific Support Is Unjustifiable. ..........................................................................17

      C.     The Health Care Ban Fails Any Level of Review.................................19

III.    THE PARENT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT THE HEALTH CARE BAN VIOLATES PARENTS' FUNDAMENTAL RIGHT TO PARENTAL AUTONOMY..............................19

      A.     Strict Scrutiny Applies to the Parent Plaintiffs' Due Process Claims. ..................20

      B.     The Health Care Ban Cannot Survive Strict Scrutiny...........................21

IV.    A PRELIMINARY INJUNCTION IS NECESSARY. .......................................22

      A.     Plaintiffs Will Suffer Immediate and Irreparable Harm If the Health Care Ban is Not Blocked. ...............................................................................22

      B.     The Balance of Equities Weigh in Plaintiffs' Favor and Issuance of the Preliminary Injunction is in the Public Interest. ....................................24

      C.     A Facial Statewide Injunction Is Necessary.........................................25

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aposhian v. Barr*,
   958 F.3d 969, 978 (10th Cir. 2020) ........................................................24

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ..............................................................22

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
   531 U.S. 356 (2001)................................................................................19

*Bernal v. Fainter*,
   467 U.S. 216 (1984)................................................................................21

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020)................................................................13, 14, 15

*Boyden v. Conlin*,
   341 F. Supp. 3d 979 (W.D. Wis. 2018) ..................................................14

*Brandt by & through Brandt v. Rutledge*,
   47 F.4th 661 (8th Cir. 2022), *reh'g en banc denied*, 2022 WL 16957734 (8th
   Cir. Nov. 16, 2022) ........................................................................ *passim*

*Brandt v. Rutledge*,
   551 F. Supp. 3d 882 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661 (8th Cir. 2022) ...............20, 21, 22

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014)................................................................................11

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*,
   No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) ........................12

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)................................................................................25

*Citizens United v. Gessler*,
   773 F.3d 200 (10th Cir. 2014) ................................................................25

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)................................................................................19

J.A. 0121

*Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin. of U.S.*
    *Dep't of Transp.*,
    843 F.3d 886 (10th Cir. 2016) ...................................................................11

*Denver Homeless Out Loud v. Denver*,
    32 F.4th 1259 (10th Cir. 2022) ................................................................10

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) ..............................................................................25

*Dodds v. U.S. Dep't of Educ.*,
    845 F.3d 217 (6th Cir. 2016) (per curiam) ..............................................14

*Eisenstadt v. Baird*,
    405 U.S. 438 (1972) ..................................................................................19

*Eknes-Tucker v. Marshall*,
    603 F. Supp. 3d 1131 (M.D. Ala. 2022), *appeal filed*, No. 22-11707 (11th Cir.
    May 18, 2022) ................................................................................... *passim*

*Fain v. Crouch*,
    618 F. Supp. 3d 313 (S.D.W. Va. 2022) ..................................................12

*Flack v. Wis. Dep't of Health Servs.*,
    328 F. Supp. 3d 931 (W.D. Wis. 2018) ...................................................12

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019) .............................................................15, 22

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ...............................................................14

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ..................................................................................16

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ...................................................................12

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ...............................................................11

*Kadel v. Folwell*,
    446 F. Supp. 3d 1 (M.D.N.C. 2020) ........................................................15

*Kadel v. Folwell*,
    No. 1:19CV272, 2022 WL 11166311 (M.D.N.C. Oct. 19, 2022) ...........12

J.A. 0122

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
  927 F.3d 396 (6th Cir. 2019) ............................................................20

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ..........................................................12

*Kitchen v. Herbert*,
  755 F.3d 1193 (10th Cir. 2014) .........................................................20

*Nken v. Holder*,
  556 U.S. 418 (2009).........................................................................11

*Pers. Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979)..........................................................................15

*Ray v. McCloud*,
  507 F. Supp. 3d 925 (S.D. Ohio 2020) ..............................................12

*Romer v. Evans*,
  517 U.S. 620 (1996)..........................................................................19

*Santosky v. Kramer*,
  455 U.S. 745 (1982)..........................................................................21

*Schall v. Martin*,
  467 U.S. 253 (1984)..........................................................................20

*Schrier v. Univ. of Colo.*,
  427 F.3d 1253 (10th Cir. 2005) .........................................................10

*Smith v. Avanti*,
  249 F. Supp. 3d 1194 (D. Colo. 2017)................................................14

*Toomey v. Arizona*,
  No. CV-19-00035-TUC-RM (LAB), 2019 WL 7172144 (D. Ariz. Dec. 23,
  2019) ................................................................................................12

*Tudor v. Se. Okla. State Univ.*,
  13 F.4th 1019 (10th Cir. 2021) ..........................................................13

*United States v. Virginia*,
  518 U.S. 515 (1996)....................................................................11, 16

*Verlo v. Martinez*,
  820 F.3d 1113 (10th Cir. 2016) .........................................................24

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)..........................................................................15

iv

**J.A. 0123**

*Wasatch Equal. v. Alta Ski Lifts Co.*,
   55 F. Supp. 3d 1351 (D. Utah 2014)................................................................11, 12

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)................................................................................................20

*Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
   858 F.3d 1034 (7th Cir. 2017), *abrogated on other grounds as recognized by*
   *Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ..............................14

## Court Rules

Fed. R. Civ. P. 65(a) ..................................................................................................10

J.A. 0124

## INTRODUCTION

Absent a preliminary injunction, Senate Bill 613 ("SB 613," the "Health Care Ban," or "Ban") (attached as Exhibit 1) will categorically prohibit the provision of medically necessary, safe, effective, and often lifesaving healthcare to transgender adolescents with gender dysphoria in Oklahoma. In enacting the Health Care Ban, the Oklahoma State Legislature ignored the testimony and opposition of experienced health professionals and a myriad of Sooner families who, like Plaintiffs, will be negatively affected. Instead, the Oklahoma State Legislature chose to deprive Oklahoma adolescents, their parents, and their doctors of the right to make important medical decisions together without undue interference from the government by removing access to the only effective treatment for gender dysphoria, a serious medical condition. The Ban is not just harmful: it is also unconstitutional, warranting expedited and preliminary injunctive relief.

All relevant considerations strongly weigh in favor of preliminary injunctive relief.

*First*, Plaintiffs are likely to succeed on the merits of their constitutional claims. The Ban discriminates against transgender adolescents on the basis of their transgender status and sex in violation of the Equal Protection Clause and deprives parents of their fundamental right to seek appropriate medical care for their children in violation of the Due Process Clause.

*Second*, the Ban will cause immediate and irreparable harm to all the Plaintiffs. The Minor Plaintiffs will experience anxiety, distress, and potentially permanent physiological changes if they are cut off from the care they rely on to treat gender dysphoria. The Parent Plaintiffs will have their parental judgment and decision-making authority—one at its apex where, as here, parents, their adolescent children, and their medical providers are all aligned—usurped by the government. The Parent Plaintiffs will either have to disrupt their lives at great cost to so their children can receive critical medical care out of state or else watch them suffer without the care they need. The Medical

J.A. 0125

Provider Plaintiff will have to choose between abandoning her patients or facing criminal charges, professional discipline, and losing her medical license for honoring her duty to do no harm.

*Third*, the balance of the equities and the public interest both weigh heavily in favor of a preliminary injunction. The Ban will cause immediate and irreparable harm if it is not enjoined, but the State will not incur any harm if the *status quo* is maintained while this case proceeds.

Federal courts have preliminarily enjoined similar bans to preserve the *status quo* and protect plaintiffs from irreparable harm. *See*, *e.g.*, *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022) (affirming preliminary injunction against similar ban from Arkansas), *reh'g en banc denied*, 2022 WL 16957734 (8th Cir. Nov. 16, 2022); *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1151 (M.D. Ala. 2022) (preliminary injunction against similar ban in Alabama), *appeal filed*, No. 22-11707 (11th Cir. May 18, 2022). This Court should do the same.

## STATEMENT OF FACTS

### A.  Medical Protocols for the Treatment of Transgender Adolescents with Gender Dysphoria

"Gender identity" refers to a person's core sense of belonging to a particular gender. Janssen Decl. ¶ 30. A person's gender identity, which has biological bases, cannot be changed voluntarily, by external forces, or through medical or mental health intervention. Janssen Decl. ¶¶ 34–35; Adkins Decl. ¶¶ 17, 21. Everyone has a gender identity. Adkins Decl. ¶ 18. People whose gender identity matches the sex they were designated at birth are cisgender (or non-transgender). *Id.* ¶ 19. People whose gender identity differs from their sex designated at birth are transgender. *Id.* ¶ 20. Being transgender is not itself a condition to be cured. Janssen Decl. ¶ 35; Adkins Decl. ¶ 23. But it is common for clinically significant distress—called "gender dysphoria"—to arise from the incongruence transgender people experience between their gender identity and the sex they were designated at birth. Adkins Decl. ¶¶ 22–24.

2

Gender dysphoria is a serious medical condition that, if left untreated, can result in severe anxiety and depression, self-harm, and suicidality. Janssen Decl. ¶ 47; Adkins Decl. ¶ 23. Treatment for gender dysphoria is provided in accordance with evidence-based clinical guidelines. The Endocrine Society and the World Professional Association for Transgender Health ("WPATH") have published widely-accepted clinical standards and guidelines for diagnosing and treating gender dysphoria. Adkins Decl. ¶ 26; Janssen Decl. ¶¶ 48–50. The major medical organizations in the United States agree with WPATH and the Endocrine Society that gender-affirming medical treatments—which, for adolescents and adults, can include puberty-delaying medication, hormone treatment, and surgery—can be medically necessary to treat gender dysphoria. Janssen Decl. ¶ 53.

Under the WPATH Standards of Care and the Endocrine Society Guideline (the "Protocols"), gender-affirming medical care is only provided when a patient has: (i) gender incongruence that is both marked and sustained over time; (ii) a diagnosis of gender dysphoria; (iii) sufficient emotional and cognitive maturity to provide informed consent; (iv) the actual presence of such informed consent, including information regarding reproductive side effects; and (v) the absence or mitigation of any countervailing mental health concerns. *Id.* ¶¶ 62–63.

Treatment for gender dysphoria depends on a patient's stage of pubertal development. Under the Protocols, no medical treatments are provided before the onset of puberty. Adkins Decl. ¶ 32; Janssen Decl. ¶ 58. If medically indicated, adolescents with gender dysphoria who have entered puberty may be prescribed puberty-delaying medications (called GnRH agonists) to prevent the distress of developing permanent, physical characteristics that do not align with their gender identity. Adkins Decl. ¶ 33; Janssen Decl. ¶ 59. Puberty-delaying medications allow the adolescent time to better understand their gender identity, while delaying distress from the development of secondary sex characteristics such as breasts or facial hair. *Id.*

J.A. 0127

Pubertal suppression is prescribed only with parental consent and when certain diagnostic criteria are met, including "a long-lasting and intense pattern of gender nonconformity or gender dysphoria [that has] worsened with the onset of puberty," "sufficient mental capacity to give informed consent," and a detailed assessment from a pediatric endocrinologist or other clinician experienced in pubertal assessment. Adkins Decl. ¶ 35. Pubertal suppression is reversible, and if the treatment is discontinued, endogenous puberty will resume. *Id.* ¶¶ 33, 40.

In some cases, a healthcare provider may determine it is medically necessary for adolescent patients to be treated with gender-affirming hormone therapy. *Id.* ¶ 36. These treatments—testosterone for adolescent transgender boys and testosterone suppression and estrogen for adolescent transgender girls—alleviate distress by facilitating physiological changes consistent with the adolescent's gender identity. *Id.* Under the Protocols, treatment is advised only after a rigorous assessment of the minor's gender dysphoria, and capacity to understand the risks and benefits of treatment. Adkins Decl. ¶¶ 37–40; Janssen Decl. ¶¶ 63–64. In the U.S., parental consent is required to prescribe these medical treatments to minors. *See* Adkins Decl. ¶ 35.

Gender-affirming medical treatments in adolescence can drastically minimize dysphoria later in life and may eliminate the need for surgery. *Id.* ¶ 66. A delay in treatment, on the other hand, can result in significant distress, including anxiety and escalating suicidality, as well as permanent physical changes from puberty that can require surgical treatment to reverse later in life. *Id.* ¶¶ 67–70. The safety and efficacy of gender affirming medical care in improving mental health outcomes for adolescents suffering from gender dysphoria is supported by "a substantial body of evidence," including cross-sectional and longitudinal studies, as well as the clinical expertise of providers over decades. Turban Decl. ¶ 14.

### B.    The Health Care Ban

SB 613 prohibits any "health care provider" from "knowingly provid[ing] gender transition

4

procedures to any child," defined as "any person under eighteen (18) years of age." SB 613 §§ 1(A)(1), 1(B). "Gender transition procedures" are defined by an enumerated list of "medical or surgical services performed for the purpose of attempting to affirm the minor's perception of his or her gender or biological sex, if that perception is inconsistent with the minor's biological sex." SB 613 § 1(A)(2)(a). Such procedures include "surgical procedures that alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex," or "puberty-blocking drugs, cross-sex hormones, or other drugs to suppress or delay normal puberty or to promote the development of feminizing or masculinizing features consistent with the opposite biological sex." SB 613 § 1(A)(2)(a)(1)–(2). The Ban does not define "biological sex." But SB 613 excludes from the definition of banned procedures, *inter alia*, "medications prescribed … specifically for the purpose of treating precocious puberty or delayed puberty in that patient," "services provided to individuals born with ambiguous genitalia, incomplete genitalia, or both male and female anatomy, or biochemically verifiable disorder[s] of sex development," and treating conditions "caused by or exacerbated by" "gender transition procedures". SB 613 § 1(A)(2)(b)(3)–(5). Health care providers who violate SB 613 can be convicted of a felony and be found guilty of unprofessional conduct by their licensing board. *See* SB 613 § 2.

### C.   The Health Care Ban Inflicts Severe and Irreparable Harms.

By cutting off access to treatment that transgender adolescents with gender dysphoria in Oklahoma rely on for their health and wellbeing and limiting future access to treatment, the Ban causes immediate, severe, and irreparable harm to all the Plaintiffs.

**The Poe Family:** Peter is a 12-year-old boy who is transgender. Peter Poe Decl. ¶¶ 2, 5. Peter has felt like a boy from a young age, and first asked his parents to call him by a boy's name when he was seven years old. *Id.* ¶¶ 7–8. When Peter started to go through puberty, he had extreme anxiety and trouble sleeping. *Id.* ¶ 9. Although he was initially afraid to tell his parents that he was

a boy, he finally told them when he was ten years old. *Id.* ¶¶ 10–11. Even though Peter is scared of needles, he takes Lupron shots to treat his gender dysphoria, and those injections stop him from going through puberty. *Id.* ¶¶ 12–13. He has been taking those shots for over a year, and he is scared about having to stop: he does not want to go back to getting a period or having his chest grow. *Id.* ¶ 14. When his mother told him that he might have to stop taking Lupron, he almost broke down: he felt powerless. *Id.* ¶ 15. He is scared about losing access to the puberty-delaying medication he needs, the changes his body would go through, and potentially having to leave Oklahoma to get medical care. *Id.* ¶¶ 16–17. Before starting Lupron, Peter's doctor explained the risks and benefits of puberty-delaying medication to Peter and his mother Paula. Paula Poe Decl. ¶ 14. Paula knows how upset Peter gets when he is unable to receive his puberty-delaying medication on time: he experiences breakthrough bleeding, which makes his gender dysphoria much worse, as does the thought that he might grow breasts. *Id.* ¶¶ 15, 20. Peter started to bloom once he began living as a boy: he is euphoric to be who he is. *Id.* ¶ 17. She worries about Peter's physical and mental health if he cannot continue receiving treatment, and that he might return to the suicidality and self-harm he experienced before starting puberty-delaying medications, or that he sometimes feels when his care is interrupted. *Id.* ¶ 21.

**The Doe Family:** Daphne is a 15-year-old girl who is transgender. Daphne Doe Decl. ¶¶ 2–3. Daphne lives with her grandmother, Donna Doe, her legal guardian. *Id.* ¶ 2; Donna Doe Decl. ¶ 2. Daphne has always felt more like a girl than a boy; beginning when she was a toddler, she repeatedly told her grandmother that she was a girl, that she felt like a girl in a "boy body," and always knew she preferred to hang out with other girls. Daphne Doe Decl. ¶¶ 4–5; Donna Doe Decl. ¶ 5. When Daphne started to go through puberty, she became "depressed, anxious, and withdrawn." Donna Doe Decl. ¶ 11. After a long period of counseling, Daphne was diagnosed with

gender dysphoria. *Id.* ¶¶ 10–13. When she was 13, Daphne began taking puberty-delaying medication; a year later, she began taking estrogen. *Id.* ¶ 14. The puberty-delaying medication stopped her body from developing like a boy's, which helped her tremendously: looking like a girl is very important to Daphne, because she is a girl. Daphne Doe Decl. ¶¶ 8, 11, 13. Daphne is more secure and less anxious now: the puberty-delaying medications gave her time to make the decision (with her grandmother) that she wanted to start estrogen, and the estrogen helps her look the way she wants. *Id.* ¶¶ 13–15. She is so glad that she was able to receive puberty-delaying medications before she experienced too much male puberty: she is more confident, can choose who to tell she is transgender (as opposed to being outed by the way she looks), and is no longer bullied. *Id.* ¶¶ 11, 13, 14–16. If she had to stop taking puberty-delaying medication or estrogen, she would go back to a male puberty, and she is afraid her dysphoria would get a lot worse. *Id.* ¶ 17. She just wants to live her life as a girl, the way she has been. *Id.* ¶ 19. Daphne is excelling in school, but without her medications, her grandmother is worried about her: before she transitioned, Daphne was very anxious and depressed, and had suicidal thoughts. Donna Doe Decl. ¶¶ 16, 19–20.

**The Boe Family:** Brandon Boe is a 17-year-old boy who is transgender. Brandon Boe Decl. ¶¶ 2, 4. Brandon told his parents that he was transgender just before he turned 15, but his father Benjamin Boe realizes that there were early and consistent signs that Brandon was a boy: Brandon always drew himself as a boy, refused to line up with girls in school, and threw a fit every time he was forced to wear a skirt. Benjamin Boe Decl. *Id.* ¶¶ 4–7. Brandon's parents did extensive research on how to support their son. *Id.* ¶¶ 8, 10. Initially, they wanted Brandon to wait until he turned 18 to undergo any medical treatments for his gender dysphoria, but they saw how isolated he was becoming without treatment. *Id.* ¶ 9. Brandon wouldn't speak in public, or even take his mask off, because he was so terrified of being misgendered. *Id.* ¶ 9. By the time Brandon started

testosterone to treat his gender dysphoria, he had been living socially as a boy for two years and had more than a year of therapy. *Id.* ¶ 10; Brandon Boe Decl. ¶¶ 10–11. Brandon's parents reviewed all of the literature the doctors gave them about hormone treatment and ensured that Brandon read every word. *Id.* ¶ 11; Benjamin Boe Decl. ¶ 11. Brandon has been taking testosterone for nine months and is much more confident: he goes out in public, and even has a job, which he would not have been able to do before starting hormones. Brandon Boe Decl. ¶ 12–14. Brandon's parents do not want to have to leave Oklahoma: their families have lived here for generations, and moving away would uproot their lives and everything their family knows. Benjamin Boe Decl. ¶¶ 18–20.

**The Loe Family:** Lydia is a 16-year-old girl and transgender. Lydia Loe Decl. ¶¶ 2, 5. Lydia has known for a long time that she is a girl. *Id.* ¶ 6. Lydia told two different foster care placements that she was a girl, and both rejected her. *Id.* ¶¶ 7–8. When Lydia was 14, she moved in with her adoptive mother, Lauren, but it took Lydia a year to trust Lauren enough to tell her that she was transgender. *Id.* ¶ 9. During the COVID-19 shutdown, Lauren homeschooled Lydia, which gave her time in a supportive environment to try on feminine hairstyles, makeup, and clothing. Lauren Loe Decl. ¶ 8. After more than a year of counseling leading to a gender dysphoria diagnosis, extensive tests, and conversations with Lydia's doctors about the risks and benefits of hormone therapy, Lydia started estrogen and spironolactone. *Id.* ¶ 11. With hormone treatment, Lydia acts more like herself: the difference in her mental health is night and day, and she seems more comfortable in her body. *Id.* ¶ 13. Lauren is very concerned about her daughter's mental and physical health if she is forced to stop taking estrogen; she is worried that Lydia will return to the suicidality and self-harm she experienced before treatment. *Id.* ¶ 15.

**The Roe Family:** Ryan is a 14-year-old boy who is transgender. Rachel Roe Decl. ¶¶ 5–6. Ryan began experiencing depression as he approached puberty. *Id.* ¶ 9. He started working with a

therapist and was eventually diagnosed with gender dysphoria. *Id.* ¶¶ 9, 11–12. Following the advice of his medical team, Ryan started period blockers and puberty delaying treatment. *Id.* ¶ 13. The medical treatment for his gender dysphoria, along with living and being recognized as his true self—a boy—has significantly improved his mental health. *Id.* ¶¶ 14–15. He is a confident and eloquent young man, but Rachel worries about his physical and mental health if he has to go through puberty inconsistent with his male identity. *Id.* ¶¶ 16–18. Being able to live as a boy has brought Ryan joy and happiness. Ryan Roe Decl. ¶ 28. He is immensely scared of being forced to live in a body that does not match who he is and terrified at losing access to his medical care. *Id.* ¶ 27. Because his family cannot leave Oklahoma, Ryan and his parents have discussed whether he should move to the East Coast and live with one of his mother's siblings, even though Oklahoma is the only home he has ever known. *Id.* ¶¶ 29–30.

**Dr. Shauna Lawlis:** Dr. Shauna Lawlis is a doctor at Oklahoma Children's Hospital, who is double board certified in pediatrics and in adolescent medicine. Lawlis Decl. ¶¶ 4, 6. She specializes in the care of transgender adolescents and gender diverse children and currently treats around 250 patients of varying ages, up to 24 years old, in Oklahoma. *Id.* ¶¶ 4–5. Since 2017, Dr. Lawlis has been providing care to transgender and gender diverse patients at Oklahoma Children's Hospital, including consultation for families with gender diverse children. *Id.* ¶¶ 6–7. When appropriate, for adolescent patients with gender dysphoria, she prescribes medications to delay puberty and provide gender-affirming hormone treatment. *Id.* Dr. Lawlis does so in accordance with evidence-based, well-accepted clinical practice guidelines, such as the WPATH Standards of Care and the Endocrine Society guidelines. *Id.* ¶ 8.

Since the passage of SB 3, and because of the Hospital Defendants' SB 3 Policy, Dr. Lawlis became credentialed to provide care and volunteer one day per week at Diversity Family Health,

where she currently sees her patients under 18 who require prescriptions for puberty-delaying medications and gender-affirming hormone therapy. *Id.* ¶ 17. As a result of the Health Care Ban, Dr. Lawlis is prohibited from providing puberty-delaying medications and gender-affirming hormone therapy to her transgender patients anywhere in Oklahoma, even though she is able to continue providing the same treatments to her cisgender patients to treat other conditions. *Id.* ¶ 19.

The Ban places Dr. Lawlis in the untenable position of complying by not providing her patients with gender dysphoria with the care that they need in accordance with the accepted standards of care and the tenets of her profession, or facing criminal prosecution, professional discipline, and even the loss of her license.  *Id.* ¶¶ 20, 23. Dr. Lawlis is gravely concerned about her patients' ability to survive, much less thrive, if the Ban remains in effect. *Id.* ¶ 24. For Dr. Lawlis, the Ban's provision that existing care may be provided for six months "solely for the purpose of … gradually decreasing and discontinuing use of the drugs or hormones" is of little comfort, as the provision of sub-therapeutic doses of puberty-delaying medications and hormones will cause adolescent patients' gender dysphoria to worsen and will lead to physical changes inconsistent with their gender identity, some of which may not be reversible.  *Id.* ¶¶ 25–26.

## ARGUMENT

## I.    PRELIMINARY INJUNCTION STANDARD.

 "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The Court considers whether (1) the plaintiffs are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20 (2008)); *see* Fed. R. Civ. P. 65(a). The balance-of-harms and public-interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

If Plaintiffs make an especially strong showing on the irreparable harm, balance of the equities, and public interest factors of the preliminary injunction analysis, then the Court applies a "relaxed standard" to the likelihood of success on the merits factor, under which an injunction is warranted as long as "questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013) (quoting *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006)), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

Plaintiffs must "show a reasonable probability that [they] will ultimately be entitled to the relief sought," *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citation omitted), but not "a certainty of winning." *Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (citation omitted).

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM.

Prior to SB 613, transgender adolescents in Oklahoma could access medical care for the treatment of gender dysphoria. The Ban changes that status quo by singling out transgender adolescents for a categorical prohibition on medical treatments that remain available to others. The Ban classifies based on transgender status and sex, thereby triggering heightened equal protection scrutiny. The Ban cannot survive this "exacting" test. *United States v. Virginia* ("*VMI*"), 518 U.S. 515, 555 (1996). Indeed, it fails even the most deferential standard of review.

### A. The Health Care Ban Is Subject to Heightened Equal Protection Scrutiny Because It Discriminates Based on Transgender Status and Sex.

Under the Equal Protection Clause, heightened scrutiny applies to classifications by sex

and certain "quasi-suspect classes." *Wasatch Equal. v. Alta Ski Lifts Co.*, 55 F. Supp. 3d 1351, 1360 (D. Utah 2014); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985). Such classifications must be "substantially related to an important state interest." *Wasatch Equal.*, 55 F. Supp. 3d at 1360 (quoting *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982)).

Because the Ban facially discriminates based on transgender status and sex, and because it was passed with a discriminatory purpose, it is subject to at least heightened scrutiny. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611–13 (4th Cir. 2020) (applying heightened scrutiny to discrimination based on sex and transgender status); *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019) (applying heightened scrutiny to discrimination based on transgender status); *Ray v. McCloud*, 507 F. Supp. 3d 925, 937–38 (S.D. Ohio 2020) (collecting cases).

## 1.    The Ban Discriminates Based on Transgender Status.

The Ban expressly classifies patients for differential treatment based on transgender status. A transgender person is, by definition, someone whose sex designated at birth is different from their gender identity. Janssen Decl. ¶ 29; Adkins Decl. ¶ 20. SB 613 explicitly bans "[g]ender transition procedures" for minors. SB 613 § 1(B). By targeting "gender transition," the law necessarily classifies based on transgender status: it is transgender people who undergo "gender transition" as part of treatment for gender dysphoria. But "a person cannot suffer from gender dysphoria without identifying as transgender." *Fain v. Crouch*, 618 F. Supp. 3d 313, 325 (S.D.W. Va. 2022); *see also C. P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022); *Kadel v. Folwell*, 2022 WL 11166311, at *4 (M.D.N.C. Oct. 19, 2022). And the Ban singles out medical care that only transgender people need or seek. *See Fain*, 618 F. Supp. 3d at 327; *Toomey v. Arizona*, 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 950 (W.D. Wis. 2018).

12

The Ban therefore expressly and exclusively targets transgender people by prohibiting medical treatments based on whether they "attempt[] to affirm the minor's perception of his or her gender or biological sex, if that perception is inconsistent with the minor's biological sex." *Eknes-Tucker*, 603 F. Supp. 3d at 1147 (explaining Alabama's ban on this care for minors "places a special burden on transgender minors because their gender identity does not match their birth sex").

### 2. The Ban Discriminates Based on Sex.

The Ban draws a classification based on sex in three distinct ways. First, the Ban speaks in explicit gendered terms and facially discriminates based on sex. Second, the Ban discriminates based on sex stereotypes relating to a person's sex assigned at birth. Third, the Ban discriminates based on sex because, as articulated above, it discriminates based on transgender status.

If the legislature cannot "writ[e] out instructions" for determining whether treatment is permitted "without using the words man, woman, or sex (or some synonym)," the law classifies based on sex. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1746 (2020). Here, the Ban prohibits medically necessary care when the care is provided in a manner the state deems "inconsistent with the minor's biological sex." SB 613 § 1(A)(2)(a). By "discriminating against transgender persons," the Ban "unavoidably discriminates against persons with one sex identified at birth and another today." *Bostock*, 140 S. Ct. at 1746; *see Brandt*, 47 F.4th at 669 (by relying on "the minor's sex at birth," Arkansas' ban on gender-affirming care for minors "discriminates on the basis of sex").

The Ban likewise discriminates based on a person's failure to conform to sex stereotypes or expectations associated with a particular sex designated at birth. The Tenth Circuit has recognized, since *Bostock*, that discrimination "because of sex" includes discrimination based on transgender status. *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021). That holding is consistent with those from other circuits that "sex stereotyping based on a person's gender non-conforming behavior"—including a person's "failure to act and/or identify with his or

13

her" sex designated at birth—"is impermissible discrimination" under both federal civil rights statutes and the Equal Protection Clause. *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (per curiam) (cleaned up) (quoting *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004)).

"By definition, a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048 (7th Cir. 2017), *abrogated on other grounds as recognized by Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020); *accord Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011). When the government "penalizes a person identified as male at birth for traits or actions that it tolerates in" people "identified as female at birth,"—here, for example, receiving medical treatment to live in accordance with a female gender identity—the person's "sex plays an unmistakable and impermissible role." *Bostock*, 140 S. Ct. at 1741–42.

Here, the Ban explicitly enforces sex stereotypes and gender conformity by targeting health care for exclusion if the purpose of the care is to "attempt[] to affirm the minor's perception of his or her gender or biological sex, if that perception is inconsistent with the minor's biological sex." SB 613 § 1(A)(2)(a). Conversely, the Ban contains an explicit exception allowing for irreversible surgical interventions on infants with differences of sex development if the purpose of the surgery is to make the infant's body conform to their sex designated at birth.[1] SB 613 § 1(A)(2)(b)(4). By allowing and disallowing care based on sex designated at birth, the Ban is an impermissible "form of sex stereotyping where an individual is required effectively to maintain [their] natal sex characteristics." *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018); *see also Smith v. Avanti*, 249 F. Supp. 3d 1194, 1201 (D. Colo. 2017) (agreeing "discrimination based on applying

---

[1] These surgeries have been widely criticized in the scientific literature and have far less evidence of efficacy than the procedures outlawed by the Ban. Antommaria Decl. ¶ 55.

14

gender stereotypes to someone who was assigned a certain sex … at birth, constitutes discrimination based on sex"); *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019) ("[E]qual protection law should be particularly alert to the possibility of sex stereotyping in contexts where 'real' differences are involved, because these are the contexts in which sex classifications have most often been used to perpetuate sex-based inequality.") (citation omitted). The Ban "tethers Plaintiffs to sex stereotypes which, as a matter of medical necessity, they seek to reject." *Kadel v. Folwell*, 446 F. Supp. 3d 1, 14 (M.D.N.C. 2020).

Finally, as the Supreme Court explained in *Bostock*, "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." 140 S. Ct. at 1741. As explained above, the Ban discriminates based on transgender status.

### 3. The Health Care Ban Was Passed for the Purpose of Drawing Sex- and Transgender Status-Based Distinctions.

Even if the Ban did not explicitly discriminate based on transgender status and sex, it would still be subject to heightened scrutiny as a law passed "because of," not "in spite of," its effects on transgender youth. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Oklahoma's intent to treat transgender patients differently also pervades the legislative history. And while bias is not required to show intent, throughout the legislative process, legislators made statements suggesting a bias against transgender people.[2] *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) ("contemporary statements by members of the decisionmaking body" are relevant to assessing legislative purpose); *see also* Compl. ¶¶ 101–117. Here, the Ban was just one part of a larger legislative strategy to discriminate against transgender people, including by

---

[2] One representative said that teenagers needed "biblical guidance," not "delusional play acting." Ben Felder, *Oklahoma House Approves Bill to Ban Insurance Coverage for Transgender Care*, OKLAHOMAN (Feb. 28, 2023, 4:30 PM), available at https://tinyurl.com/5xywe8tn.

restricting access to gender-affirming care for people of all ages.[3] In addition, the Ban was drafted with surgical precision such that it would impact *only* transgender persons seeking gender-affirming care. *See* Compl. ¶ 190; SB 613 § 1(A)(2)(b) (outlining circumstances in which procedures would not be banned). This context provides strong evidence that the Ban was adopted with the express purpose of targeting transgender people for disparate treatment.

### B.      The Health Care Ban Fails Heightened Equal Protection Scrutiny.

To survive heightened scrutiny, Oklahoma must, at a minimum, provide an "exceedingly persuasive justification" for the Ban's classifications. *VMI*, 518 U.S. at 531.  When evaluating whether the Ban is substantially related to an important governmental interest, "[t]he Court retains an independent constitutional duty to review [legislative] factual findings when constitutional rights are at stake." *Gonzales v. Carhart*, 550 U.S. 124, 165 (2007). The "burden of justification is demanding"—not "deferential"—and it "rests entirely on the State."  *VMI*, 518 U.S. at 533, 555. As discussed below, the government cannot possibly carry its demanding burden because of the broad medical consensus on the medical necessity for gender-affirming care and the absence of evidence-based alternatives to treat gender dysphoria, a serious medical condition. Nor is there any justification for treating gender-affirming health care differently from all other health care posing similar risks and benefits or supported by comparable evidence of efficacy.

### 1.      There Is No Factual Support for Any Potential Justification of the Ban.

The Ban does not protect minors. To the contrary, providing gender-affirming care to adolescents with gender dysphoria is consistent with professional medical standards. *See Brandt*, 47 F.4th at 671 (Arkansas); *Eknes-Tucker*, 603 F. Supp. 3d at 1145 (Alabama). The widely-

---

[3] Legislators introduced fifteen bills to limit gender-affirming care, including for adults. *See, e.g.*, HB 1011 (proposing a ban up to 21 years old), available at https://tinyurl.com/dafb9unw; SB 345 (same), available at https://tinyurl.com/38jmf62y.

accepted protocols used to treat gender dysphoria were developed over decades based on rigorous review of existing evidence; are comparable to the types of guidelines used to treat other conditions; and are updated to respond to evolving scientific understandings of care and patient population needs, which is typical with clinical guidelines in medicine. Antommaria Decl. ¶¶ 27–36.

Gender-affirming care is neither harmful nor experimental. *See Brandt*, 47 F.4th at 671. The interventions prohibited by the Ban are safe, effective, and supported by peer-reviewed longitudinal and cross-sectional studies. Turban Decl. ¶ 14. Further, the treatment is not experimental in the colloquial or the scientific sense, and the risks associated with the care are comparable to the risks parents and adolescents assume in many other treatment decisions, including those explicitly permitted by the Ban. Antommaria Decl. ¶¶ 27, 31, 52.

Rather than "harming" children, gender-affirming medical care greatly improves the health and well-being of adolescent patients with gender dysphoria. Adkins Decl. ¶ 46; Turban Decl. ¶¶ 15–18; Janssen Decl. ¶¶ 72–78.  Practitioners' clinical experience is bolstered by the nearly two decades of research—including published, peer-reviewed, cross-sectional, and longitudinal studies—likewise demonstrating that the proscribed care reduces symptoms of anxiety, depression, and suicidality and improves health outcomes for adolescent patients. Turban Decl. ¶¶ 15–18; Janssen Decl. ¶ 72. The personal experiences of the Minor Plaintiffs and their parents illustrate how this treatment positively transforms the lives of the adolescents who need it. Rather than harming them, gender-affirming care has enabled them to thrive.

### 2. Treating Gender-Affirming Care Differently from Medical Treatments with Comparable Risks, Benefits, and Scientific Support Is Unjustifiable.

The Ban further fails heightened scrutiny because Oklahoma can provide no justification for treating gender-affirming care differently from other medical treatments with similar risks and benefits and comparable scientific support. There is nothing uniquely risky about the care provided

to transgender minors to treat gender dysphoria when compared to any other type of health care. Pubertal suppression, testosterone, estrogen and testosterone suppression are used to treat other conditions and carry comparable risks and side effects regardless of the indication for which they are prescribed. Adkins Decl. ¶ 58.  "[T]he risks related to hormone therapy and puberty suppression generally do not vary based on the condition they are being prescribed to treat, and the same hormones are used for a variety of indications in addition to gender dysphoria." *Id*. The fact that gender-affirming care has risks does not distinguish it from other forms of treatment.  *Id.* ¶ 65.

To the extent that the Ban addresses any purported risk to fertility, no such risk applies to some of the banned procedures and, for those for which the risk exists, it is not unique to gender-affirming care. Puberty-delaying medications on their own do not affect fertility, and many patients treated with hormone therapy are able to biologically conceive children. Adkins Decl. ¶ 60. Chest masculinization surgery also has no effect on fertility.  *Id*. For treatment that can affect fertility, there are ways to adjust the treatment to protect fertility if that is important to the patient and their family. Antommaria Decl. ¶¶ 45–46. Further, this is not the only type of medical care that can affect fertility, but it is the only care banned under the law.  Adkins Decl. ¶¶ 61–62.

The evidence supporting the safety and efficacy of the banned care is comparable to the evidence supporting treatment for permitted conditions. The Ban explicitly permits the use of puberty-delaying medication to treat precocious puberty, but bans the same medication to treat gender dysphoria even though the evidence base supporting each treatment is the same. Antommaria Decl. ¶ 33. As discussed above, puberty-delaying medication and gender-affirming hormone therapy to treat gender dysphoria in adolescents are not experimental. But even if they were, Oklahoma does not ban the use of experimental treatments solely on that basis.

These justifications for the Ban cannot provide an "exceedingly persuasive" explanation

for why gender-affirming care should be treated differently from all other medical treatment.

### C. The Health Care Ban Fails Any Level of Review.

Although the Ban is properly subject to heightened scrutiny, it ultimately fails any level of review. What the law does is "so far removed from [the asserted] justifications that . . . it [is] impossible to credit them." *Romer v. Evans*, 517 U.S. 620, 635 (1996).  Rather than protect children, the Ban harms them. There is no rational basis to conclude that allowing adolescents with gender dysphoria to receive gender-affirming medical care that they, their parents, and their doctors agree is medically necessary "would threaten legitimate interests of [Oklahoma] in a way that" allowing other types of care "would not." *City of Cleburne*, 473 U.S. at 448; *see also Eisenstadt v. Baird*, 405 U.S. 438, 452 (1972) (health risks of birth control pills not a rational basis for banning access for unmarried people while allowing access for married people). Even under rational basis review, the justifications for the Ban "ma[k]e no sense in light of how the [statute] treat[s] other [procedures] similarly situated in relevant respects." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366 n.4 (2001).

Finally, an improper motive for legislation can arise "not from malice or hostile animus alone" but "may result as well from insensitivity caused by simple want of careful, rational reflection or from some instinctive mechanism to guard against people who appear to be different in some respects from ourselves." *Id.* at 374 (Kennedy, J., concurring).  That is precisely the case here and is another reason the Ban fails any level of review.

## III. THE PARENT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT THE HEALTH CARE BAN VIOLATES PARENTS' FUNDAMENTAL RIGHT TO PARENTAL AUTONOMY.

The Ban triggers strict scrutiny because it burdens the fundamental rights of parents to seek appropriate medical care for their minor children. As discussed above, the Ban cannot survive any level of constitutional scrutiny, let alone the most stringent review required for intrusions into

fundamental rights. Accordingly, the Parent Plaintiffs are likely to succeed on the merits of their substantive due process claim. *See Brandt v. Rutledge*, 551 F. Supp. 3d 882, 892–93 (E.D. Ark. 2021) (holding that plaintiffs' parents were likely to succeed on similar claims because they "have a fundamental right to seek medical care for their children and, in conjunction with their adolescent child's consent and their doctor's recommendation, make a judgment that medical care is necessary"), *aff'd*, 47 F.4th 661 (8th Cir. 2022); *Eknes-Tucker*, 603 F. Supp. 3d at 1146 (holding that plaintiffs were likely to succeed on similar claims against Alabama).

### A.    Strict Scrutiny Applies to the Parent Plaintiffs' Due Process Claims.

The Due Process Clause protects "against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The government cannot "infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Kitchen v. Herbert*, 755 F.3d 1193, 1218 (10th Cir. 2014) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Strict scrutiny applies to "parents' substantive due process right . . . to direct their children's medical care." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 419 (6th Cir. 2019). To be sure, in some instances, "the State must play its part as parens patriae," and "the juvenile's liberty interest may . . . be subordinated to the State's 'parens patriae interest in preserving and promoting the welfare of the child.'" *Schall v. Martin*, 467 U.S. 253, 265 (1984); *see also Kanuszewski*, 927 F.3d at 419–20 (strict scrutiny would apply to mandatory neonatal blood draws to "screen[] for life-threatening diseases," but such requirement "may well" satisfy strict scrutiny "provided that the state operates the program for purely benevolent motives"). Here, the Ban prohibits care when a parent and child are in agreement. There is no situation where a minor will access the care subject to the Ban without the consent of their legal guardian, and certainly no

world where a parent may decide *for* their child that gender-affirming care is needed over the

minor's objection. *See* Adkins Decl. ¶¶ 35, 37. Thus, every application of the Ban necessarily

substitutes the judgment of the State for the aligned wishes of the parent and child. *See Brandt*,

551 F. Supp. 3d at 892 (similar statute infringed "right to seek medical care for their children… in

conjunction with their adolescent child's consent and their doctor's recommendation").

When the parent's and child's liberty interests in pursuing a course of medical care align,

the strength of those interests against state interference is at its apex. *Cf. Santosky v. Kramer*, 455

U.S. 745, 760–61 (1982) (heightened evidentiary standards required where the "vital interest" of

the parent and child in preserving their relationship "coincide."). The Ban deprives the Minor

Plaintiffs and their parents of the right to seek what every major medical association has recognized

is safe, effective, and necessary care, and in so doing it *endangers* children against their wishes

and the wishes of their parents. "Parents, pediatricians, and psychologists—not the State or this

Court—are best qualified to determine whether [gender-affirming] medications are in a child's best

interest on a case-by-case basis." *Eknes-Tucker*, 603 F. Supp. 3d at 1146.

### B.    The Health Care Ban Cannot Survive Strict Scrutiny.

As discussed above, the Ban cannot survive any level of review, and thus necessarily fails

the strict scrutiny that intrusions into fundamental rights require of the court. In addition to the

reasons discussed above, the Ban fails strict scrutiny because the means chosen by Oklahoma to

address any purported concerns about the banned care are nowhere near the "least restrictive."

*Bernal v. Fainter*, 467 U.S. 216, 219 (1984).

Nothing about the Ban is narrowly tailored to *any* interest. Rather than address any

particularized concerns, the Ban simply rules out *all* medical treatment for gender dysphoria in

adolescents. As the court noted in enjoining a similar Alabama law, "[t]he Act, unlike the cited

European regulations, does not even permit minors to take transitioning medications for research

21

purposes, [despite maintaining] that more research on them is needed. . . . Because Defendants themselves offer several less restrictive ways to achieve their proffered purposes, the Act is not narrowly tailored." *Eknes-Tucker*, 603 F. Supp. 3d at 1146. Moreover, any hypothetical goal of protecting children "is pretextual because [the statute] allows the same treatments for cisgender minors that are banned for transgender minors as long as the desired results conform with the stereotype of the minor's biological sex." *Brandt*, 551 F. Supp. 3d at 893. "Based on these findings, the State could not withstand either heightened scrutiny or rational basis review." *Id.*

## IV.   A PRELIMINARY INJUNCTION IS NECESSARY.

### A.   Plaintiffs Will Suffer Immediate and Irreparable Harm If the Health Care Ban is Not Blocked.

If the Ban is not blocked, Plaintiffs will suffer serious and irreparable harm for which there is no adequate remedy at law. *See Free the Nipple-Fort Collins*, 916 F.3d at 806. As discussed above, the Ban violates the constitutional rights of adolescents and their parents, which is itself irreparable harm. "[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (citation omitted); *see Free the Nipple-Fort Collins*, 916 F.3d at 805–06 (claim that city ordinance discriminated on the basis of sex in violation of equal protection rights necessarily satisfied irreparable injury requirement).

But the irreparable harm here is far greater than just the deprivation of the Plaintiffs' constitutional rights. The Ban prohibits life-saving medical care by preventing the initiation of treatment and cutting patients off from treatment, forces families to watch their children suffer while incurring the significant expense of regular travel or relocation out-of-state to access care, and compels medical providers to abandon their patients by threatening their medical licenses.

**Patients:** As a result of the Ban, Peter Poe, Daphne Doe, Brendan Boe, Lydia Loe, and

J.A. 0146

Ryan Roe are at risk of losing the medical treatment that has allowed them to thrive. They are already experiencing severe anxiety and distress at the prospect of losing care. And the harm from this loss of care will be immediate: SB 613 limits existing care over the next six months solely to "gradually decreasing and discontinuing" it. *See* SB 613 § 1(A)(2)(b)(7). Many of the Minor Plaintiffs already experience worsening gender dysphoria during temporary interruptions in their existing care: a prolonged and intentional deprivation of care would be excruciating. For Peter Poe, this could mean being forced into his endogenous puberty that has been paused for over a year, causing him to develop physiological characteristics inconsistent with his gender. Peter Poe Decl. ¶ 16. For Lydia Loe, this could mean being forced to develop secondary sex characteristics typical of men and catastrophic to her identity as a young woman. Lydia Loe Decl. ¶ 17. For Brendan Boe, it would mean losing his newfound confidence and ability to participate in public life. Brandon Boe Decl. ¶¶ 12–16. For Ryan Roe, he would lose the euphoria he has gained living as his true self. Ryan Roe Decl. ¶¶ 19–22, 28. For Daphne Doe, she would experience male puberty causing her to develop an Adam's apple and grow facial hair, which would threaten her mental health and comfort in her own body. Daphne Doe Decl. ¶ 17. As the Minor Plaintiffs describe, losing this treatment after finally feeling relief and confidence is unimaginable. Peter Poe Decl. ¶ 16; Lydia Loe Decl. ¶ 17; Brandon Boe Decl. ¶ 16; Ryan Roe Decl. ¶ 23; Daphne Doe Decl. ¶ 18. The law will also irreparably harm Dr. Lawlis's minor patients who will have their medical treatment terminated. Without treatment, her patients could face worsening dysphoria, anxiety, distress, and suicidality. Lawlis Decl. ¶¶ 22–27. Here, the emotional distress the Minor Plaintiffs will face upon potentially losing care will be compounded by undergoing physiological changes that may be irreversible or later require surgery to reverse. Adkins Decl. ¶ 70. And the Ban's exception for care in the next six months to be provided "solely for the purpose of … gradually decreasing and

23

discontinuing use of the drugs or hormones" provides no solace: whether care is withdrawn abruptly or gradually, the deprivation of medically necessary, evidence-based care for gender dysphoria will severely and irreparably harm those minors currently receiving treatment. *Id.* ¶ 72; Lawlis Decl. ¶¶ 25–27.

**Parents:** If the Ban is not blocked, the Parent Plaintiffs will have their parental decision-making displaced by the state, forcing them either to watch their minor children suffer immense and possibly deadly pain or disrupt their lives and families to travel or move out of state for treatment. Paula Poe Decl. ¶¶ 21–22; Lauren Loe Decl. ¶ 15; Benjamin Boe Decl. ¶¶ 13–14; Rachel Roe Decl. ¶¶ 19–22; Donna Doe Decl. ¶¶ 20–21.

**Dr. Lawlis:** The Ban irreparably harms Dr. Lawlis by requiring her to make the untenable decision to either follow the law (and in so doing violate her professional obligations by sacrificing the health of her patients) or provide medically-necessary care to her patients consistent with established clinical practice guidelines, standards of care, and the tenets of the medical profession (and in so doing risk the loss of her medical license and her livelihood). Lawlis Decl. ¶¶ 22–27.

A preliminary injunction is necessary to prevent these severe and irreparable harms.

B.     **The Balance of Equities Weigh in Plaintiffs' Favor and Issuance of the Preliminary Injunction is in the Public Interest.**

The balance of the harms and the public interest, which "merge when, like here, the government is the opposing party," also favor an injunction. *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020). The threat of harm to Plaintiffs far outweighs Defendants' interests in immediately enforcing the Ban, and preserving Plaintiffs' constitutional rights is in the public interest. *See Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights" (citation omitted)). A preliminary injunction is warranted here: the balance of equities decidedly favors the moving party, in which

24

case the court should preserve the status quo until the case can be decided on the merits.

The harm to Plaintiffs from allowing the Ban to go into effect would be tangible, immediate, and irreparable. Whatever interest the State may have in enforcing the Ban during the pendency of this case pales in comparison to Plaintiffs' certain and severe harm. Oklahoma has little to no cognizable interest in immediately enforcing the Ban because it is "likely unconstitutional." *Citizens United v. Gessler*, 773 F.3d 200, 218 (10th Cir. 2014) (when a law is likely unconstitutional, "the interests of those the government represents, such as voters, do not outweigh a plaintiff's interest in having its constitutional rights protected" (citation and alterations omitted)).

### C.    A Facial Statewide Injunction Is Necessary.

"[T]he scope of injunctive relief is dictated by the extent of the violation established," which here is statewide. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). An injunction for just the Plaintiffs is insufficient because patients cannot receive health care without an injunction allowing third parties to provide it. The Ban impacts medical providers, pharmacists, parents, and adolescents across Oklahoma, not just the individual Plaintiffs. Because of the limited exception for continuing care "solely for the purpose of … gradually decreasing and discontinuing use of the drugs or hormones," SB 613 § 1(A)(2)(b)(7), "third parties will likely react in predictable ways . . . even if they do so unlawfully," such that the breadth and scope of harm from the Ban is immediate and statewide. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). Facial relief is necessary to prevent irreparable harm. *See Brandt*, 47 F.4th at 672.

### CONCLUSION

Plaintiffs respectfully request the Court grant this Motion and enjoin the enforcement of SB 613 until decision on merits of Plaintiffs' claims and grant such other relief that the Court deems just and proper. Given the Ban's grave harms, Plaintiffs request a hearing as soon as practicable. Defendants are being served with the motion papers immediately.

Date:   May  2, 2023

/s/ *Megan Lambert*
Megan Lambert
   (OBA# 33216)
**American Civil Liberties Union**
   **Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union**
   **Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

*Application for admission pro hac vice
forthcoming.*

Respectfully submitted

Omar Gonzalez-Pagan*
**Lambda Legal Defense**
   **and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense**
   **and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense**
   **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC  20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

J.A. 0150

**CERTIFICATE OF SERVICE**

I hereby certify that this motion will be served concurrently with the service of the Summonses and Complaint in this matter.

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org
*Counsel for Plaintiffs*